# Exhibit A

Lawrence M. Rolnick
   Attorney ID No. 012171992
ROLNICK KRAMER SADIGHI LLP
300 Executive Drive, Suite 275
West Orange, NJ 07052
Tel: 212.597.2800
   *Counsel for GMO Plaintiffs, Brahman*
   *Plaintiffs,*
   *SAAMCo Plaintiffs, Discovery Plaintiffs,*
   *MSD Plaintiffs, and Incline Plaintiffs*

Patrick L. Rocco
   Attorney ID No. 24781988
FLEISCHMAN BONNER & ROCCO LLP
447 Springfield Avenue, Second Floor
Summit, NJ 07901
Tel: 908.516.2045
   *Counsel for Plaintiff Okumus*

Karen M. Lerner
   Attorney ID No. 020931991
KIRBY McINERNEY LLP
250 Park Avenue, Suite 820
New York, NY 10177
Tel: 212.371.6600
   *Counsel for Maverick Plaintiffs*

Stephen W. Tountas
   Attorney ID No. 037962003
KASOWITZ BENSON TORRES LLP
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: 212.506.1739
   *Counsel for the Privet Plaintiffs*

Jeffrey A. Almeida
   Attorney ID No. 037601997
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Tel: 302.622.7000
   *Counsel for Plaintiff PGGM, Plaintiff*
   *Schilders, the Pacific Funds Plaintiffs,*
   *Plaintiff USAA, Plaintiff INKA, and*
   *Plaintiff GIC*

| | |
|---|---|
| GMO TRUST, GMO ALPHA ONLY FUND, GMO BENCHMARK FREE FUND, GMO IMPLEMENTATION FUND, GMO DEVELOPED WORLD STOCK FUND, GMO INTERNATIONAL LARGE/MID CAP EQUITY FUND, GMO INTERNATIONAL EQUITY FUND, GMO TAX-MANAGED INTERNATIONAL EQUITIES FUND, GMO FUNDS PLC, GMO GLOBAL EQUITY ALLOCATION INVESTMENT FUND, GMO WORLD EQUITY ALLOCATION INVESTMENT FUND PLC, GMO GLOBAL REAL RETURN (UCITS) FUND, GMO OFFSHORE MASTER PORTFOLIOS II LTD., GMO EVENT-DRIVEN MASTER PORTFOLIO, GMO GLOBAL EQUITY TRUST, GMO MASTER PORTFOLIOS (ONSHORE), L.P., GMO MEAN REVERSION FUND (ONSHORE), GMO TAX-MANAGED GLOBAL BALANCED PORTFOLIO, GMO MEAN REVERSION SPECIAL SOLUTION | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION SOMERSET COUNTY<br><br>CIVIL ACTION<br><br>DOCKET NO. C-12010-22<br><br>**COMPLAINT** |

FUND, L.P., BRAHMAN PARTNERS II, L.P., BRAHMAN PARTNERS III, L.P., BRAHMAN PARTNERS II OFFSHORE, LTD., BRAHMAN INSTITUTIONAL PARTNERS, L.P., BRAHMAN C.P.F. PARTNERS, L.P., BRAHMAN PARTNERS IV, L.P., BRAHMAN PARTNERS IV (CAYMAN), LTD., BH INVESTMENTS FUND, L.L.C., EAST 71, LTD., VALIC COMPANY I, VALIC COMPANY II, SUNAMERICA SERIES TRUST, SEASONS SERIES TRUST, DISCOVERY GLOBAL CITIZENS MASTER FUND, LTD., DISCOVERY GLOBAL FOCUS MASTER FUND, LTD., DISCOVERY GLOBAL MACRO MASTER FUND, LTD., DISCOVERY GLOBAL OPPORTUNITY MASTER FUND, LTD., MSD TORCHLIGHT PARTNERS, L.P., MSD TORCHLIGHT PARTNERS (MM), L.P., INCLINE GLOBAL MASTER LP, INCLINE GLOBAL ELS LP, OKUMUS OPPORTUNISTIC VALUE COMPANY LTD., MAPLES LIQUIDATION SERVICES LIMITED AS VOLUNTARY LIQUIDATOR OF MAVERICK NEUTRAL LEVERED FUND, LTD., MAVERICK CAPITAL LTD., AS ASSIGNEE OF MAVERICK FUND, L.D.C. AND MAVERICK SELECT FUND, LTD., MAVERICK FUND II, LTD., MAVERICK LONG ENHANCED FUND, LTD., MAVERICK LONG FUND, LTD., MAVERICK FUND USA, LTD., PACIFIC SELECT FUND, PACIFIC FUNDS SERIES TRUST, STICHTING BEDRIJFSTAKPENSIOENFONDS VOOR HET SCHILDERS-AFWERKINGSEN GLASZETBEDRIJF, STICHTING PGGM DEPOSITARY, USAA MUTUAL FUNDS TRUST, INTERNATIONALE KAPITALANLAGEGESELLSCHAFT MBH, GIC PRIVATE LTD., 2012 DYNASTY UC LLC, FLINN INVESTMENTS, LLC, LAWRENCE FLINN, JR. 1975 TRUST FBO ADRIANE S. FLINN, LAWRENCE FLINN, JR. 1975 TRUST FBO LAWRENCE FLINN III, LFJR 2010 GRAT REMAINDER TRUST, LFJR 2012 DYNASTY LLC - SERIES A, LAWRENCE FLINN, JR. 1975 TRUST FBO MARION FLINN MOULTON, STEPHANIE AND LAWRENCE FLINN, JR. CHARITABLE TRUST, and STEPHANIE S. FLINN MASTER PARTNERSHIP

Plaintiffs,

v.

BAUSCH HEALTH COMPANIES INC. and BAUSCH
+ LOMB CORPORATION,
Defendants.

Plaintiffs GMO Trust, GMO Alpha Only Fund, GMO Benchmark Free Fund, GMO Implementation Fund, GMO Developed World Stock Fund, GMO International Large/Mid Cap Equity Fund, GMO International Equity Fund, GMO Tax-Managed International Equities Fund, GMO Funds PLC, GMO Global Equity Allocation Investment Fund, GMO World Equity Allocation Investment Fund PLC, GMO Global Real Return (UCITS) Fund, GMO Offshore Master Portfolios II Ltd., GMO Event-Driven Master Portfolio, GMO Global Equity Trust, GMO Master Portfolios (Onshore), L.P., GMO Mean Reversion Fund (Onshore), GMO Tax-Managed Global Balanced Portfolio, and GMO Mean Reversion Special Solution Fund, L.P. (collectively, the "GMO Plaintiffs"), Brahman Partners II, L.P., Brahman Partners III, L.P., Brahman  Partners II Offshore, Ltd., Brahman Institutional Partners, L.P., Brahman C.P.F. Partners, L.P., Brahman Partners IV, L.P., Brahman Partners IV (Cayman), Ltd., BH Investments Fund, L.L.C., and East 71, Ltd. (collectively, the "Brahman Plaintiffs"), VALIC Company I, VALIC Company II, SunAmerica Series Trust, and Seasons Series Trust (collectively, the "SAAMCo Plaintiffs"), Discovery Global Citizens Master Fund, Ltd., Discovery Global Focus Master Fund, Ltd., Discovery Global Macro Master Fund, Ltd., and Discovery Global Opportunity Master Fund, Ltd. (collectively, the "Discovery Plaintiffs"), MSD Torchlight Partners, L.P. and MSD Torchlight Partners (MM), L.P. (collectively, the "MSD Plaintiffs"), Incline Global Master LP and Incline

Global ELS LP (collectively the "Incline Plaintiffs"), Okumus Opportunistic Value Company Ltd. ("Plaintiff Okumus"), Maples Liquidation Services Limited as Voluntary Liquidator of Maverick Neutral Levered Fund, Ltd., Maverick Capital Ltd., as assignee of Maverick Fund, L.D.C. and Maverick Select Fund, Ltd., Maverick Fund II, Ltd., Maverick Long Enhanced Fund, Ltd., Maverick Long Fund, Ltd., and Maverick Fund USA, Ltd. (collectively, the "Maverick Plaintiffs"), Pacific Select Fund and Pacific Funds Series Trust (together, the "Pacific Funds Plaintiffs"), Stichting PGGM Depositary ("Plaintiff PGGM"), Stichting Bedrijfstakpensioenfonds voor het Schilders-Afwerkingsen Glaszetbedrijf ("Plaintiff Schilders"), USAA Mutual Funds Trust ("Plaintiff USAA"), Internationale Kapitalanlagegesellschaft mbH ("Plaintiff INKA"), Plaintiff GIC Private Ltd. ("Plaintiff GIC"), 2012 Dynasty UC LLC, Flinn Investments, LLC, Lawrence Flinn, Jr. 1975 Trust FBO Adriane S. Flinn, Lawrence Flinn, Jr. 1975 Trust FBO Lawrence Flinn III, LFJR 2010 GRAT Remainder Trust, LFJR 2012 Dynasty LLC - Series A, Lawrence Flinn, Jr. 1975 Trust FBO Marion Flinn Moulton, Stephanie and Lawrence Flinn, Jr. Charitable Trust, and Stephanie S. Flinn Master Partnership (collectively the "Privet Plaintiffs" and, together with the GMO Plaintiffs, the Brahman Plaintiffs, the SAAMCo Plaintiffs, the Discovery Plaintiffs, the MSD Plaintiffs, Plaintiff Okumus, the Maverick Plaintiffs, Plaintiff PGGM, Plaintiff Schilders, the Pacific Funds Plaintiffs, Plaintiff INKA, and Plaintiff GIC, "Plaintiffs") through their respective undersigned attorneys, by way of this Complaint, bring this action against Bausch Health Companies Inc. (f/k/a Valeant Pharmaceuticals International, Inc.) ("Bausch Health") and Bausch + Lomb Corporation ("Bausch + Lomb" for a declaratory judgment pursuant to N.J.S.A. 2A:16-53 that transfers made in connection with Bausch Health's corporate spin-off of its vision health assets to Bausch + Lomb are voidable as fraudulent transfers under the New Jersey Voidable Transactions Act, N.J.S.A. 25:2-20 *et seq*.

## NATURE OF THE ACTION

1.      This case arises from a corporate transaction that will prevent or impede Plaintiffs from recovering billions of dollars they are owed.

2.      Bausch Health is a New Jersey-based pharmaceutical company, formerly known as Valeant Pharmaceuticals International, Inc.  In 2016, Bausch Health was forced to replace its senior management and attempt to rebuild its reputation after it was revealed that it had engaged in one of the most egregious cases of securities fraud in U.S. history.  Among other things, Bausch Health was forced to restate its financial statements, enter into a settlement with the United States Securities and Exchange Commission ("SEC"), and settle a class action with investors for a payment of more than $1.1 billion.

3.      Plaintiffs are victims of Bausch Health's securities fraud.  They represent funds that invest on behalf of, inter alia, pension funds, endowments, and charitable institutions, that invested in Bausch Health at a time when its stock price was artificially inflated by the fraud.  Plaintiffs have been engaged in protracted and complex civil litigation against Bausch Health in the United States District Court for the District of New Jersey for several years.

4.      Plaintiffs' actions are part of a group of securities fraud actions pending against Bausch Health that collectively have suffered securities damages totaling $4.2 billion dollars (excluding significant pre-judgment interest).[1]  These damages have been calculated by a nationally recognized economics expert in the field of securities fraud damages and published in an expert report served on Bausch Health.

---

[1] The docket numbers of those federal securities cases are:  16-cv-07321; 16-cv-07324; 16-cv-07494; 16-cv-07496; 17-cv-06513; 17-cv-07636; 17-cv-12088; 18-cv-00089; 18-cv-00343; 18-cv-00383; 18-cv-00846; 18-cv-00893; 18-cv-01223; 18-cv-08595; 18-cv-08705; 18-cv-15286; 18-cv-17393; 20-cv-02190; 20-cv-05478; 20-cv-07460; and 20-cv-07462.

5.      The underlying facts supporting Plaintiffs' claims are difficult for Bausch Health to dispute.  In fact, Bausch Health has consented to the entry of a cease-and-desist order issued by the SEC in which the SEC found that Bausch Health violated the federal securities laws by engaging in the conduct that is the basis for some of the Plaintiffs' securities fraud claims.

6.      Faced with an inescapable multi-billion dollar civil liability, Bausch Health has sought to delay the resolution of Plaintiffs' lawsuits and to effectuate a corporate transaction designed to prevent or impede Plaintiffs from recovering their substantial losses.  To do this, Bausch Health has announced a "spin-off" of its cash-rich vision health assets (Bausch + Lomb) into a new company, which leaves Bausch Health in a significantly worse financial position than prior to the spin-off.  Indeed, some investment analysts who closely follow the company have concluded that Bausch Health will have a negative valuation of -$0.70 per share post spin-off (which represents an overvaluation because it does not account for Bausch Health's contingent liabilities), whereas Bausch + Lomb will be worth almost $30 per share.  Currently, Bausch Health trades around $25 per share.

7.      The reason why Bausch Health is to be rendered insolvent or, at a minimum, with insufficient capital to withstand normal, cyclical industry trends, is because once the planned spin-off is complete, it will have transferred its vision health assets to Bausch + Lomb without receiving reasonably equivalent value in return.  The only value that Bausch Health is set to receive is some of the cash proceeds raised in connection with an initial public offering ("IPO") of an estimated 20% of Bausch + Lomb's stock.  The other 80% of Bausch + Lomb is being issued as a stock dividend to Bausch Health's other shareholders, which means that it will essentially be a "gift" to existing shareholders.  As a result, in an integrated transaction, Bausch Health will have transferred valuable assets to Bausch + Lomb (and its new shareholders) but only received a fraction of the

value in return.  To make matters worse, Bausch Health is not transferring a proportionate share of *liabilities* to Bausch + Lomb.  To the contrary, Bausch Health will be three times more leveraged than Bausch + Lomb as a result of the spin-off.

8.      On information and belief, the spin-off leaves Bausch Health with insufficient assets to satisfy outstanding liabilities, including the multi-billion-dollar contingent liabilities represented by Plaintiffs' federal securities fraud claims.  Bausch Health has repeatedly attempted to downplay the pending liabilities, assuring the market that they are of no consequence.

9.      Plaintiffs therefore bring this action for a declaratory judgment that the spin-off constitutes a fraudulent transfer of assets from Bausch Health to Bausch + Lomb and is voidable under the New Jersey Voidable Transactions Act.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Defendants because Defendants have substantial connections to the State of New Jersey, including because Defendants maintain their U.S. headquarters and chief executive offices in Bridgewater, New Jersey.

11.      This complaint seeks declaratory relief pursuant to N.J.S.A. 2A:16-51 *et seq.*, which this Court has the authority to grant pursuant to N.J.S.A. 2A:16-52, which vests "[a]ll courts of record" with the "power to declare rights, status and other legal relations, whether or not further relief is or could be claimed."

12.      The claims asserted herein arise under and pursuant to the New Jersey Voidable Transactions Act (N.J.S.A. 25:2-20 *et seq.*), which provides that such claims are "governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred."  N.J.S.A. 25:2-35.  Defendant Bausch Health has its chief executive offices in Bridgewater, New Jersey.  As such, Defendant Bausch Health is located for the purposes of the New Jersey Voidable Transactions Act in Somerset County, New Jersey.  N.J.S.A. 25:2-35.

13.     Venue is also appropriate in this jurisdiction pursuant to R. 4:3-2(a) because Defendants do business in this County.  An action under the New Jersey Voidable Transactions Act is equitable in nature and, therefore, properly brought in the Chancery Division pursuant to R. 4:3-1.

## PARTIES

### I.     Plaintiffs

14.     Plaintiff GMO Trust is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *GMO Trust, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:18-cv-00089 ("the GMO Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Trust is a Massachusetts business trust and an investment company registered with the SEC under the Investment Company Act of 1940.  At all relevant times, Grantham, Mayo, Van Otterloo & Co. LLC ("GMO LLC") or an affiliate acted as investment adviser to Plaintiff GMO Trust in connection with its purchases of Bausch Health common stock.   GMO LLC is headquartered in Boston, Massachusetts.

15.     Plaintiff GMO Alpha Only Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Alpha Only Fund is a series of GMO Trust.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Alpha Only Fund in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

16.     Plaintiff GMO Benchmark Free Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Benchmark Free Fund is a series of GMO Trust.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Benchmark Free Fund in connection with its

purchases of Bausch Health common stock. GMO LLC is headquartered in Boston, Massachusetts.

17.  Plaintiff GMO Implementation Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Implementation Fund is a series of GMO Trust. At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Implementation Fund in connection with its purchases of Bausch Health common stock. GMO LLC is headquartered in Boston, Massachusetts.

18.  Plaintiff GMO Developed World Stock Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Developed World Stock Fund was at all relevant times a series of GMO Trust. At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Developed World Stock Fund in connection with its purchases of Bausch Health common stock. GMO LLC is headquartered in Boston, Massachusetts.

19.  Plaintiff GMO International Large/Mid Cap Equity Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO International Large/Mid Cap Equity Fund is a series of GMO Trust. At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO International Large/Mid Cap Equity Fund in connection with its purchases of Bausch Health common stock. GMO LLC is headquartered in Boston, Massachusetts.

20.  Plaintiff GMO International Equity Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO International Equity Fund is a series of GMO Trust. At all relevant times, GMO LLC or an affiliate

acted as investment adviser to Plaintiff GMO International Equity Fund in connection with its purchases of Bausch Health common stock.   GMO LLC is headquartered in Boston, Massachusetts.

21.     Plaintiff GMO Tax-Managed International Equities Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Tax-Managed International Equities Fund is a series of GMO Trust.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Tax-Managed International Equities Fund in connection with its purchases of Bausch Health common stock. GMO LLC is headquartered in Boston, Massachusetts.

22.     Plaintiff GMO Funds PLC is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  GMO Funds PLC is an investment company with variable capital incorporated with limited liability in Ireland.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Funds PLC in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

23.     Plaintiff GMO Global Equity Allocation Investment Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Global Equity Allocation Investment Fund is a sub-fund of GMO Funds PLC.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Global Equity Allocation Investment Fund in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

24.     Plaintiff GMO World Equity Allocation Investment Fund PLC is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.

Plaintiff GMO World Equity Allocation Investment Fund PLC was at all relevant times a qualifying investor fund established in Ireland.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO World Equity Allocation Investment Fund PLC in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

25.     Plaintiff GMO Global Real Return (UCITS) Fund is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Global Real Return (UCITS) Fund is a sub-fund of GMO Funds PLC.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Global Real Return (UCITS) Fund in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

26.     Plaintiff GMO Offshore Master Portfolios II Ltd. is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Offshore Master Portfolios II Ltd. is a mutual fund company incorporated with limited liability under the Companies Act 1981 of Bermuda.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Offshore Master Portfolios II Ltd. in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

27.     Plaintiff GMO Event-Driven Master Portfolio is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Event-Driven Master Portfolio is a separate investment portfolio constituted as a distinct class of shares of GMO Offshore Master Portfolios II Ltd.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Event-Driven Master Portfolio in connection

with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

28.     Plaintiff GMO Global Equity Trust is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Global Equity Trust was at all relevant times an Australian registered management investment scheme. At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Global Equity Trust in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

29.     Plaintiff GMO Master Portfolios (Onshore), L.P. is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Master Portfolios (Onshore), L.P. is a limited partnership organized under the laws of Delaware.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Master Portfolios (Onshore), L.P. in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

30.     Plaintiff GMO Mean Reversion Fund (Onshore) is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff GMO Mean Reversion Fund (Onshore) is a separate series of GMO Master Portfolios (Onshore), L.P.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Mean Reversion Fund (Onshore) in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

31.     Plaintiff GMO Tax-Managed Global Balanced Portfolio is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Tax-Managed Global Balanced Portfolio is a separate series of GMO Master

Portfolios (Onshore), L.P.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Tax-Managed Global Balanced Portfolio in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

32.     Plaintiff GMO Mean Reversion Special Solution Fund, L.P. is a plaintiff in the GMO Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GMO Mean Reversion Special Solution Fund, L.P. was at all relevant times a Delaware limited partnership.  At all relevant times, GMO LLC or an affiliate acted as investment adviser to Plaintiff GMO Mean Reversion Special Solution Fund, L.P. in connection with its purchases of Bausch Health common stock.  GMO LLC is headquartered in Boston, Massachusetts.

33.     Plaintiff Brahman Partners II, L.P. is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *Brahman Partners II, L.P., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:18-cv-00893 ("the Brahman Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Brahman Partners II, L.P. is a Delaware limited partnership whose investment adviser Brahman Capital Corp. ("Brahman") has its main office location in New York, New York.

34.     Plaintiff Brahman Partners III, L.P. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Brahman Partners III, L.P. is a Delaware limited partnership whose investment adviser Brahman has its main office location in New York, New York.

35.     Plaintiff Brahman Partners II Offshore, Ltd. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff

Brahman Partners II Offshore, Ltd. is a Cayman Islands company whose investment adviser Brahman has its main office location in New York, New York.

36.     Plaintiff Brahman Institutional Partners, L.P. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Brahman Institutional Partners, L.P. was at all relevant times a Delaware limited partnership whose investment adviser Brahman had its main office location in New York, New York.

37.     Plaintiff Brahman C.P.F. Partners, L.P. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Brahman C.P.F. Partners, L.P. was at all relevant times a Delaware limited partnership whose investment adviser Brahman had its main office location in New York, New York.

38.     Plaintiff Brahman Partners IV, L.P. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Brahman Partners IV, L.P. is a Delaware limited partnership whose investment adviser Brahman has its main office location in New York, New York.

39.     Plaintiff Brahman Partners IV (Cayman), Ltd. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Brahman Partners IV (Cayman), Ltd. is a Cayman Islands company whose investment adviser Brahman has its main office location in New York, New York.

40.     Plaintiff BH Investments Fund, L.L.C. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff BH Investments Fund, L.L.C. is a Delaware limited liability company whose investment adviser Brahman has its main office location in New York, New York.

41.     Plaintiff East 71, Ltd. is a plaintiff in the Brahman Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff East 71, Ltd. is a Cayman Islands company whose investment adviser Brahman has its main office location in New York, New York.

42.     Plaintiff VALIC Company I is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *VALIC Company I, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:16-cv-07496 (the "SAAMCo Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff VALIC Company I is a Delaware statutory trust with its principal place of business in Houston, Texas.

43.     Plaintiff VALIC Company II is a plaintiff in the SAAMCo Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff VALIC Company II is a Delaware statutory trust with its principal place of business in Houston, Texas.

44.     Plaintiff SunAmerica Series Trust, through its trustees, is a plaintiff in the SAAMCo Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff SunAmerica Series Trust is a Massachusetts business trust with its principal place of business in Woodland Hills, California.

45.     Plaintiff Seasons Series Trust, through its trustees, is a plaintiff in the SAAMCo Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff Seasons Series Trust is a Massachusetts business trust with its principal place of business in Woodland Hills, California.

46.     Plaintiff Discovery Global Citizens Master Fund, Ltd. is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District

of New Jersey captioned *Discovery Global Citizens Master Fund, Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:16-cv-07321 (the "Discovery Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff Discovery Global Citizens Master Fund, Ltd. is a Cayman Islands fund whose investment adviser Discovery Capital Management, LLC ("Discovery") has its main office location in South Norwalk, Connecticut.

47.     Plaintiff Discovery Global Focus Master Fund, Ltd. is a plaintiff in the Discovery Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff Discovery Global Focus Master Fund, Ltd. is a Cayman Islands fund whose investment adviser Discovery has its main office location in South Norwalk, Connecticut.

48.     Plaintiff Discovery Global Macro Master Fund, Ltd. is a plaintiff in the Discovery Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff Discovery Global Macro Master Fund, Ltd. is a Cayman Islands fund whose investment adviser Discovery has its main office location in South Norwalk, Connecticut.

49.     Plaintiff Discovery Global Opportunity Master Fund, Ltd. is a plaintiff in the Discovery Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff Discovery Global Opportunity Master Fund, Ltd. is a Cayman Islands fund whose investment adviser Discovery has its main office location in South Norwalk, Connecticut.

50.     Plaintiff MSD Torchlight Partners, L.P. is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *MSD Torchlight Partners, L.P., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:16-cv-07324 (the "MSD Direct Action") and is a creditor of Bausch Health as that term

is defined in N.J.S.A. 25:2-21.  Plaintiff MSD Torchlight Partners, L.P. is a Delaware limited partnership with its main office location in New York, New York.

51.      Plaintiff MSD Torchlight Partners (MM), L.P. is a plaintiff in the MSD Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff MSD Torchlight Partners (MM), L.P. is a Delaware limited partnership with its main office location in New York, New York.

52.      Plaintiff Incline Global Master LP is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *Incline Global Master LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:16-cv-07494 (the "Incline Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Incline Global Master LP is a Cayman Islands limited partnership whose investment adviser Incline Global Management, LLC ("Incline") has its main office location in New York, New York.

53.      Plaintiff Incline Global ELS LP is a plaintiff in the Incline Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Incline Global ELS LP is a Cayman Islands limited partnership whose investment adviser Incline has its main office location in New York, New York.

54.      Plaintiff Okumus Opportunistic Value Company Ltd. is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *Okumus Opportunistic Value Fund Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:17-cv-06513 ("the Okumus Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Okumus Opportunistic Value Company

Ltd. is a private British Virgin Islands investment fund managed by Okumus Fund Management, Ltd., which maintains its principal office in New York, New York.

55.     Plaintiff Maples Liquidation Services Limited as Voluntary Liquidator of Maverick Neutral Levered Fund, Ltd. is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *Maverick Neutral Levered Fund, Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:20-cv-02190 ("the Maverick Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Maples Liquidation Services Limited's registered office is at PO Box 309, Ugland House, Grand Cayman KY1-1104.

56.     Plaintiff Maverick Capital Ltd., as assignee of Maverick Fund, L.D.C. and Maverick Select Fund, Ltd., is a plaintiff in the Maverick Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Maverick Capital Ltd. is a Texas limited partnership with its principal place of business located in Dallas, Texas.

57.     Plaintiff Maverick Fund II, Ltd. is a plaintiff in the Maverick Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Maverick Fund II, Ltd. is a Cayman Island exempted company managed and advised by Maverick Capital, which is a Texas limited partnership with its principal place of business located in Dallas, Texas.

58.     Plaintiff Maverick Long Enhanced Fund, Ltd. is a plaintiff in the Maverick Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Maverick Long Enhanced Fund, Ltd. is a Cayman Island exempted company managed and advised by Maverick Capital, which is a Texas limited partnership with its principal place of business located in Dallas, Texas.

59.     Plaintiff Maverick Long Fund, Ltd. is a plaintiff in the Maverick Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Maverick Long Fund, Ltd. is a Cayman Island exempted company managed and advised by Maverick Capital, which is a Texas limited partnership with its principal place of business located in Dallas, Texas.

60.     Plaintiff Maverick Fund USA, Ltd. is a plaintiff in the Maverick Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Maverick Fund USA, Ltd. is a Texas Limited Partnership managed and advised by Maverick Capital, which is a Texas limited partnership with its principal place of business located in Dallas, Texas.

61.     Plaintiff Stichting PGGM Depositary is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *Första AP-Fonden, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:17-cv-12088 ("the PGGM Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Stichting PGGM Depositary is a foundation established and existing under the laws of the Netherlands for the purpose of holding pension fund assets.

62.     Plaintiff Stichting Bedrijfstakpensioenfonds voor het Schilders-Afwerkingsen Glaszetbedrijf ("Schilders") is a plaintiff in the PGGM Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.   Plaintiff Schilders is a pension fund located in the Netherlands.  It is an independent fund under the supervision of De Nederlandsche Bank.

63.     Plaintiffs Pacific Funds Series Trust and Pacific Select Fund are plaintiffs in the PGGM Direct Action and are creditors of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiffs Pacific Select Fund and Pacific Funds Series Trust are Delaware statutory trusts.

64.     Plaintiff USAA Mutual Funds Trust, on behalf of its separate series USAA Aggressive Growth Fund, USAA Cornerstone Aggressive Fund, USAA Cornerstone Moderate

Fund, USAA Cornerstone Moderately Aggressive Fund, USAA Cornerstone Moderately Conservative Fund, USAA Flexible Income Fund, USAA High Income Fund, USAA Income Fund, and USAA International Fund, is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *USAA Mutual Funds Trust, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:20-cv-07462 ("the USAA Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff USAA Mutual Funds Trust is a registered investment company organized as a Delaware statutory trust with its principal place of business in San Antonio, Texas.

65. Plaintiff Internationale Kapitalanlagegesellschaft mbH is a plaintiff in the USAA Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff Internationale Kapitalanlagegesellschaft mbH is a German fund management company located in Germany.

66. Plaintiff GIC Private Ltd. is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *GIC Private Ltd. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:20-cv-07460 ("the GIC Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff GIC Private Ltd. is incorporated under the Singapore Companies Act and is headquartered in Singapore.

67. Plaintiff 2012 Dynasty UC LLC is a plaintiff in a federal securities action pending against Bausch Health in the United States District Court for the District of New Jersey captioned *2012 Dynasty UC LLC, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 3:18-cv-08595 ("the Privet Direct Action") and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff 2012 Dynasty UC LLC is a Delaware limited liability company.

Plaintiff 2012 Dynasty UC LLC is controlled and operated by Privet Capital LLC ("Privet Capital"), a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York.  Plaintiff 2012 Dynasty UC LLC engaged Privet MR Management LLC ("Privet Management"), a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

68.     Plaintiff Flinn Investments, LLC is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Flinn Investments, LLC is a Delaware limited liability company.  Plaintiff Flinn Investments, LLC is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York.  Plaintiff Flinn Investments, LLC engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

69.     Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Adriane S. Flinn is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Adriane S. Flinn is a trust organized under the laws of the State of Alaska.  Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Adriane S. Flinn is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York.  Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Adriane S. Flinn engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

70.     Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Lawrence Flinn III is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.

Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Lawrence Flinn III is a trust organized under the laws of the State of Alaska. Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Lawrence Flinn III is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York. Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Lawrence Flinn III engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

71.     Plaintiff LFJR 2010 GRAT Remainder Trust is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff LFJR 2010 GRAT Remainder Trust is a trust organized under the laws of the State of Alaska. Plaintiff LFJR 2010 GRAT Remainder Trust is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York. Plaintiff LFJR 2010 GRAT Remainder Trust engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

72.     Plaintiff LFJR 2012 Dynasty LLC - Series A is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21. Plaintiff LFJR 2012 Dynasty LLC - Series A is a Delaware limited liability company. Plaintiff LFJR 2012 Dynasty LLC - Series A is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York. Plaintiff LFJR 2012 Dynasty LLC - Series A engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

73.     Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Marion Flinn Moulton is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Marion Flinn Moulton is a trust organized under the laws of the State of Alaska.  Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Marion Flinn Moulton is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York.  Plaintiff Lawrence Flinn, Jr. 1975 Trust FBO Marion Flinn Moulton engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

74.     Plaintiff Stephanie and Lawrence Flinn, Jr. Charitable Trust is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Stephanie and Lawrence Flinn, Jr. Charitable Trust is a trust organized under the laws of the State of Florida.  Plaintiff Stephanie and Lawrence Flinn, Jr. Charitable Trust is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York.  Plaintiff Stephanie and Lawrence Flinn, Jr. Charitable Trust engaged Privet Management, a Delaware limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

75.     Plaintiff Stephanie S. Flinn Master Partnership is a plaintiff in the Privet Direct Action and is a creditor of Bausch Health as that term is defined in N.J.S.A. 25:2-21.  Plaintiff Stephanie S. Flinn Master Partnership is a Delaware partnership.  Plaintiff Stephanie S. Flinn Master Partnership is controlled and operated by Privet Capital, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Rye, New York.  Plaintiff Stephanie S. Flinn Master Partnership engaged Privet Management, a Delaware

limited liability company with its principal place of business in Rye, New York, to act as asset manager during the relevant period.

## II.    **Defendant**

76.    Defendant Bausch Health is a pharmaceutical company with its U.S. headquarters and chief executive offices in Bridgewater, New Jersey.  Although Bausch Health is a Canadian corporation, its most senior executive officers are based in New Jersey.  Chief Executive Officer and Chairman of the Board, Joseph Papa ("Papa"), lives and works in New Jersey.  With the exception of one director (who lists a New York address), all of Bausch Health's directors and officers list Bausch Health's offices in Bridgewater, New Jersey as their address in their stock-ownership disclosures filed with the SEC.  Bausch Health's recent registration statements for the issuance of Bausch Health common stock state that they were signed by Papa in Bridgewater, New Jersey.  Numerous Bausch Health agreements, including the indentures that govern Bausch Health's issuance of corporate debt, direct that any notices to Bausch Health should be sent to Bausch Health's offices in Bridgewater, New Jersey.  New Jersey is thus the place from which Bausch Health manages the main part of its business operations and other affairs.

77.    Defendant Bausch + Lomb is a Canadian corporation with its U.S. headquarters and chief executive offices in Bridgewater, New Jersey.  On January 13, 2022, Papa signed a registration statement for Bausch + Lomb's IPO.  The registration statement was signed in Bridgewater, New Jersey.

## FACTUAL ALLEGATIONS

**I.      Bausch Health Commits Securities Fraud**[2]

78.      Between 2013 and 2016, Bausch Health[3] and its now-former executives engaged in a massive securities fraud in which they misrepresented, among other things, that Bausch Health had a sustainable business model well-positioned for future growth when, in fact, the business was dependent for growth on falsified revenue, an undisclosed and highly questionable self-dealing distribution channel, and an unsustainable strategy tied to exorbitant price increases on newly acquired prescription drugs.

79.      In 2008, Bausch Health appointed J. Michael Pearson ("Pearson") as its Chief Executive Officer ("CEO").   Pearson is not a medical professional, but rather a professional business consultant.  Pearson eschewed the traditional pharmaceutical business model of investing significant amounts of capital in the research and development of new drugs, and instead argued that it was cheaper to buy under-valued assets from other drug companies.

80.      Initially, Pearson's strategy appeared to be successful.   Under Pearson's stewardship, Bausch Health acquired numerous companies, including Bausch + Lomb, and appeared to be able to increase revenues.  After convincing investors that Bausch Health was able to increase the organic growth rates of the products it acquired, Bausch Health's stock price soared.

---

[2] The following is a summary of the fraud and is not intended to include every detail and aspect of Bausch Health's securities fraud.  Moreover, the recitations in this complaint are based solely on information that is currently publicly available (including the SEC's findings) and does not include additional nonpublic facts and information that Bausch Health has designated as confidential under the governing confidentiality protective order in the federal actions.

[3] In 2018, Valeant Pharmaceuticals International, Inc. ("Valeant") changed its name to Bausch Health Companies Inc.  For the sake of simplicity, the company is referred to as "Bausch Health" throughout this Complaint, even though prior to 2018 the company was named Valeant and not Bausch Health.

81.     In 2014, Bausch Health made a protracted but ultimately unsuccessful hostile takeover bid for another drug company, Allergan Inc. ("Allergan"). To convince shareholders not to vote in favor of the combination, Allergan sought to portray Bausch Health as an inferior company and asserted that Bausch Health was nothing more than a "roll up" that increased revenue through a growth-by-acquisition business relying on unsustainable price increases. Since neither continual acquisitions nor large price increases are a sustainable source of growth, Allergan called into question the ability of Bausch Health's strategy to sustain long-term growth. Bausch Health fought back, issuing press releases and investor presentations defending its growth as durable and sustainable. However, for the first time, Pearson's business model received a significant amount of negative public scrutiny that put pressure on Bausch Health to demonstrate that it was growing organically through increases in the volume of products sold and not just through acquisitions and price hikes.

82.     In order to quell investor concerns that Bausch Health's growth was dependent on its ability to acquire other companies or assets, Bausch Health's senior executives – and Pearson in particular – constantly reassured the market that Bausch Health was growing through organic volume increases as opposed to unsustainable price increases on branded drugs. Although Bausch Health lost its bid to acquire Allergan in late 2014, questions surrounding Bausch Health's business model persisted. Throughout 2015, Bausch Health executives continued to tout the company's "strong organic volume growth" in the face of short-seller accusations to the contrary.

83.     In 2014 and 2015, Bausch Health reported what-appeared-to be strong organic growth on its legacy products, which Bausch Health termed "Same Store Organic Growth." Bausch Health's reported growth was particularly impressive in its dermatology segment.

84.     Unbeknownst to investors, these figures were a sham, and Bausch Health's statements about its organic growth were a lie.

85.     *First*, Bausch Health's organic growth was not driven more by volume increases than price increases. Bausch Health's statements that volume contributed more to growth than price were false – although investors had no way of knowing that at the time because only Bausch Health had access to the internal pricing and volume information necessary to make this determination.

86.     Bausch Health's top executives knew that these statements were false. For example, during a May 22, 2015 Royal Bank of Canada ("RBC") conference broadcast to investors, Pearson stated that "organic growth is more volume than price and [will] continue to be." However, in a February 3, 2016 statement posted on Bausch Health's website, which has since been deleted, Bausch Health admitted that Pearson's statement was not correct. Indeed, that admission is corroborated by an email sent from Bausch Health's Chief Financial Officer ("CFO"), Howard Schiller ("Schiller"), to Pearson on May 21, 2015, which stated unequivocally that price was "about 80%" of Bausch Health's organic growth for the quarter. Given the timing of this email, Pearson's statement reaffirming volume as the main driver of growth at the RBC conference the next day is particularly egregious because there is simply no basis in fact for Pearson to have touted volume as the main growth driver after being told by his CFO the previous evening that price increases accounted for 80% of growth.

87.     *Second*, Bausch Health secretly built its own covert distribution channel to create the illusion of organic growth in its dermatology segment.

88.     In 2013, Bausch Health decided to build a mail-order pharmacy that would serve only Bausch Health and would be largely controlled by Bausch Health.  Named after a chess move, the company was called Philidor Rx Services, LLC ("Philidor").

89.     Philidor was set up by Bausch Health in Horsham, Pennsylvania, and Bausch Health placed its employees at the location to help build Philidor.  Among other things, these Bausch Health employees developed Philidor's operational processes, hired Philidor employees, ran the training programs for script adjudication, and advised and assisted Philidor on its expansion to other states.  Bausch Health provided a $2 million advance to set up the business.  Bausch Health also maintained a sales force to promote access to Bausch Health branded products through Philidor.

90.     Bausch Health did not disclose Philidor's existence to investors because Philidor was a means to create the appearance of organic volume growth at Bausch Health.

91.     The way Philidor operated was extremely unorthodox and subjected Bausch Health to undisclosed business and regulatory risk.  Philidor was controlled by Bausch Health, only distributed Bausch Health products (except for a small number of generic products), and dispensed Bausch Health products without any economic downside.  As an ostensible third-party company independent of Bausch Health, Bausch Health was able to book revenue upon shipment of product to Philidor.

92.     In order to expand its operations more quickly and efficiently, Philidor acquired stakes in pharmacies in states where Philidor was not licensed.  Philidor sought to hide its connection to those pharmacies by using shell companies that, like Philidor itself, were also named after chess moves.  This undisclosed strategy allowed Philidor to ship product using the license numbers of other pharmacies, which meant that commercial insurers and pharmacy benefit

managers ("PBMs") did not realize that a single company controlled by Bausch Health was shipping massive amounts of Bausch Health product all over the country.  In early 2015, Bausch Health learned that certain PBMs had informed Philidor it was in violation of its pharmacy network agreements.

93.    In December 2014, Bausch Health entered into a purchase option agreement pursuant to which Bausch Health would have a free option to acquire Philidor over a period of ten years in return for an upfront payment of $100 million from Bausch Health. As a result of the purchase option agreement, Bausch Health's ability to book sales on delivery to Philidor ceased because Bausch Health thereafter consolidated Philidor's financial results with its own.

94.    Bausch Health did not publicly disclose the purchase option agreement with Philidor.  Bausch Health's disclosure thresholds in existence at the time required disclosure in Bausch Health's SEC filings of the details of transactions the size of the Philidor transaction, including the name of the entity with which the transaction was made.  However, on December 10, 2014, five days before executing the purchase option agreement, Bausch Health increased its disclosure thresholds in an amount that exceeded the anticipated total purchase option price for Philidor to avoid public disclosure of its transaction.

95.    In addition to concealing its relationship with Philidor, Bausch Health used Philidor to improperly book revenue.  In the ordinary course, when a pharmaceutical company sells its drugs to wholesalers or other customers, it recognizes the revenue from those sales upon delivery of the product to the customer so long as collectability is reasonably assured.  Prior to entering into the purchase option agreement with Philidor, Bausch Health recognized revenue on sales to Philidor in this manner.  After execution of the purchase option agreement, Bausch Health had to consolidate Philidor's financial statements, and Bausch Health had to change its accounting

treatment for sales to Philidor so that it could recognize revenue only when Philidor actually sold the Bausch Health drug to the end-user patient to whom it was prescribed.

96.     As the end of Q3 2014 approached, Bausch Health was on track to fall short of Wall Street expectations for revenue and earnings.  Accordingly, before the close of the third quarter of 2014, Bausch Health sent an unprecedented $75 million worth of product to Philidor.  The $75 million order far exceeded Philidor's existing credit limit.  Although Bausch Health had a standard operating procedure for approving credit limits, Bausch Health bypassed the steps of that procedure and approved the credit increase so the products could be shipped to Philidor and improperly booked as revenue.

97.     As the date for the closing of the purchase option agreement with Philidor approached, Bausch Health orchestrated another large sale to Philidor to help meet its fourth quarter 2014 earnings guidance.  Philidor placed orders totaling $130 million at a one-time special price of 4% over the wholesale acquisition cost ("WAC").  Philidor was contractually obligated to pay only 4% under WAC, so Bausch Health received 8% more for the products than it was contractually entitled to receive.

98.     Just like the $75 million order, the $130 million order required an increase of Philidor's credit limit.  And just like with the $75 million order, the credit increase was approved in violation of standard operating procedures.

99.     When Bausch Health realized that one of the drugs Philidor ordered was out of stock, Bausch Health substituted the out-of-stock product with a completely different product.  The substitution was designed to meet the dollar amount of the out-of-stock product.

100.     The purchase option agreement was signed on December 15, 2014, which was a Monday.  Bausch Health requested that Philidor open its doors on Saturday, rather than wait until

Monday, so that the $130 million order could be delivered before the purchase option agreement was executed.

101.    As planned, the $130 million order allowed Bausch Health to exceed its fourth quarter 2014 financial guidance.  Bausch Health's sales to Philidor contributed $0.12 to Bausch Health's fourth quarter 2014 earnings per share of $2.58.  Without the $130 million Philidor order, Bausch Health would not have met its earnings per share guidance of $2.55 per share.

102.    In August 2015, Bausch Health received an economic analysis of its sales to Philidor, which stated that the product sales growth through Philidor had been mostly "subsidized (free) through Philidor."  Thus, although Bausch Health was able to create the illusion of volume growth by funneling products through Philidor, it was essentially providing Philidor with free goods.

103.    The plan to hide Philidor came undone in October 2015 because of an obscure lawsuit that was unexpectedly filed against Bausch Health and picked up by short sellers suspicious of Bausch Health.  In an effort to distribute product in California (where Philidor had been denied a license), a Philidor subsidiary entered into a purchase agreement with a California pharmacy known as R&O.  Believing that Philidor was misusing its license, R&O's owner refused to remit payments that R&O received from third-party payors for product that Philidor shipped. Bausch Health's General Counsel then sent a demand letter to R&O for an alleged unpaid invoice of $65 million.  R&O filed a lawsuit asserting that it had no contractual obligations to Bausch Health.  With some research, short sellers were able to determine that R&O, Philidor, and an entire network of pharmacies appeared to be controlled by Bausch Health.

104.    Bausch Health spent a significant amount of time and effort trying to downplay the allegations of impropriety, insisting that its relationship with Philidor was perfectly normal and

falsely assuring investors that there were no accounting improprieties.   Bausch Health further asserted (falsely) that the reason it had not previously disclosed Philidor was because Philidor did not meet Bausch Health's preexisting disclosure thresholds.

105.   Nevertheless, Bausch Health suffered significant damage from the disclosure of its relationship.  Not only did it have to terminate its relationship with Philidor (which accounted for 7% of its revenues), but PBMs and prescribing dermatologists no longer trusted Bausch Health. This had a significant negative impact on Bausch Health's dermatology business.

106.   In 2016, the revenue recognition by Bausch Health on both the $75 million third quarter 2014 order and the $130 million fourth quarter 2014 order was found by an ad hoc committee of Bausch Health's Board of Directors (the "ad hoc committee") to be improper, and Bausch Health was forced to restate its 2014 financial statements.

107.   Bausch Health's former CFO, Schiller, and its former Chief Accounting Officer and Controller, Tanya Carro ("Carro"), were found by the ad hoc committee to have provided false information to the auditors and were forced to resign.

108.   The ad hoc committee found that the fictitious sales were the result of a lack of internal controls that included a "tone at the top" that emphasized meeting Wall Street expectations over compliance procedures.  Thereafter, Pearson left the company.

109.   As Bausch Health's fraud was gradually revealed to the market, the price of Bausch Health stock plummeted from over $250 per share in mid-2015 to under $25 per share by mid-2016, resulting in a market capitalization loss of almost $100 billion.

## II.   Plaintiffs Seek to Recover the Investment Losses Caused by Bausch Health's Fraud

110.   Several putative securities fraud class actions were filed in the United States District Court for the District of New Jersey against Bausch Health, its former and present directors

and officers, its auditor PricewaterhouseCoopers LLP ("PwC"), and the investment banks that marketed Bausch Health's securities to investors.

111.   These putative class actions were consolidated under the caption and docket number *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No. 15-cv-07658 (D.N.J.) (the "Class Action").

112.   In addition to the Class Action, scores of institutional and professional investors filed their own securities fraud actions (the "Direct Actions") and exercised their constitutional rights to exclude themselves from the class and to pursue their own remedies against Bausch Health.

113.   The district court granted in part and denied in part the defendants' motions to dismiss the Class Action on April 28, 2017.  Thereafter, the defendants moved to partially dismiss the then-pending Direct Actions.  That motion was granted in part and denied in part on January 12, 2018.  Other motions to dismiss later-filed Direct Actions were resolved over the course of 2018 and 2019.

114.   Following extensive stays of discovery due to, among other things, the pendency of criminal proceedings involving a former Bausch Health employee and a former executive of Philidor, fact discovery began in earnest in mid-2019.

115.   In September 2019, the parties to the Class Action and the Direct Actions agreed to the appointment of a Special Master to oversee discovery and to decide pretrial matters.

116.   In November 2019, the parties to the Class Action agreed to settle the Class Action for $1.21 billion with respect to all defendants except for PwC.  The settlement of the Class Action was well-received by Bausch Health's stakeholders because it represented a resolution of tens of billions of dollars in legal exposure for pennies on the dollar.

117.    The Class Action settlement left the plaintiffs to the Direct Actions as the only investors with securities fraud claims against Bausch Health and its former executives.  At the time of the Class Action settlement, there were over thirty Direct Actions pending against Bausch Health.

118.    In the wake of the Class Action settlement, the plaintiffs to the Direct Actions pressed forward with discovery.

119.    However, Bausch Health attempted to slow the progress of the Direct Actions to prevent them from reaching trial.  The district court has expressly found that Bausch Health engaged in "delay tactics" by seeking serial reviews of the Special Master's most basic discovery rulings.  In an October 15, 2021 order, the district court wrote:

> This litigation has been ongoing for six years and concerns events from way before then. . . .  When the Court consolidated these cases before a Special Master, it did so because the Special Master could perform "time consuming or detailed tasks that the district judge or a magistrate judge would be less efficient in accomplishing" and "oversee and facilitate complex discovery.". . . And, consistent with Rule 53 and its constitutional obligations, the Court imposed a two-step appeals process to ensure adequate review of the Special Master's rulings. . . .   Unfortunately, however, the Court's appointment of the Special Master has not resulted in the desired efficiency gains.  That appears to be because Defendants have made exuberant use of the appellate process laid out in the Court's Order to avoid complying with the Special Master's discovery orders.

120.    Notwithstanding Bausch Health's efforts to manufacture delay, Plaintiffs have pushed the Direct Actions through fact discovery and into expert discovery as swiftly as possible.

121.    As part of expert discovery, the plaintiffs to the Direct Actions have, through counsel, retained an experienced economist who is a reputable expert in calculating securities fraud damages.

122.    That expert has issued a report that was served on Bausch Health on February 2, 2022.  Applying tested damages methodologies approved by courts in the securities litigation

context, that expert has analyzed the plaintiffs' trade data and concluded that the plaintiffs to the Direct Actions have suffered $4.2 billion of aggregate damages (excluding significant pre-judgment interest) as a result of Bausch Health's securities fraud, of which Plaintiffs to this action represent $3 billion.

III.   **Bausch Health Hatches a Scheme that Could Prevent or Impede Plaintiffs' Recovery of Damages**

123.   Without any strong defense to Plaintiffs' securities fraud claims and having been chastised by the district court for trying to create delay, Bausch Health looked for another escape route.

124.   In connection with the settlement of the Class Action and/or document discovery in the Direct Actions, Bausch Health was provided access to trading data that shows that the plaintiffs to the Direct Actions have collectively suffered $4.2 billion in damages (excluding significant pre-judgment interest). Thus, even though Bausch Health publicly disclosed that it had resolved a majority of its securities fraud exposure for just $1.2 billion, on information and belief, it learned in early 2020 that it still faced liability for billions of dollars in damages for its securities fraud.

125.   Just a few weeks after announcing the agreement in principle to settle the Class Action, a global pandemic occurred. Bausch Health's stock lost nearly half of its value during the onset of the COVID-19 pandemic, and it reported a net loss of approximately $150 million during the first quarter of 2020. It held less than $1 billion in unrestricted cash as of March 31, 2020, and had $24.5 billion in long-term debt.

126.   Bausch Health's financial health deteriorated in the second quarter of 2020 as the pandemic continued. Its quarterly net loss grew from approximately $150 million for the first quarter to approximately $325 million for the second quarter.

127. A day after announcing these dire financial results, on August 6, 2020, Bausch Health announced its intention to spin off Bausch + Lomb into a separate public company (hereinafter, the "Spin-Off").

128. Bausch + Lomb sells high-end consumer products and is a significant cash-flow producer for Bausch Health, accounting for about half of Bausch Health's revenues.

129. Spinning the Bausch + Lomb business segment off would mean that both the cashflow generated by this durable business and the assets of Bausch + Lomb will become part of a company separate from Bausch Health.

130. Although Bausch Health publicly described the Spin-Off as an opportunity to "unlock value," the effect of the Spin-Off will be to prevent or impede creditors such as Plaintiffs from recovering on their substantial claims.

131. The Spin-Off provided a vehicle for Bausch Health to protect its most valuable assets from the contingent liabilities created by the pending Direct Actions.

132. As Bausch Health began to reveal more information about the Spin-Off, the true nature of the transaction and its impact on creditors became clearer.

133. On May 4, 2021, Bausch Health disclosed disturbing developments about the Spin-Off. Specifically, Bausch Health announced that Bausch + Lomb would have materially better creditworthiness than Bausch Health, with Bausch Health holding significantly more debt than Bausch + Lomb. For Bausch + Lomb, the net ratio of debt to cash flow is 2.5x, whereas for Bausch Health, the net ratio is 6.5x-6.7x.

134. Thus, Bausch Health is almost *three times as leveraged* as Bausch + Lomb as a result of the Spin-Off.

135. Bausch Health also announced on May 4, 2021, that its current CEO and CFO, Joseph Papa and Sam Eldessouky ("Eldessouky"), will jump ship to Bausch + Lomb rather than remain with the over-leveraged Bausch Health.

136. Bausch Health, on the other hand, will be led by current Bausch Health non-chief executives: Thomas Appio ("Appio") and Robert Spurr ("Spurr"). Since the announcement of the Spin-Off, according to SEC filings, both Appio and Spurr have sold thousands of shares of Bausch Health stock.

137. On August 3, 2021, Bausch Health announced its intention to pursue an IPO of another of its business units, Solta, which sells medical devices for aesthetic applications. Solta has contributed tremendous growth for Bausch Health over the past three years. Thus, the IPO of Solta, combined with the Spin-Off, leaves Bausch Health without two of its most profitable business units.

## IV. Bausch Health Publicly Downplays Its Liability to Plaintiffs

138. In order to obtain approval for the Spin-Off, Bausch Health has sought to persuade investors and creditors that any exposure arising from the Direct Actions can be safely ignored.

139. In 2021, Papa made a series of public misrepresentations about the Direct Actions, culminating in a recent appearance by Papa on national television.

140. On March 9, 2021, Papa spoke at the 2021 Barclays Global Healthcare Conference to discuss the Spin-Off. Although just two weeks before the conference Bausch Health had filed an annual report with the SEC disclosing twenty-one pending Direct Actions, Papa gave investors the impression that most of them had since been resolved. Specifically, Papa told investors that only a "couple" of Direct Actions, or opt-out claims, remained:

> So we've already put the – maybe a little bit [of] background just
> for everybody is that we had a stock drop litigation. We settled that
> stock drop litigation for $1.2 billion. We have already taken that

value of that cash. We've inserted into an escrow account and that is awaiting the judge's final decision on the allocation of that cash to the respective parties. But that's already been taken care of. ***That's behind us as a so-called risk. And we still have a couple of opt outs that we have to work our way through,*** but that particular $1.2 billion has been fully funded. It's sitting in escrow just awaiting the judge's final decision on allocation. So we're in good shape with that.

(Emphasis added).

141. That misleading statement was objectively incorrect. There were not just a "couple of opt outs" remaining. None of the twenty-one Direct Action cases identified in Bausch Health's annual report – accounting for more than $4.2 billion in damages – had been resolved.

142. On July 27, 2021, the plaintiffs to the Direct Actions filed a letter with the district court that, among other things, shared concerns that Papa was downplaying the amount of Bausch Health's potential legal exposure in the Direct Actions, which the plaintiffs asserted was over $3 billion.[4] That letter was the subject of news article published by *Bloomberg*.

143. On August 3, 2021, Bausch Health held its second quarter 2021 earnings call, during which an equity analyst from a major investment bank asked Bausch Health about its contingent liabilities with respect to the Direct Actions.

144. In response, Papa, (i) repeatedly told analysts that the plaintiffs' letter to the district court contained "misrepresentations" about the nature and extent of the Direct Action claims, and (ii) confirmed that Bausch Health was seeking to ignore any liabilities arising from the Direct Actions. Here is the relevant question and answer:

    Q – [Barclays Analyst]:

---

[4] The difference between the $3 billion representation to the district court and the plaintiffs to the Direct Actions' damages expert's number is because the $3 billion reflected the claims made in just the five largest direct actions, utilizing the damages model approved by the district court for distribution of the Class Action settlement.

Just a follow-up also on – yes, on the recent headlines around the $3 billion claim and the implications for the spin-off, both Bausch & Lomb and Solta?

A - Papa:

Yes.  We obviously have seen it.  We don't agree with the – we think there's some mischaracterizations and ***misrepresentations by the plaintiffs in terms of that claim against us*** in terms of the recent Bloomberg story.  ***We believe that the Bausch & Lomb spin-off has no connection to the pending litigation***, and we think that we announced the B&L spin-off going back now a year ago. So we don't think there's any misrepresentation.  ***We think they've made misrepresentations***. We think we're going to be able to continue to move forward with our programs.

And ***we don't think there's any legal basis for the concerns raised by the plaintiffs***.  And we believe it is merely a litigation tactic that they are employing to go forward with this. We obviously have already settled with the class.  And we believe that we've taken care of certainly the majority of this.  And ***to suggest that $3 billion number***, we'll just leave that for them to try to rationalize why they suggest that. But ***we certainly think misrepresentation, mischaracterizations of what they've stated.***

(Emphasis added).

145.    Contrary to Papa's statements, the plaintiffs to the Direct Actions made no "misrepresentations" to the district court, and the concerns they raised in their July 27, 2021 letter were valid.  The damages expert report served in the Direct Actions establishes aggregate damages of $4.2 billion (excluding significant pre-judgment interest).  Moreover, Bausch Health had refused to provide information to the plaintiffs to the Direct Actions confirming that Bausch Health would have sufficient assets and liquidity to pay potential judgments in the range reasonably expected by the plaintiffs to the Direct Actions.

146.    On December 14, 2021, Papa appeared on the popular CNBC show *Mad Money with Jim Cramer,* a television program directed at stock market investors.  In introducing Papa,

Jim Cramer briefly summarized the Spin-Off and then asked Papa why Bausch Health trades at an earnings multiple of only 6x.

147.    Papa commenced his answer by listing his three main achievements over the past five years.  The second major achievement he listed was that "***we've resolved the legacy legal issues that the company had***."  (Emphasis added).

148.    Papa did not qualify his statement, which signaled to investors that any remaining legacy liability had been resolved.  He did not acknowledge that there were still twenty-one Direct Actions pending against Bausch Health or that those actions represent billions of dollars in damages.

149.    In light of Papa's assurance, Jim Cramer expressed his belief that Bausch Health stock was "cheap," and urged his viewers to buy it.  Since Papa appeared on CNBC, Cramer has continued to encourage investors to buy Bausch Health stock, including on or about March 15, 2022.

150.    By telling the investing public that the Direct Actions have been resolved, Papa has painted a false portrait of Bausch Health's contingent liabilities on the eve of the Spin-Off.

## V.    <u>Bausch Health Is Receiving Less Than Reasonably Equivalent Value in the Spin-Off</u>

151.    On January 13, 2022, Bausch + Lomb filed an S-1 registration statement with the SEC disclosing certain details of the Spin-Off.  The S-1 confirms that Bausch Health is transferring significant assets to Bausch + Lomb without receiving reasonably equivalent value in return.

152.    Under the terms of the Spin-Off, Bausch Health is transferring substantially all of its assets relating to its vision health business to Bausch + Lomb.

153.    Bausch + Lomb is also assuming certain liabilities relating to the vision health business from Bausch Health but, importantly, on information and belief, Bausch + Lomb is not assuming any portion of the contingent liabilities relating to the Direct Actions.  Indeed, Bausch

Health CEO Papa told investors on August 3, 2021, that the new Bausch + Lomb would not face any litigation liabilities from the Direct Actions.  He stated: "We believe that the Bausch + Lomb spin-off has no connection to the pending litigation . . . ."

154.    Any assets or liabilities not transferred to Bausch + Lomb remain with Bausch Health.  On information and belief, this includes the contingent liabilities relating to the Direct Actions.

155.    Bausch + Lomb has agreed to issue approximately 80% of its equity to Bausch Health, but these shares will not remain there.

156.    Following the expiration of a lock-up period triggered by the IPO, Bausch Health intends to distribute its approximately 80% interest in Bausch + Lomb to Bausch Health's shareholders through a dividend.  Thus, rather than retain the majority of the value it receives from Bausch + Lomb (such that creditors could recover their claims from these assets), Bausch Health intends to transfer those shares to its existing equity holders without getting anything in return.

157.    In other words, in an integrated transaction, Bausch Health will have transferred its vision care assets (accounting for approximately 50% of its business) to Bausch + Lomb in return for an 80% interest in Bausch + Lomb plus the proceeds of a debt-raise, but it will immediately give away the equity value it receives and put it beyond the reach of creditors.

158.    Bausch Health is thus effectively receiving only the proceeds of the debt-raise in return for almost 50% of its business.

159.    On information and belief, the proceeds of the debt-raise do not constitute reasonably equivalent value for Bausch Health's vision health business.

## VI.     The Spin-Off Leaves Bausch Health Undercapitalized and Unable to Pay Its Creditors

160.     The result of the Spin-Off is that Bausch Health is severely undercapitalized and possibly even at risk of bankruptcy.

161.     The Spin-Off assigns no value to the contingent liabilities relating to the Direct Actions.  As explained above, those contingent liabilities of Bausch Health could be as high as $4.2 billion (or more after factoring in significant pre-judgment interest accrued since 2015).

162.     In addition to the Direct Actions, Bausch Health faces a potentially significant tax liability.

163.     In 2017, Bausch Health undertook an internal restructuring in the form of what is commonly known as a "Granite Trust transaction," which resulted in a recorded capital loss (the "2017 Capital Loss").

164.     Recently, Bausch Health received a "notice of proposed adjustment" from the Internal Revenue Service ("IRS") that would disallow the 2017 Capital Loss.

165.     If the IRS is correct that all or a substantial portion of the 2017 Capital Loss deduction should be disallowed, Bausch Health could be liable for unpaid taxes of up to $2.1 billion, plus interest and penalties.

166.     Despite this impending tax liability, Bausch Health has not recorded an income tax provision on its books for the unpaid tax.  On information and belief, this potential tax liability is being left with Bausch Health, and not transferred to Bausch + Lomb.

167.     In addition to unaccounted-for liabilities, one of Bausch Health's primary products is facing a "patent cliff," as well as a legal challenge to its market exclusivity.

168.     Xifaxan is, according to Bausch Health, the number one prescribed branded drug to treat irritable bowel syndrome.

169.    However, as a result of several patent litigation settlements reached by Bausch Health, in 2028 Xifaxan will become subject to generic competition.  As a practical matter, that means that Xifaxan will lose its competitive advantage in 2028, and no longer will generate the revenues and profits for Bausch Health that account for a substantial portion of Bausch Health's business outside of Bausch + Lomb.

170.    Xifaxan is facing other competitive threats.  There is unresolved patent litigation concerning Xifaxan, which in the midst of trial in federal court in Delaware.  Bausch Health's CFO recently confirmed on an earnings call that the 6.5x-6.7x Spin-Off leverage ratio for Bausch Health does not include a negative outcome for Bausch Health from that trial.

171.    Taking into account the contingent liabilities relating to the Direct Actions, the potential tax liability for the 2017 Capital Loss, and the loss of exclusivity on Xifaxan, the Spin-Off leaves Bausch Health in a dire financial position.

172.    One major investment bank that follows Bausch Health has estimated that the present value of Bausch Health's post-Spin-Off future cashflows falls below its target net debt – meaning that Bausch Health has a ***negative equity value*** based on its 6.5x-6.7x leverage multiple.  In other words, the value of Bausch Health's remaining assets will be worth less than its liabilities such that Bausch Health will be rendered insolvent.

173.    Other equity analysts that have modeled the Spin-Off have found that it leaves Bausch Health worthless.  One major investment bank that reviewed Bausch + Lomb's registration statement conducted a valuation that determined that Bausch + Lomb is worth almost $30 per share, whereas Bausch Health has a negative valuation of ***-$0.70 per share*** as a result of the Spin-Off ***without accounting for Bausch Health's contingent liabilities*** – the significance of which Bausch Health's current executives have downplayed to the market by making inaccurate

statements about the merits and nature of those actions.  Thus, a sophisticated financial institution has projected that Bausch Health will have a negative equity value of -$256 million following the Spin-Off, before accounting for the contingent liabilities associated with the Direct Actions, which further reduce the equity value of Bausch Health.

174.    As a result of the Spin-Off, Bausch Health will be left with, at best, remaining assets that will be insufficient to withstand normal, cyclical industry trends, dooming Bausch Health to failure.

175.    Debt analysts have had similarly negative reactions to the Spin-Off.  On November 18, 2021, Moody's downgraded its outlook for Bausch Health from "stable" to "negative." Moody's commented that:  "The outlook change to negative reflects execution risks of pending corporate transactions that are intended to result in the separation of the global Bausch + Lomb global eyecare business, leaving the remaining company with high financial leverage and greater concentration in Xifaxan."

176.    The trading prices of Bausch Health's debt reflect the market's objective view that Bausch Health will be rendered insolvent.  According to *Bloomberg*, some of Bausch Health's debt traded well below par, at its lowest price ever, in January 2022.  Furthermore, the credit default swap spread on Bausch Health debt has been steadily widening, which means that Bausch Health's implied risk of default (i.e., the risk that Bausch Health will be unable to pay its creditors) is growing.

## **FIRST COUNT**

### **Declaratory Judgment for Constructive Fraudulent Conveyance Under N.J.S.A. 25:2-25(a)(2)**

177.    Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

178.    Plaintiffs are creditors as that term is defined in N.J.S.A. 25:2-21.

179.    The securities fraud claims asserted by Plaintiffs in the applicable Direct Actions are claims as that term is defined in N.J.S.A. 25:2-21.

180.    Bausch Health has transferred or will transfer valuable assets from itself to the new company (Bausch + Lomb), including the assets of its vision health business.

181.    Bausch Health has transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Bausch Health will be insufficient to satisfy outstanding liabilities, including the multi-billion-dollar contingent liability based on Plaintiffs' federal securities fraud claims.

182.    At the time of the transfer, Bausch Health was engaged or was about to engage in a business or a transaction for which the remaining assets of Bausch Health were unreasonably small in relation to the business or transaction.

183.    At the time of the transfer, Bausch Health intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

184.    Plaintiffs seek a judicial declaration that Bausch Health's transfer of assets to Bausch + Lomb are voidable under N.J.S.A. 25:2-25(a)(2) to the extent necessary to satisfy Plaintiffs' claims.

185.    An actual case or controversy exists between Plaintiffs and Defendants regarding whether Bausch Health's transfer of assets to Bausch + Lomb is voidable under N.J.S.A. 25:2-25(a)(2) to the extent necessary to satisfy Plaintiffs' claims.    Accordingly, the declaratory judgment sought is justiciable.

## SECOND COUNT

### Declaratory Judgment for Constructive Fraudulent Conveyance Under N.J.S.A. 25:2-27

186.   Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

187.   Plaintiffs are creditors as that term is defined in N.J.S.A. 25:2-21.

188.   The securities fraud claims asserted by Plaintiffs in the applicable Direct Actions are claims as that term is defined in N.J.S.A. 25:2-21.

189.   Bausch Health has transferred or will transfer valuable assets from itself to the new company (Bausch + Lomb), including the assets of its vision health business.

190.   The Direct Action claims arose before the transfer was made.

191.   Bausch Health has transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Bausch Health will be insufficient to satisfy outstanding liabilities, including the multi-billion-dollar contingent liability based on Plaintiffs' federal securities fraud claims.

192.   As a result of the transfer, Bausch Health will become insolvent.

193.   Plaintiffs seek a judicial declaration that Bausch Health's transfer of assets to Bausch + Lomb is voidable under N.J.S.A. 25:2-27 to the extent necessary to satisfy Plaintiffs' claims.

194.   An actual case or controversy exists between Plaintiffs and Defendants regarding whether Bausch Health's transfer of assets to Bausch + Lomb is voidable under N.J.S.A. 25:2-27 to the extent necessary to satisfy Plaintiffs' claims.  Accordingly, the declaratory judgment sought is justiciable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief and judgment, as follows:

(a)     Declaring that Bausch Health's transfer of assets to Bausch + Lomb is voidable under the New Jersey Voidable Transactions Act to the extent necessary to satisfy Plaintiffs' claims;

(b)     Declaring that Bausch + Lomb remains liable to Plaintiffs for the amount of any judgment they obtain against Bausch Health;

(c)     Awarding Plaintiffs their reasonable costs and expenses incurred in this action; and

(d)     Such other and further relief as the Court may deem just and proper.

Dated: March 24, 2022                    **ROLNICK KRAMER SADIGHI LLP**

By:     */s/ Lawrence M. Rolnick*
            Lawrence M. Rolnick
                Attorney ID No. 012171992
            Marc B. Kramer
                Attorney ID No. 016241987
            Sheila A. Sadighi
                Attorney ID No. 040921999
            Michael J. Hampson
                Attorney ID No. 030812006
            300 Executive Drive, Suite 275
            West Orange, NJ  07052
            Tel: 212.597.2800
            Fax:  212.597.2801
            lrolnick@rksllp.com
            mkramer@rksllp.com
            ssadighi@rksllp.com
            mhampson@rksllp.com

            *Counsel for GMO Plaintiffs, Brahman*
            *Plaintiffs, SAAMCo Plaintiffs, Discovery*
            *Plaintiffs, MSD Plaintiffs, and Incline Plaintiffs*

**FLEISCHMAN BONNER & ROCCO LLP**

By:_____*/s/Patick L. Rocco*
Patrick L. Rocco
   Attorney ID No. 24781988
447 Springfield Avenue, Second Floor
Summit, NJ 07901
Tel: 908.516.2045
Fax: 908.516.2049
procco@fbrllp.com

**DIETRICH SIBEN THORPE LLP**

Matthew P. Siben*
2292 Faraday Ave., Suite 100
Carlsbad, CA 92008
Tel: 310.300.8450
Fax: 310.300.8401
matthew@dstlegal.com

David A. Thorpe*
Shawn M. Hays*
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Tel. 310.300.8450
Fax 310.300-8401
david@dstlegal.com

*pro hac vice* forthcoming

*Counsel for Plaintiff Okumus*

**KIRBY McINERNEY LLP**

By:_____*/s/Karen M. Lerner*
Karen M. Lerner
   Attorney ID No. 020931991
Daniel Hume*
Ira M. Press*
Meghan J. Summers*
250 Park Avenue, Suite 820
New York, NY 10177
Tel: 212.371.6600
Fax: 212.751.2540
klerner@kmllp.com
dhume@kmllp.com
ipress@kmllp.com
msummers@kmllp.com


Mark A. Strauss, Esq.*
**MARK A. STRAUSS LAW, PLLC**
555 Madison Avenue, 5th Flr.
New York, NY 10022
Tel: 212.729.9496
Fax: 212.202.6443
mark.strauss@markastrausslaw.com

*pro hac vice* forthcoming

*Counsel for Maverick Plaintiffs*

**GRANT & EISENHOFER P.A.**

By:  ___/s/ Jeffrey A. Almeida___
Jeffrey A. Almeida
  Attorney ID No. 037601997
Daniel Berger*
Caitlin Moyna*
123 Justison Street
Wilmington, DE 19801
Tel: 302.622.7000

*pro hac vice forthcoming*

*Counsel for Plaintiff PGGM, Plaintiff Schilders, the Pacific Funds Plaintiffs, Plaintiff USAA, Plaintiff INKA, and Plainitiff GIC*

**KASOWITZ BENSON TORRES LLP**

By:  ___/s/Stephen W. Tountas___
Stephen W. Tountas
  Attorney ID No. 037962003
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: 212.506.1739
Fax: 973.643.2030
stountas@kasowitz.com

**MOTLEY RICE LLC**

Serena P. Hallowell*
777 Third Ave.
New York, NY 10017
Tel: 212.577.0040
Fax: 843.216.9450
shallowell@motleyrice.com

**LABATON SUCHAROW LLP**

Thomas G. Hoffman, Jr.*
140 Broadway
New York, NY 10005
Tel: 212.907.0700
Fax: 212.818.0477
thoffman@labaton.com
mcanty@labaton.com

*pro hac vice forthcoming*

*Counsel for the Privet Plaintiffs*

## CERTIFICATIONS PURSUANT TO RULE 4:5-1

I hereby certify to the best of my knowledge and belief pursuant to R. 4:5-1(b)(2) that, other than the Direct Actions detailed above, there are no other civil proceedings either pending or contemplated with respect to the matter in controversy herein and no other parties who should be joined in the action.

Dated:  March 24, 2022

By:   _Lawrence M. Rolnick_
Lawrence M. Rolnick, Esq.
ROLNICK KRAMER SADIGHI LLP
*Counsel for GMO Plaintiffs,*
*Brahman Plaintiffs, SAAMCo Plaintiffs,*
*Discovery Plaintiffs, MSD Plaintiffs, and*
*Incline Plaintiffs*

By:   _Stephen W. Tountas_
Stephen W. Tountas
KASOWITZ BENSON TORRES LLP
*Counsel for the Privet Plaintiffs*

By:   _Karen M. Lerner_
Karen M. Lerner, Esq.
KIRBY McINERNEY LLP
*Counsel for Maverick Plaintiffs,*

By:   _Patrick L. Rocco_
Patrick L. Rocco
FLEISCHMAN BONNER & ROCCO LLP
*Counsel for Plaintiff Okumus*

By:   _Jeffrey A. Almeida_
Jeffrey A. Almeida
GRANT & EISENHOFER P.A.
*Counsel for Plaintiff PGGM, Plaintiff*
*Schilders, the Pacific Funds Plaintiffs,*
*Plaintiff USAA, Plaintiff INKA, and Plainitiff*
*GIC*

Pursuant to R. 4:5-1(b)(3), I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

Dated:  March 24, 2022

By:   _Lawrence M. Rolnick_
Lawrence M. Rolnick, Esq.
ROLNICK KRAMER SADIGHI LLP
*Counsel for GMO Plaintiffs,*
*Brahman Plaintiffs, SAAMCo Plaintiffs,*
*Discovery Plaintiffs, MSD Plaintiffs, and*
*Incline Plaintiffs*

By:   _Karen M. Lerner_
Karen M. Lerner, Esq.
KIRBY McINERNEY LLP
*Counsel for Maverick Plaintiffs,*

By:   _Stephen W. Tountas_____
      Stephen W. Tountas
      KASOWITZ BENSON TORRES LLP
      *Counsel for the Privet Plaintiffs*

By:   _Patrick L. Rocco_____
      Patrick L. Rocco
      FLEISCHMAN BONNER & ROCCO LLP
      *Counsel for Plaintiff Okumus*

By:   _Jeffrey A. Almeida_____
      Jeffrey A. Almeida
      GRANT & EISENHOFER P.A.
      *Counsel for Plaintiff PGGM, Plaintiff*
      *Schilders, the Pacific Funds Plaintiffs,*
      *Plaintiff USAA, Plaintiff INKA, and Plainitiff*
      *GIC*

## Chancery Case Summary

**Case Number:** SOM C-012010-22

**Case Caption:**  Gmo Trust Et Al V Bausch Health Companies Inc Et

| | | |
|---|---|---|
| **Court:** General Equity | **Venue:** Somerset | **Case Initiation Date:**  03/24/2022 |
| **Case Type:** Corporation/Business-Other | **Case Status:** Active | |
| **Case Track:** | **Judge:** | |

**Plaintiffs**

**Discovery Global Citizens Mast AKA  Discovery Global Citizens Master Fund,Ltd**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Discovery Global Focus Masterf AKA  Discovery Global Focus Masterfund,Ltd.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Sunamerica Series Trust**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Seasons Series Trust**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Msd Torchlight Partners,L.P.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Discovery Global Macro Master AKA  Discovery Global Macro Master Fund, Ltd**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Discovery Global Opportuniy Ma AKA  Discovery Global Opportunity Master Fund,Ltd.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Okumus Opportunisticvalue Comp AKA  Okumus Opportunisticvalue Company Ltd**

| | | | |
|---|---|---|---|
| **Party Description:** Company | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Incline Global Els Lp**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Incline Global Master Lp**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Msd Torchlight Partners (Mm),L AKA  Msd Torchlight Partners (Mm),L.P.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Stephanie S. Flinn Master Part AKA  Stephanie S. Flinn Master Partnership**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Stephanie And Lawrence Flinnj AKA  Stephanie And Lawrence Flinn Jr Charitable Tru**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman Partners Ii,L.P.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman Partners Iii,L.P.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman Partners Iioffshore,L AKA  Brahamn Partners Ii Offshore, Ltd.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman Institutional Partners AKA  Brahman Institutional Partners,L.P.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman C.P.F. Partners L.P.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman Partners Iv,L.P.**

| **Party Description:** Business | | | **Attorney Name:** |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Brahman Partners Iv(Cayman),L AKA  Brahman Partners Iv (Cayman), Ltd**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Bh Investments Fund,L.L.C.**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Gmo Trust**

**Party Description:** Other

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:** LROLNICK@RKSLLP.COM

**East 71, Ltd**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Gmo Developed Worldstock Fund**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Gmo Implementation Fund**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Valic Company Ii**

**Party Description:** Company

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Gmo Benchmark Free Fund**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Valic Company I**

**Party Description:** Company

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Gmo Alpha Only Fund**

**Party Description:** Business

**Address Line 1:**

**City:**                      **State:**

**Attorney Email:**

**Gmo International Equity Fund**

**Party Description:** Business

**Address Line 1:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:** Lawrence M Rolnick

**Attorney Bar ID:** 012171992

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

---

**Address Line 2:**

**Attorney Name:**

**Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gmo International Large/Mid Ca AKA  Gmo International Large/Mid Cap Equity Fund**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Lawrence Flinn Jr**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Flinn Investments,Llc**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**2012 Dynasty Uc Llc**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gic Private Ltd.**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gmo Mean Reversion Fund (Onsho AKA  Gmo Mean Reversion Fund (Onshore)**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Internationale Kapitalanlagegs AKA  Internationale Kapitalanlagegesellschaft Mbh**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gmo Equity Trust**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gmo Master Portfolios (Onshore AKA  Gmo Master Portfolios (Onshore),L.P.**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gmo Offshore Masterportfolios AKA  Gmo Offshore Master Portfolios Ii Ltd.**

**Party Description:** Business            **Attorney Name:**
**Address Line 1:**            **Address Line 2:**          **Attorney Bar ID:**

**City:**             **State:**            **Zip:** 00000          **Phone:**
**Attorney Email:**

**Gmo Event-Driven Master Portfo AKA  Gmo Event-Driven Master Portfolio**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Gmo World Equity Allocation In AKA  Gmo World Equity Allocation Investment Fund Pl**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Gmo Global Real Return (Ucits) AKA  Gmo Global Real Return (Ucits) Fund**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Gmo Funda Plc**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Gmo Global Equity Allocationi AKA  Gmo Global Equity Allocation Investment Fund**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Gmo Mean Reversion Special Sol AKA  Gmo Mean Reversion Special Solution Fund,L.P.**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Gmo Tax-Managed Global Balance AKA  Gmo Tax-Managed Global Balanced Portfolio**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Lfjr 2012 Dynasty Llc-Seriesa**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Lawrence Flinn Jr. 1975 Trustf AKA  Lawrence Flinn Jr. 1975 Trustfbo Marion Flinn**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**1975 Trust Fbo Lawrence Flinn AKA  1975 Trust Fbo Lawrence Flinniii**

**Party Description:** Business

**Address Line 1:**

**City:**  **State:**

**Attorney Email:**

**Address Line 2:**

**Zip:** 00000

**Attorney Name:**

**Attorney Bar ID:**

**Phone:**

**Lfjr 2010 Grat Remainder Trust**

**Party Description:** Business

**Attorney Name:**

| | | | |
|---|---|---|---|
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**1975 Trust Fbo Adriane S. Flin AKA  1975 Trust Fbo Adriane S. Flinn**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Lawrence Flinn Jr**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Maverick Fund Usa,Ltd.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Maverick Long Fund,Ltd.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Maverick Capital Ltdas Assigne AKA  Maverick Capital Ltdas Assognee Of Maverick Fu**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Maples Liquidation Services Li AKA  Maples Liquidation Service Ltd As Voluntary Li**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Maverick Long Enhanced Fund,Lt AKA  Maverick Long Enhanced Fund,Ltd.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Maverick Fund Ii,Ltd.**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Gmo Tax-Managed Internationale AKA  Gmo Tax-Managed International Equities Fund**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | | |

**Pacific Funds Seriestrust**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Stichting Bedrijfstakpensioen AKA  Stichting Bedrijfstakpensioenfonds Voor Het Sc**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Stichting Pggm Depositary**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Usaa Mutual Funds Trust**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Pacific Select Fund**

| | | | |
|---|---|---|---|
| **Party Description:** Business | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Defendants**

**Bausch And Lomb Corporation**

| | | | |
|---|---|---|---|
| **Party Description:** Corp | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Bausch Health Companies Inc**

| | | | |
|---|---|---|---|
| **Party Description:** Corp | | | **Attorney Name:** |
| **Address Line 1:** | | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:**

**Case Actions**

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 03/24/2022 | Complaint uploaded by Case Management Staff submitted by LAWRENCE M ROLNICK | CHC202268232 | 03/29/2022 |