IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GMO TRUST, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BAUSCH HEALTH COMPANIES INC., and BAUSCH + LOMB CORPORATION,<br><br>Defendants. | **Civil Action No. 3:22-cv-01823**<br><br>Removed From:<br>Superior Court of New Jersey<br>Chancery Division<br>Somerset County<br><br>State Court Dkt. No. SOM-C-12010-22<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**Motion Day:  June 21, 2022** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO REMAND

Lawrence M. Rolnick
**ROLNICK KRAMER SADIGHI LLP**
300 Executive Drive, Suite 275
West Orange, NJ  07052
Tel: 212.597.2800
  *Counsel for GMO Plaintiffs, Brahman Plaintiffs, SAAMCo Plaintiffs, Discovery Plaintiffs, MSD Plaintiffs, and Incline Plaintiffs*

Patrick L. Rocco
**FLEISCHMAN BONNER & ROCCO LLP**
447 Springfield Avenue, Second Floor
Summit, NJ 07901
Tel: 908.516.2045
  *Counsel for Plaintiff Okumus*

Karen M. Lerner
**KIRBY McINERNEY LLP**
250 Park Avenue, Suite 820
New York, NY 10177
Tel: 212.371.6600
  *Counsel for Maverick Plaintiffs*

Stephen W. Tountas
**KASOWITZ BENSON TORRES LLP**
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: 212.506.1739
  *Counsel for the Privet Plaintiffs*

Jeffrey A. Almeida
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: 302.622.7000
  *Counsel for Plaintiff PGGM, Plaintiff Schilders, the Pacific Funds Plaintiffs, Plaintiff USAA, Plaintiff INKA, and Plaintiff GIC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................................1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................6

    A.    After Five Years of Litigation, Bausch Health Spins Off Its Vision Health Business, Attempting to Put Material Assets Beyond the Reach of Potential Judgment Creditors ........................................................................6

    B.    Bausch Health Is Not Receiving Reasonably Equivalent Value for the Spin-Off to the Substantial Detriment of Potential Judgment Creditors ................7

    C.    The Spin-Off Leaves Bausch Health Severely Undercapitalized and Unable to Pay Potential Judgment Creditors ..........................................................8

    D.    Plaintiffs File Suit to Protect Their Rights as Statutory Creditors of Bausch Health under the New Jersey Voidable Transactions Act ........................9

STANDARD OF REVIEW.............................................................................................12

ARGUMENT ...............................................................................................................12

    I.    This Court Lacks Subject Matter Jurisdiction over an Action Under the New Jersey Declaratory Judgment Act for Relief Under the New Jersey Voidable Transactions Act ..................................................................................12

    II.    SLUSA Does Not Apply to Plaintiffs' Action ............................................13

    A.    SLUSA Was Passed By Congress to Prevent Attempts to Evade the PSLRA, Not to Prevent State Law Remedies to Protect Potential Judgment Creditors ...................................................................................13

    B.    SLUSA Does Not Apply Because Securities Fraud Is Not a Factual Predicate that Must Be Proven Before Plaintiffs are Entitled to a Declaratory Judgment that the Spin-Off Is a Voidable Transaction Under New Jersey State Law ............................................................................15

    C.    Pursuant to Binding Third Circuit Law – which Defendants Failed to Cite – SLUSA Does Not Preempt Plaintiffs' State Law Claim ....................................18

    D.    SLUSA Does Not Apply for the Independent Reason that Plaintiffs' State Law Claims Seek Equitable Relief, Not Damages ................................23

    E.    SLUSA Preemption Here Would Lead to Absurd Results that Exceed Congress's Powers.........................................................................................25

    III.    If Remand Is Granted, Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs ...............................................................................................26

    CONCLUSION .........................................................................................28

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
   769 F.3d 204 (3d Cir. 2014) ....................................................................................12

*Boyer v. Snap-On Tools Corp.*,
   913 F.2d 108 (3d Cir. 1990) ....................................................................................12

*Capital Investment Funding, LLC v. Lancaster Resources, Inc.*,
   2014 WL 5798121 (D.N.J. Nov. 06, 2014) ............................................................23

*Discovery Global Citizens Master Fund, Ltd v. Valeant Pharmaceuticals International, Inc.*,
   2018 WL 406046 (D.N.J. Jan. 12, 2018)................................................................14

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*,
   485 U.S. 568 (1988) ...............................................................................................26

*Espinosa v. Continental Airlines*,
   80 F. Supp. 2d 297 (D.N.J. 2000)..........................................................................27

*Eyal Lior v. Sit*,
   913 F. Supp. 868 (D.N.J. 1996)..............................................................................27

*Ford Motor Credit Co. v. Chiorazzo*,
   529 F. Supp. 2d 535 (D.N.J. 2008)..................................................................17, 23

*Forum Insurance Co. v. Devere Ltd.*,
   151 F. Supp. 2d 1145 (C.D. Cal. 2001) .................................................................25

*Gibson v. PSGroup Holdings, Inc.*,
   2000 WL 777818 (S.D. Cal. June 14, 2000) .........................................................25

*In re Kingate Management Ltd. Litigation*,
   784 F.3d 128 (2d Cir. 2015) ............................................................................passim

*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ..................................................................................23

*Kearney Construction Co. v. Travelers Casualty & Surety Co. of America*,
   2020 WL 6801863 (M.D. Fla. Nov. 19, 2020)......................................................23

*Kutten v. Bank of America, N.A.*,
   2007 WL 2485001 (E.D. Mo. Aug. 29, 2007) .................................................21, 22

*LaSala v. Bordier et Cie*,
  519 F.3d 121 (3d Cir. 2008) ................................................................................passim

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) ................................................................................27

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ................................................................................13

*Mints v. Educational Testing Service*,
  99 F.3d 1253 (3d Cir. 1996) ................................................................................27

*North Sound Capital LLC v. Merck & Co.*,
  938 F.3d 482 (3d Cir. 2019) ................................................................................13

*Rowinski v. Salomon Smith Barney Inc.*,
  398 F.3d 294 (3d Cir. 2005) ................................................................................15, 16, 18

*Rubin v. Reinhard*,
  2009 WL 862241 (S.D. Cal. 2009) ................................................................................24

*Samuel-Bassett v. KIA Motors America, Inc.*,
  357 F.3d 392 (3d Cir. 2004) ................................................................................12

*Stephens v. Gentilello*,
  853 F. Supp. 2d 462 (D.N.J. 2012) ................................................................................12

*Wald v. C.M. Life Insurance Co.*,
  2001 WL 256179 (N.D. Tex. Mar. 8, 2001) ................................................................................24

**STATUTES**

15 U.S.C. § 78 ................................................................................1, 14, 15, 23

28 U.S.C. § 1332 ................................................................................12

28 U.S.C. § 1446 ................................................................................21

28 U.S.C. § 1447 ................................................................................1, 12, 26

N.J.S.A. 25:2-20 ................................................................................9, 12

N.J.S.A. 25:2-21 ................................................................................3, 10, 23

N.J.S.A. 25:2-25 ................................................................................16

N.J.S.A. 25:2-27 ................................................................................11, 16

N.J.S.A. 25:2-29 ................................................................................25

N.J.S.A. 2A:16-53 .................................................................................................................9, 12

## COURT RULES

FED. R. CIV. P. 11.......................................................................................................................21

## OTHER AUTHORITIES

S. Rep. No. 105-182 (1998)........................................................................................................13

MODEL UNIFORM VOIDABLE TRANSACTIONS ACT ........................................................................17

Plaintiffs to the above-captioned action ("Plaintiffs") respectfully submit this memorandum of law in support of their motion to remand and, if remand is granted, for reasonable attorneys' fees and costs, pursuant to 28 U.S.C. § 1447 and 15 U.S.C. § 78bb(f)(3)(D).

## PRELIMINARY STATEMENT

Plaintiffs are potential multi-billion-dollar creditors of Defendant Bausch Health Companies Inc. ("Bausch Health") that have been litigating against it for as long as five years. After paying more than $1 billion to settle a related class action and settling an SEC enforcement action, Bausch Health is now seeking to spin off its most valuable assets to a new company, Defendant Bausch + Lomb Corporation ("Bausch + Lomb"), and put them outside the reach of creditors. In response, Plaintiffs availed themselves of a remedial state law designed to protect litigants and other potential creditors from such a transaction by having it declared a fraudulent conveyance pursuant to the New Jersey Voidable Transactions Act. In response, Bausch Health improperly removed the state law declaratory judgment action to this Court, arguing that it is a securities fraud class action preempted by the Securities Litigation Uniform Standards Act ("SLUSA").

Congress passed SLUSA to effectuate the sweeping policy changes imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA was enacted to discourage abusive practices in which marginal securities class action claims – known as "strike suits" – were brought against innocent defendants. To ensure that only meritorious claims would go forward, and to discourage strike suits, the PSLRA imposed significant legal reforms on securities class actions. Soon after the passage of the PSLRA, however, securities class action firms sought to evade the measures imposed by the PSLRA by filing class action securities claims in state court under state common law claims, such as negligent misrepresentation and common law fraud. To prevent this end-run around the PSLRA, Congress passed SLUSA to ensure that any class action

seeking damages for misrepresentations in connection with the sale of securities be brought in federal court and assert federal claims.  As the Second Circuit recently and cogently explained, SLUSA was a direct response to the attempts of class action lawyers to avoid the PSLRA:

> [F]inding that baseless class-action claims in suits under [the Securities] Acts were damaging the United States economy, Congress passed the PSLRA, imposing restrictions on such claims. Then, finding that plaintiffs were escaping the limitations of the PSLRA, which applied only to claims brought under the 1933 and 1934 [Securities] Acts, by framing their class-action claims as violations of state law so that the PSLRA would not apply, Congress passed SLUSA for the purpose of closing that loophole.

*In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 146 (2d Cir. 2015).

The state law action brought by Plaintiffs is not such an action.  Indeed, Plaintiffs have already brought federal securities claims in federal court, the heightened requirements of the PSLRA have been applied, and their claims have passed muster.  Prosecution of those claims has now lasted almost six years.  Plaintiffs' new action seeks only to ensure the *collectability* of the potential judgment by having a transaction – intended to remove billions of dollars of assets from Bausch Health and outside the reach of potential judgment creditors – declared a constructive fraudulent conveyance and allowing enforcement of the potential judgment against the recipient of those assets.

This case was brought under the New Jersey Voidable Transactions Act, and there is no basis on which to remove it and exercise federal jurisdiction.  Plaintiffs' state law claims (for a declaratory judgment that the transaction constitutes a fraudulent conveyance) plainly do not arise under federal law, and there is no diversity jurisdiction.

Moreover, Defendants' purported basis for removal – SLUSA – does not apply to Plaintiffs' action for several incontrovertible reasons.  Although Plaintiffs explain that they are pursuing federal securities law claims in federal court against the Defendants – and accordingly

the Complaint literally contains "allegations" describing such claims – those allegations need not

be proven to establish Plaintiffs' state law claims.  Thus, they do not seek to "evade SLUSA by

camouflaging allegations" of federal securities fraud "in the guise of allegations that do not."

*Kingate*, 784 F.3d at 149.  If the allegations of securities fraud are not a factual predicate needed

to prove the state law claim and the success of the action does not depend on a showing that the

defendant committed securities fraud, SLUSA does not apply.  Indeed, the Third Circuit Court of

Appeals – in a case that Defendants inexplicably fail to cite in their Notice of Removal – has made

it clear that such background allegations do not render an action removable under SLUSA.  *LaSala

v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008).  Here, the allegations of securities fraud simply

describe the claims Plaintiffs are pursuing in federal court and are thus extraneous to – and not a

factual predicate for – proving the state law claims.

Plaintiffs' state law claims in this action do not require proof of securities fraud, but instead

require proof that assets were (or will be) transferred to a third party for less than "reasonably

equivalent value" and will thus hinder recoveries by creditors, including potential judgment

creditors.  The underlying *legal* basis for a potential judgment creditor's claim – whether it lies in

tort, contract, or otherwise – is completely irrelevant to whether a litigant qualifies as a potential

judgment creditor under the New Jersey Voidable Transactions Act and is irrelevant to a

determination that a transaction is voidable.  The New Jersey Voidable Transactions Act provides

relief to a judgment creditor "whether or not the right is reduced to judgment."  N.J.S.A. 25:2-21.

Once a judgment is obtained in this Court, it will not be relitigated in state court.

Furthermore, SLUSA expressly states it applies only to actions for damages.  Here,

Plaintiffs seek only a declaration that the spin-off constitutes a voidable transaction.  This is not

an action for damages.  Plaintiffs seek only equitable remedies.  Indeed, the purpose of the state

law proceeding is to ensure that any money judgment in Plaintiffs' underlying securities fraud actions – secured in federal court in conformity with the PSLRA – will be enforceable against the recipient of the fraudulent conveyance.  Because there is no federal subject matter jurisdiction and SLUSA is inapplicable, this case must be remanded to state court.

Plaintiffs are unaware of any court – and Defendants have cited no such case – that has applied SLUSA removal to a state law claim under the Uniform Voidable Transactions Act (on which the New Jersey statute is based) or its predecessor, the Uniform Fraudulent Transfer Act. That is not surprising, because it would do violence to the Congressional intent behind SLUSA, which was enacted to prevent claims that were really securities class actions from being camouflaged as state court claims to evade the rigorous standards imposed by the PSLRA. Defendants' invocation of SLUSA makes even less sense because Plaintiffs did not try to file their securities fraud claims in state court to avoid the PSLRA.  On the contrary, Plaintiffs filed their federal securities fraud claims *in federal court* and, four years ago, this Court upheld those claims *applying the PSLRA*.  Plaintiffs' claims under the New Jersey Voidable Transactions Act are not securities fraud claims dressed up as something else.  The fraudulent conveyance claims are based on entirely different conduct (the 2022 spin-off of Bausch + Lomb) than the conduct that gave rise to Plaintiffs' securities fraud claims (the stock fraud by Bausch Health and its former executives from 2013 through 2015).  Accordingly, SLUSA preemption is plainly inapplicable.

Despite this, Defendants advance two misguided reasons why this Court should be the first to apply SLUSA to a claim under the Uniform Fraudulent Transfers Act or the Uniform Voidable Transactions Act.  *First*, Defendants incorrectly assert that the state court must adjudicate and decide the value of Plaintiffs' federal securities fraud claims to determine Bausch Health's insolvency.  That is not true.  Among other things, Plaintiffs have alleged that Bausch Health is

already worth no equity value ***based on valuations that do not even account for the value of Bausch Health's contingent liability to Plaintiffs***.  Moreover, Plaintiffs are not required to try their federal securities claims in New Jersey state court to sustain claims under the New Jersey Voidable Transactions Act.  The statute expressly recognizes that legal claims do not need to be reduced to a judgment, and can be contingent and unliquidated, for a plaintiff to qualify as a statutory creditor.  *Second*, Defendants mischaracterize the relief sought by Plaintiffs as a claim for "damages" to try to shoehorn this action within the scope of SLUSA.  However, Plaintiffs merely ask the state court to declare that Bausch Health's transfer of assets to Bausch + Lomb is voidable under the New Jersey Voidable Transactions Act to the extent necessary to satisfy any judgment ultimately obtained by Plaintiffs in their federal securities fraud actions already pending in this Court against Bausch Health, and to declare that Bausch + Lomb remains liable to Plaintiffs for the amount of any such judgment.

Simply put, New Jersey can and has provided a protective remedy for potential judgment creditors to avoid the effects of a transaction designed to hinder their ability to enforce a prospective judgment without requiring the court to re-adjudicate the underlying claims of such creditors.  Thus, the state court need not assess the merits or determine the value of Plaintiffs' federal securities law claims to adjudicate Plaintiffs' request for a declaratory judgment that the transaction at issue qualifies as a fraudulent conveyance.  Nor will the state court be asked to award Plaintiffs damages.  No federal law permits removal of such a state law claim to federal court, and this case must thus be promptly remanded.

Furthermore, because Defendants lacked an objectively reasonable basis for seeking removal of this case from state court, the Court should award Plaintiffs their attorneys' fees and costs incurred because of the removal.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.      **After Five Years of Litigation, Bausch Health Spins Off Its Vision Health Business, Attempting to Put Material Assets Beyond the Reach of Potential Judgment Creditors**

Plaintiffs are litigants who have been pursuing claims against Valeant Pharmaceuticals International, Inc., now known as Bausch Health, for more than five years.  As the litigation has progressed, Bausch Health has increasingly faced financial difficulties due, in part, to an overwhelming debt load.  Bausch Health's already precarious financial problems were exacerbated by the global pandemic, which negatively impacted its cashflows.  (Compl. ¶ 125.)[1]  The company's stock lost nearly half of its value during the onset of the COVID-19 pandemic, and it reported a net loss of approximately $150 million during the first quarter of 2020 alone.  (*Id.*)  Bausch Health held less than $1 billion in unrestricted cash as of March 31, 2020, and owed a staggering $24.5 billion in long-term debt.  (*Id.*)  Bausch Health's financial condition further deteriorated in the second quarter of 2020 as the pandemic continued.  (*Id.* ¶ 126.)  Its quarterly net loss grew from approximately $150 million for the first quarter to approximately $325 million for the second quarter.  (*Id.*)

A day after announcing these dire financial results, on August 6, 2020, Bausch Health announced its intention to spin off its cash-rich vision care business, Bausch + Lomb, into a newly formed separate public company (hereinafter, the "Spin-Off").  (Compl. ¶ 127.)  The Bausch + Lomb business segment is a significant cashflow producer for Bausch Health, accounting for about half of Bausch Health's revenues.  (*Id.* ¶ 128.)  Spinning off the Bausch + Lomb business segment into a separate public company would mean that both the cashflow generated by this durable

_____

[1] A copy of Plaintiffs' state law Complaint is attached as Exhibit A to the Declaration of Lawrence M. Rolnick in Support of Plaintiffs' Motion to Remand ("Rolnick Decl.") filed herewith.

business and the assets of Bausch + Lomb will become part of a company separate from Bausch Health.  (*Id.* ¶ 129.)

As Bausch Health began to reveal more information about the Spin-Off, the true nature of the transaction and its impact alarmed creditors.  (Compl. ¶ 132.)  On May 4, 2021, Bausch Health announced that Bausch + Lomb would have materially better creditworthiness than Bausch Health, with Bausch Health holding significantly more debt than Bausch + Lomb.  (*Id.* ¶ 133.)  For Bausch + Lomb, the net ratio of debt to cash flow is 2.5x, whereas for Bausch Health, the net ratio is 6.5x-6.7x.  (*Id.*)  Bausch Health also announced on May 4, 2021, that its current CEO and CFO, Joseph Papa and Sam Eldessouky, will jump ship to well-financed Bausch + Lomb rather than remain tethered to the over-levered Bausch Health.  (*Id.* ¶ 135.)

On August 3, 2021, Bausch Health announced its intention to pursue an IPO of another of its business units, Solta, which sells medical devices for aesthetic applications.  (Compl. ¶ 137.)  Solta has contributed tremendous growth for Bausch Health over the past three years.  (*Id.*)  Thus, the IPO of Solta, combined with the Spin-Off, leaves Bausch Health without two of its most profitable business units.  (*Id.*)

**B.     Bausch Health Is Not Receiving Reasonably Equivalent Value for the Spin-Off to the Substantial Detriment of Potential Judgment Creditors**

The effect of the Spin-Off will be to prevent or impede potential judgment creditors of Bausch Health – including Plaintiffs, who have been litigating claims against Bausch Health for over five years – from recovering what is owed to them.  (Compl. ¶ 130.)  Bausch Health is transferring significant multi-billion-dollar assets to Bausch + Lomb without receiving reasonably equivalent value in return.  (*Id.* ¶ 151.)  Under the terms of the Spin-Off, Bausch Health is transferring substantially all of its assets relating to its vision health business to Bausch + Lomb.  (*Id.* ¶ 152.)  Although Bausch + Lomb will assume a limited amount of liabilities relating to the

vision health business from Bausch Health, that does not appear to include Bausch Health's contingent liability to Plaintiffs.  (*Id.* ¶ 153.)

In connection with the Spin-Off, Bausch + Lomb is expected to conduct an initial public offering ("IPO") of 20% of its stock, the cash proceeds of which will be paid to Bausch Health. (Compl. ¶ 7.)  Although Bausch + Lomb has agreed to issue approximately 80% of its remaining equity to Bausch Health, those shares will not remain with Bausch Health.  (*Id.* ¶ 155.)  Instead, following the expiration of a lock-up period triggered by the IPO, Bausch Health intends to distribute its interest in Bausch + Lomb to Bausch Health's shareholders as a dividend.  (*Id.* ¶ 156.) Thus, rather than retain the majority of the value it receives from Bausch + Lomb (such that creditors could enforce their judgments against such assets), Bausch Health intends to transfer those shares to its existing equity holders *without getting any value in return*.  (*Id.*)

In other words, once the transaction is complete, Bausch Health will have transferred its vision care assets (accounting for approximately 50% of its business) to Bausch + Lomb in return for an 80% interest in Bausch + Lomb plus the proceeds of a debt-raise, but it will immediately give away the 80% interest to existing stockholders and put it beyond the reach of creditors. (Compl. ¶ 157.)  Bausch Health is therefore not receiving reasonably equivalent value for the assets it is divesting.  (*Id.* ¶ 158.)  These are the very sorts of transactions that New Jersey's remedial statute was meant to address.

### C.    The Spin-Off Leaves Bausch Health Severely Undercapitalized and Unable to Pay Potential Judgment Creditors

The result of the Spin-Off is that Bausch Health is undercapitalized, possibly insolvent, and at risk of bankruptcy.  (Compl. ¶ 160.)  One major investment bank that follows Bausch Health has estimated that the present value of Bausch Health's post-Spin-Off future cashflows falls below its target net debt – meaning that Bausch Health has a *negative equity value* based on its 6.5x-6.7x

leverage multiple.  (*Id.* ¶ 172.)  In other words, the value of Bausch Health's remaining assets will be worth less than its liabilities such that Bausch Health will be rendered technically insolvent. (*Id.*)

Other equity analysts who have modeled the Spin-Off have found that it leaves Bausch Health worthless.  (Compl. ¶ 173.)  One major investment bank that reviewed Bausch + Lomb's registration statement conducted a valuation that determined that Bausch + Lomb is worth almost $30 per share, whereas Bausch Health has a negative valuation of -$0.70 per share as a result of the Spin-Off.  (*Id.*)  Thus, a sophisticated financial institution has projected that Bausch Health will have an equity value of negative $256 million following the Spin-Off.  (*Id.*)  Since the announced Spin-Off, Bausch Health's debt has traded at distressed levels well below par.  (*Id.* ¶ 176.)

Importantly, the financial projections that conclude that the Spin-Off leaves Bausch Health worthless ***do not even account for the value of Plaintiffs' contingent claims*** because they are not reflected on Bausch Health's balance sheet.  (*Id.* ¶¶ 173-74.)  Thus, the valuation of Plaintiffs' contingent liabilities is not necessary to demonstrate that Bausch Health is left undercapitalized and unable to pay its debts as a result of the Spin-Off.

### D.     Plaintiffs File Suit to Protect Their Rights as Statutory Creditors of Bausch Health under the New Jersey Voidable Transactions Act

On March 24, 2022, Plaintiffs filed an action in the New Jersey Superior Court, Chancery Division, Somerset County, seeking a declaratory judgment pursuant to N.J.S.A. 2A:16-53 that transfers made in connection with Bausch Health's corporate spin-off of its vision health assets to Bausch + Lomb are voidable as fraudulent transfers under the New Jersey Voidable Transactions Act, N.J.S.A. 25:2-20 *et seq*. ("NJVTA").  The two causes of action alleged in the Complaint each seek a declaratory judgment that Bausch Health's transfer of assets to Bausch + Lomb is voidable

under the NJVTA.  (Compl. ¶¶ 177-94.)  Because potential judgment creditors have standing under the NJVTA, Plaintiffs broadly described their federal securities law claims against Bausch Health and its former senior executives.  (*See, e.g.*, *id.* ¶¶ 78-122.)  Plaintiffs also included certain background about Bausch Health's and its executives' public comments about Plaintiffs' federal claims.  (*See, e.g.*, *id.* ¶¶ 138-50.)  The purpose of this background was to provide the New Jersey Chancery Judge, who would otherwise know nothing about Plaintiffs' federal securities actions, information about that litigation and why Plaintiffs qualify as potential judgment creditors. However, Plaintiffs are not required to plead and prove their allegations of securities fraud as a factual predicate to be entitled to declaratory relief under the NJVTA.  To the contrary, Plaintiffs' two causes of action under the NJVTA have nothing to do with the underlying merits of their federal securities fraud claims.  For purposes of the NJVTA, it does not matter what kinds of claims they are pursuing.

The factual predicates for Plaintiffs' claims are straightforward and require only proof related to the Spin-Off transaction and whether it qualifies as a voidable transaction because it is a transfer of assets without reasonably equivalent value in return.  To make such findings does not require the New Jersey Superior Court to adjudicate the merits of Plaintiffs' federal securities claims and quantify damages in Plaintiffs' federal securities claims.  In Count One of the Complaint, Plaintiffs seek a declaratory judgment that Defendants have violated N.J.S.A. 25:2-21 because: (1) Bausch Health has transferred or will transfer valuable assets from itself to Bausch + Lomb, including the assets of its vision health business; (2) Bausch Health has transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Bausch Health will be insufficient to satisfy outstanding liabilities; (3) at the time of the transfer, Bausch Health was engaged or was about to engage in a business or

a transaction for which the remaining assets of Bausch Health were unreasonably small in relation to the business or transaction; and (4) at the time of the transfer, Bausch Health intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.  (Compl. ¶¶ 180-83.)  In Count Two of the Complaint, Plaintiffs seek a declaratory judgment that Defendants have violated N.J.S.A. 25:2-27 because: (1) Bausch Health has transferred or will transfer valuable assets from itself to Bausch + Lomb, including the assets of its vision health business; (2) Bausch Health has transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Bausch Health will be insufficient to satisfy outstanding liabilities; and (3) as a result of the transfer, Bausch Health will become insolvent.  (*Id.* ¶¶ 189-92.)  Neither of these claims require the New Jersey state court to adjudicate the securities fraud claim pending against Bausch Health in this Court and then quantify the damages resulting from that fraud.

Nor do Plaintiffs request that the New Jersey Superior Court attempt to predict the amount of damages that a jury will award if it finds in favor of Plaintiffs for securities fraud.  Plaintiffs merely ask that the state court declare that Bausch Health's transfer of assets to Bausch + Lomb is voidable under the New Jersey Voidable Transactions Act ***to the extent necessary*** to satisfy Plaintiffs' claims, should they obtain a judgment, and that Bausch + Lomb remain liable to Plaintiffs for the amount of any judgment they obtain against Bausch Health. (Compl. at 45.)  The size of that liability will be determined by a jury if and when it determines that Bausch Health is liable to Plaintiffs in this Court.  The purpose of the relief sought in state court is merely to ensure the collectability of any such judgment.  Such relief in no way undermines the PSLRA or SLUSA.

**STANDARD OF REVIEW**

A case must be remanded to state court if the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing parties – i.e., Defendants – bear the onus of proving that this Court has original jurisdiction. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). All contested issues of fact and uncertainties of law must be resolved in favor of Plaintiffs. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Moreover, removal statutes should be strictly and narrowly construed in favor of removal and interpreted broadly in favor of remand. *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014).

**ARGUMENT**

**I.      This Court Lacks Subject Matter Jurisdiction over an Action Under the New Jersey Declaratory Judgment Act for Relief Under the New Jersey Voidable Transactions Act**

This matter should be promptly remanded to the New Jersey Superior Court because this Court lacks subject matter jurisdiction. "In order for removal to be proper, the federal court must have original jurisdiction to hear the case." *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 466 (D.N.J. 2012). Here, there is no federal question providing a basis for jurisdiction under 28 U.S.C. § 1331. The causes of action in the Complaint arise under the New Jersey Declaratory Judgments Act, N.J.S.A. 2A:16-53, and the New Jersey Voidable Transactions Act, N.J.S.A. 25:2-20 *et seq*., not under the United States Constitution or a federal statute. Nor is there diversity jurisdiction under 28 U.S.C. § 1332, and Defendants have not purported to remove on that basis. As such, there is no basis for federal jurisdiction and this case must be remanded to state court.

II.    **SLUSA Does Not Apply to Plaintiffs' Action**

    A.    **SLUSA Was Passed By Congress to Prevent Attempts to Evade the PSLRA, Not to Prevent State Law Remedies to Protect Potential Judgment Creditors**

Defendants' removal of this action is based on a plainly inappropriate and erroneous interpretation of the Securities Litigation Uniform Standards Act. Congress enacted SLUSA in 1998 to prevent securities class action firms from exploiting a loophole in the Private Securities Litigation Reform Act. Congress passed the PSLRA to curb vexatious securities fraud class actions that, while meritless, were still costly for public companies to litigate. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006); *N. Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 487 (3d Cir. 2019). The PSLRA imposed various new requirements for securities fraud actions filed in federal court to prevent strike suits, including enhanced pleading standards, significant damages limitations, safeguards on the appointment of lead counsel and payment of counsel fees, and automatic stays of discovery pending adjudication of a motion to dismiss. *See id.* To evade these substantial requirements, class action securities firms brought securities class actions in state court asserting claims for negligent misrepresentation and fraud in connection with the sale of securities. *See* S. Rep. No. 105-182, at 3 (1998). Congress thus enacted SLUSA to prevent would-be securities fraud class actions from being restyled as state law claims and filed in state court. *LaSala v. Bordier et Cie*, 519 F.3d 121, 128 (3d Cir. 2008) ("SLUSA undertook to close this perceived loophole by preventing securities plaintiffs from using the class-action vehicle to prosecute state-law securities claims.").

SLUSA applies to (1) class actions seeking damages where (2) the claim is based on a misrepresentation in connection with the purchase or sale of a security. *See id.* Specifically, SLUSA prohibits a "covered class action based upon the statutory or common law of any State" from being "maintained in any State or Federal court by any private party alleging . . . a

misrepresentation or omission of a material fact in connection with purchase or sale of a covered security . . . ."  15 U.S.C. § 78bb(f)(1)(A).  The "misrepresentation or omission" language of SLUSA is drawn directly from the anti-falsity provisions of the federal securities laws.  *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 147 (2d Cir. 2015).  It follows, therefore, that SLUSA was not intended to preempt state law claims that are not based on conduct governed by the federal securities laws.  *Id*.

There is nothing in SLUSA that suggests that Congress intended to prevent a litigant from seeking relief necessary to protect the collectability of a prospective judgment.  Indeed, Plaintiffs' declaratory judgment action under the NJVTA is the very opposite of the end-run around the uniform standards of the PSLRA that SLUSA was enacted to prevent.  Plaintiffs filed their securities fraud claims ***in federal court***, and this Court upheld those claims ***applying the PSLRA***. *See, e.g.*, *Discovery Glob. Citizens Master Fund, Ltd v. Valeant Pharm. Int'l, Inc.*, 2018 WL 406046 (D.N.J. Jan. 12, 2018) (Shipp, J.).  Plaintiffs have prosecuted those claims for over five years, in some instances, and now seek only to ensure that if a judgment is entered – in conformity with the PSLRA and the federal securities laws – they will have a way to enforce it.  It is absurd to suggest – as Defendants implicitly do by removing this case purportedly pursuant to SLUSA – that Plaintiffs are somehow seeking to relitigate claims in state court to avoid a heightened pleadings standard that this Court has already applied and found satisfied.  Plaintiffs are seeking a declaration to which they are entitled under New Jersey law that the Spin-Off is a voidable transaction and Bausch + Lomb will remain liable to Plaintiffs for any judgment they recover in this Court against Bausch Health, notwithstanding Bausch Health's attempt to release its vision care assets from Plaintiffs' contingent liability in the midst of litigation.  No act of Congress prohibits Plaintiffs from seeking a declaratory judgment in state court, under a state statute

designed to protect potential judgment creditors, that the Spin-Off constitutes a fraudulent conveyance under New Jersey law.

**B.      SLUSA Does Not Apply Because Securities Fraud Is Not a Factual Predicate that Must Be Proven Before Plaintiffs are Entitled to a Declaratory Judgment that the Spin-Off Is a Voidable Transaction Under New Jersey State Law**

By its plain terms, SLUSA applies only to claims that allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).  This requirement "is designed to distinguish between state-law-based suits that, no matter how pleaded, in essence allege securities fraud, and those that allege other wrongs."  *LaSala*, 519 F.3d at 128.  The Third Circuit Court of Appeals has held that this element is met in the limited circumstance where allegations of a misrepresentation in connection with a securities trade "serve as the factual predicate of a state law claim."  *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005).  "To be a factual predicate, the fact of a misrepresentation [in connection with the sale of securities] must be one that gives rise to liability [on the state claim], not merely an extraneous detail."  *LaSala*, 519 F.3d at 141.  Thus, for example, a state law class action claim against a company for negligent misrepresentation or common law fraud in connection with the sale of securities would be governed by SLUSA because to recover under either claim would require proof of the "factual predicate" that there was a misrepresentation in connection with the sale of a security.  That is the very sort of claim that Congress decided should be subject to the PSLRA.  The mere fact that a complaint *describes another lawsuit* – which has been brought in federal court subject to the PSLRA because it contains allegations of misrepresentations in connection with a purchase or sale of a covered security – does not make SLUSA applicable.  *Id.*

Plaintiffs' declaratory judgment action under the NJVTA cannot be governed by SLUSA because it is not necessary to allege misrepresentations in connection with a purchase or sale of a covered security to establish a claim under the NJVTA, and such allegations do not serve as factual predicates for Plaintiffs' legal claims. *See id.* at 141; *Rowinski*, 398 F.3d at 300. The factual predicates for Plaintiffs' legal claims are that: (1) Bausch Health has transferred or will transfer valuable assets from itself to Bausch + Lomb, including the assets of its vision health business, as part of the Spin-Off; (2) Bausch Health has transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Bausch Health will be insufficient to satisfy outstanding liabilities, because Bausch is spinning off approximately 50% of its assets but is not receiving reasonably equivalent value in return; and (3) (a) at the time of the transfer, Bausch Health was engaged or was about to engage in a business or a transaction for which the remaining assets of Bausch Health were unreasonably small in relation to the business or transaction, (b) at the time of the transfer, Bausch Health intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, or (c) as a result of the transfer, Bausch Health will become insolvent, and sophisticated, independent financial institutions have projected that the Spin-Off will leave Bausch Health with little or no equity value. (Compl. ¶¶ 158, 172-73, 180-83, 189-92); N.J.S.A. 25:2-25(a)(2); N.J.S.A. 25:2-27(a).

The allegations relating to securities fraud in Plaintiffs' Complaint describe the federal securities claims Plaintiffs have pursued in separate federal court proceedings. The purpose of describing those claims is to establish Plaintiffs' qualification as potential judgment creditors entitled to relief against Bausch Health under the NJVTA. Importantly, however, Plaintiffs are not required to adjudicate their securities fraud claim to establish that they are statutory creditors

of Bausch Health.  The NJVTA expressly defines "creditor" to include "a person who has a claim." N.J.S.A. 25:2-21.  A "claim" is defined as "a right to payment, ***whether or not the right is reduced to judgment***, liquidated, ***unliquidated***, fixed, ***contingent***, matured, ***unmatured***, ***disputed***, undisputed, ***legal***, equitable, secured, or unsecured."  *Id.* (emphasis added).  Accordingly, "[a] contingent creditor . . . may commence an action [under the NJVTA] without a final adjudication or finding of the precise amount of debt due."  *Ford Motor Credit Co. v. Chiorazz*o, 529 F. Supp. 2d 535, 540 (D.N.J. 2008).  Indeed, in promulgating the Uniform Voidable Transactions Act (from which New Jersey's law is derived), the National Conference of Commissioners of Uniform State Laws expressly noted that "the holder of an unliquidated tort claim or a contingent claim may be a creditor protected by this Act."  UNIFORM VOIDABLE TRANSACTIONS ACT § 1, Official Comment ¶ 4.  Thus, Plaintiffs need only allege that they have pending damages claims against Bausch Health – which they undisputedly do – even though those claims are not yet reduced to judgment. Plaintiffs need not prove those claims, adjudicate those claims, or speculate what amount of damages a jury will award, to obtain the relief they are seeking in state court.

Plaintiffs are unaware of any court – and Defendants have cited none – that has permitted removal pursuant to SLUSA of a state law claim filed under a state-enacted version of the Uniform Voidable Transactions Act or its predecessor, the Uniform Fraudulent Transfers Act.  That is not surprising, because proof of securities fraud simply is not a factual predicate for a fraudulent conveyance claim.  And SLUSA was designed to prevent adjudication in state court of claims that would otherwise be subject to the PSLRA, but for artful pleading.  Defendants' attempt to stretch SLUSA far beyond its intended scope should therefore be rejected.

C.  **Pursuant to Binding Third Circuit Law – which Defendants Failed to Cite – SLUSA Does Not Preempt Plaintiffs' State Law Claim**

Defendants have inexplicably failed to apprise the Court of the binding precedent that utterly dooms their removal attempt.  In their Notice of Removal, Defendants repeatedly cite only the Third Circuit's decision in *Rowinski*, 398 F.3d 294, as purported support for their argument that "Plaintiffs' claims in this action rest on allegations of misrepresentations and omissions in connection with the sale of Valeant securities."  (Rolnick Decl. Ex. B ¶¶ 19, 21.)  In *Rowinski*, plaintiffs sought to bring the very sort of claim that threatened to evade the reforms imposed by the PSLRA.  There, plaintiffs brought a state law class action against a securities broker who allegedly provided its retail clients "with biased and misleading analyst reports" that led them to purchase securities at inflated prices.  398 F.3d at 296-97.  In an apparent effort to evade the PSLRA, the plaintiffs restyled what would otherwise be straightforward securities fraud claims into state law causes of action for "breach of contract, unjust enrichment, and violation of state consumer protection statutes."  *Id.*  The Third Circuit rejected that ploy and found that the plaintiffs' allegations of material misrepresentations by the securities broker served as the factual predicate for their state law claims.  *Id.* at 300.  Thus, unlike here, where Plaintiffs brought their individual securities fraud claims in federal court and, years later, brought a state court action to protect their rights as potential judgment creditors, the class plaintiffs in *Rowinski* dressed their securities fraud claims up as state law claims and attempted to prosecute them in state court – which is precisely what SLUSA was designed to prevent.

Three years after *Rowinski* – ***in a case that Defendants fail to cite*** – the Third Circuit Court of Appeals expounded upon its holding in *Rowinski* to clarify that just because a complaint includes allegations about misrepresentations and omissions in connection with the sale of a covered security and incorporates those allegations into its legal claims, that does not implicate

SLUSA unless those allegations serve as a factual predicate that must be proven in order to prove entitlement to the state law claim. *LaSala*, 519 F.3d 121. In *LaSala*, two directors of a corporation called AremisSoft engaged in a "pump-and-dump" scheme in which they made false statements to inflate the stock price and then sold their personal stock holdings at the inflated prices. 519 F.3d at 126. The scheme ultimately resulted in AremisSoft filing for bankruptcy, and a litigation trust was created to prosecute claims on behalf of creditors. *Id.* at 126-27. The trustees of the trust filed a civil action against two Swiss banks who knew about the "pump-and-dump" scheme and helped pull it off. The complaint asserted two types of claims against the Swiss banks: (1) a claim by AremisSoft for aiding and abetting the directors' breach of fiduciary duties (which was assigned to the trust by the bankruptcy trustee); and (2) a claim for money laundering in violation of Swiss banking law (the "Swiss Law Claim"). *Id.* at 130-32, 137. The Swiss Law Claim was assigned to the trust by a class of investors who had been harmed by the scheme. *Id.* at 137.

In deciding that the Swiss Law Claim was not preempted by SLUSA, the Third Circuit held that SLUSA did not apply simply because the "pump-and-dump" scheme was alleged in the complaint and that such a scheme would constitute a securities fraud. *Id.* at 141. Rather, the question was whether a "misrepresentation in connection with a securities trade" was necessary to "give[] rise to liability" for the Swiss Law Claim. *Id.* Since liability under the Swiss Law Claim required proof that the banks failed to "conduct due diligence" or "investigate unusual or suspicious transactions," *id.* at 139, liability could be established without proof of securities fraud.

As Defendants do here, the defendants in *LaSala* argued that because the complaint contained allegations of misrepresentations in connection with the purchase or sale of securities, the claims at issue were preempted by SLUSA. 519 F.3d at 140-41. The Court of Appeals rejected

that position and cautioned that it "appears to stem from a misinterpretation of language in this court's opinion in *Rowinski*." *Id.* at 141. The Court explained:

> In *Rowinski*, we held that a claim alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)(A), which subjects it to SLUSA preemption, when an allegation of a misrepresentation in connection with a securities trade is a "factual predicate" of the claim, even if misrepresentation is not a legal element of the claim. *Rowinski*, 398 F.3d at 300. Thus, when, as in *Rowinski*, a plaintiff alleges that a misrepresentation made in connection with a securities trade breaches a contract, the plaintiff cannot avoid SLUSA preemption by arguing that misrepresentation is not an element of a breach-of-contract action. In other words, when one of a plaintiff's necessary facts is a misrepresentation, the plaintiff cannot avoid SLUSA by merely altering the legal theory that makes that misrepresentation actionable.
>
> ***It is important to recognize that Rowinski did not hold that any time a misrepresentation is alleged, the misrepresentation-in-connection-with-a-securities-trade ingredient is present***. (Nor does it follow that failing to make such an allegation explicit necessarily avoids the ingredient). Rather, the point we made in *Rowinski* was that when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. ***To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail***. This distinction is important because ***complaints are often filled with more information than is necessary***. While it may be unwise (and, in some cases, a violation of Rule 8) to set out extraneous allegations of misrepresentations in a complaint, ***the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA***.

*Id.* (emphasis added). The Court concluded that because the alleged misrepresentations did not have to be proven to establish the plaintiffs' claims for breach of duty under Swiss law, they were "merely background details that need not have been alleged, and need not be proved," and therefore SLUSA did not apply. *Id.*; *see also Kingate*, 784 F.3d at 142-43 ("SLUSA requires courts to inquire whether the allegation is necessary to or extraneous to liability under the state

-20-

law claims.  If the allegation is extraneous to the complaint's theory of liability, it cannot be the basis for SLUSA preclusion.").

The holding in *LaSala* cuts the legs out from under Defendants' SLUSA argument.  As explained in more detail above, the allegations in Plaintiffs' Complaint of Bausch Health's misrepresentations in connection with Plaintiffs' purchases of Bausch Health securities provide helpful background and context for the state court to demonstrate why Plaintiffs are potential judgment creditors of Bausch Health.  But those allegations are not part of the factual predicate needed to establish the fraudulent conveyance claims and it is not necessary to prove any sort of misrepresentation to be entitled to relief under the NJVTA.  Plaintiffs do not have to prove "misrepresentation," "fraud," or "securities fraud" to establish a prima facia claim under the NJVTA.  Defendants' failure to cite *LaSala* is inexcusable.  *See* 28 U.S.C. § 1446(a) (requiring a notice of removal to be signed pursuant to Rule 11 of the Federal Rules of Civil Procedure); Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .").[2]

---

[2] Rather than cite *LaSala*, Defendants rely on an unpublished district court case from out of Circuit that has no application here.  (*See* Rolnick Decl. Ex. B ¶ 19 (citing *Kutten v. Bank of Am., N.A.*, 2007 WL 2485001 (E.D. Mo. Aug. 29, 2007).)  In *Kutten*, the plaintiffs were beneficiaries of fiduciary accounts who brought a class action for damages in state court alleging that the bank trustee "engaged in self-dealing transactions and misrepresented or omitted material facts relating to those transactions." 2007 WL 2485001 at *4.  The plaintiffs in *Kutten* admitted their action was premised on the defendants' false statements.  *Id.* ("[A]t the hearing on this Motion, Plaintiffs made clear that this action challenges Defendants' failure to disclose.").  The court concluded that SLUSA barred the state law claims because "the essence of the [complaint] is that Defendants

Defendants mischaracterize Plaintiffs' claims in a desperate attempt to recast the allegations in Plaintiffs' Complaint.  *First,* Defendants incorrectly contend that Plaintiffs "seek[] a determination by a state court of the amount of Plaintiffs' potential future damages in pending federal securities litigation."  (Rolnick Decl. Ex. B ¶ 9.)  Even if a court could somehow divine what amount of damages a jury might ultimately award on the federal claims – and it could not – the suggestion that Plaintiffs seek such a determination is patently false.  Plaintiffs have expressly pleaded that, as a result of the Spin-Off, Bausch Health has little or no net worth and is at risk of bankruptcy based on valuations conducted by major independent financial institutions that ***do not account for the value of Plaintiffs' securities fraud claims***.  (Compl. ¶¶ 172-73.)  While any amount that Plaintiffs ultimately recover in connection with the federal securities fraud claims will have a negative impact on Bausch Health's financial condition, a final resolution of those claims is not required under the express provisions of the NJVTA.  Instead, Plaintiffs need only prove that Bausch Health is being left undercapitalized, hindering the efforts of potential judgment creditors to enforce their prospective judgments.  Defendants are simply wrong that Plaintiffs will need to prove the amount a jury will award on their securities fraud damages before they can obtain relief under the NJVTA.

*Second*, Defendants similarly assert that the state court will be required to adjudicate the merits of Plaintiffs' federal securities fraud claims.  (*See* Rolnick Decl. Ex. B ¶ 20.)  Again, that is incorrect.  As explained above, Plaintiffs are not required to prove securities fraud to establish that

---

misrepresented and omitted material facts relating to the transfer of assets," and that "each state law claim hinges on harm caused by Defendants' misrepresentations and omissions of material facts regarding the purchase of" covered securities.  *Id.* at *8.  Plaintiffs' NJVTA action before this Court does not "hinge" on or require proof of a misrepresentation, and does not seek damages as is required for SLUSA to apply.  Thus, even if *Kutten* provided binding or persuasive authority – which it does not – it is factually distinguishable from the case at bar.

they are potential judgment creditors of Bausch Health for purposes of asserting a claim under the New Jersey Voidable Transactions Act.  *See* N.J.S.A. 25:2-21 (defining "creditor" and "claim" **to include "whether or not the right is reduced to judgment"** (emphasis added)); *Ford Motor Credit Co.*, 529 F. Supp. 2d at 540.  Thus, Plaintiffs do not need to finally adjudicate the merits of their federal securities fraud claims to obtain the relief they seek in state court.

### D.   SLUSA Does Not Apply for the Independent Reason that Plaintiffs' State Law Claims Seek Equitable Relief, Not Damages

Defendants' SLUSA argument fails for an additional, independent reason:  Plaintiffs' state law claim is not a claim for damages.  SLUSA applies only to a "covered class action."  15 U.S.C. § 78bb(f)(1).  A "covered class action," in turn, is a "single lawsuit *in which damages are sought* on behalf of more than 50 persons or prospective class members."  *Id.* § 78bb(f)(5)(B)(i)(I) (emphasis added).  Plaintiffs' declaratory judgment action under the NJVTA does not meet the definition of a covered class action because it does not seek damages.

The remedies that Plaintiffs are pursuing in their state court action under the NJVTA are equitable remedies.  *See Capital Inv. Funding, LLC v. Lancaster Res., Inc.*, 2014 WL 5798121, at *2 (D.N.J. Nov. 06, 2014) ("The [NJVTA] expressly recognizes the availability of equitable remedies against debtors who engage in fraudulent transfers.").  Plaintiffs ask that the state court declare that Bausch Health's transfer of assets to Bausch + Lomb is voidable under the NJVTA to the extent necessary to satisfy Plaintiffs' claims, should they obtain a judgment, and that Bausch + Lomb remain liable to Plaintiffs for any judgment they obtain against Bausch Health.  (Compl. at 45.)  That is a request for equitable relief, not a claim for damages.  *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("The relief that the Receiver ultimately seeks is equitable in nature; the Receiver seeks "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.");  *see also Kearney Constr. Co. v. Travelers Cas. & Sur. Co. of Am.*, 2020 WL

6801863, at*3 (M.D. Fla. Nov. 19, 2020) (finding that remedies under the Uniform Fraudulent Transfers Act are "equitable, not legal, in nature").  Therefore, Plaintiffs' state law claims are not preempted by SLUSA for this additional reason.  *See Rubin v. Reinhard*, 2009 WL 862241, at *4 (S.D. Cal. 2009) (granting motion to remand because nowhere in the complaint did the plaintiff "seek an award of damages on behalf of the class"); *Wald v. C.M. Life Ins. Co.*, 2001 WL 256179, at *5-6 (N.D. Tex. Mar. 8, 2001) (granting motion to remand because plaintiff sought only declaratory and injunctive relief and there was "simply no indication that Plaintiff is attempting to manipulate the system").

Defendants erroneously contend that Plaintiffs are somehow seeking damages in the state court action because they supposedly "seek a determination by the state court of the value of their contingent, unadjudicated Rule 10b-5 claims – *i.e.*, a determination of Plaintiffs' securities fraud damages – and finding as to Bausch Health's solvency in light of that determination." (*See* Rolnick Decl. Ex. B ¶ 16.)  Again, this mischaracterizes and distorts Plaintiffs' Complaint.  As explained above, Plaintiffs do not need – and are not requesting – the state court to adjudicate the merits of their federal securities fraud claims to obtain relief under the NJVTA, and they are not asking the state court to speculate about the amount of damages that a jury might award as a result of Bausch Health's violations of the federal securities laws.  Further, Plaintiffs have alleged that Bausch Health is at risk of bankruptcy independent of the value of the contingent liability associated with Plaintiffs' federal securities claims.  (Compl. ¶¶ 172-73.)

The cases cited by Defendants, where the courts applied SLUSA even though the plaintiffs were seeking equitable relief, are inapposite.  (*See* Rolnick Decl. Ex. B ¶ 16.)  In each of those cases, the courts were concerned that the plaintiffs were "artfully pleading" to avoid SLUSA, and would later amend their state law complaints to add a damages claim after surviving a SLUSA

-24-

challenge. *See, e.g.*, *Gibson v. PSGroup Holdings, Inc.*, 2000 WL 777818, at *3 (S.D. Cal. June 14, 2000) ("The procedural history of this case suggests that Plaintiff selectively omitted the damages prayer from his Amended Complaint to defeat removal under [SLUSA]. . . .  A rule allowing a class action plaintiff to defeat removal by filing an amended complaint that omits a prayer for damages would eviscerate [SLUSA].").  But that is not the case with respect to the NJVTA.  The remedies available under the NJVTA are set forth in the statute and ***are all equitable in nature***.  *See* N.J.S.A. 25:2-29; *Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1148 (C.D. Cal. 2001) ("[B]y its terms, UFTA [the Uniform Fraudulent Transfers Act] allows only equitable remedies such as avoidance, attachment, an injunction, or appointment of a receiver.  Upon finding an UFTA violation, the court may cancel the transfer or impose a lien against the transferred property, but it may not award damages.").  Thus, Plaintiffs cannot amend their state law Complaint to add damages claims under the NJVTA, and Defendants' reliance on decisions where courts looked past a plaintiff's "artful pleading" is misplaced.  Because Plaintiffs are not seeking damages in state court, SLUSA does not apply.

### E.   SLUSA Preemption Here Would Lead to Absurd Results that Exceed Congress's Powers

SLUSA preemption here would lead to absurd results.   The idea behind SLUSA preemption is that if Defendants have engaged in conduct prohibited by the federal securities laws, plaintiffs have an adequate remedy under the Securities Act of 1933 or the Securities Exchange Act of 1934.  As the Second Circuit explained, "the history and the purposes of [SLUSA] all favor interpreting it to apply to state law claims predicated on conduct by the defendant that is specified in SLUSA's operative provisions referencing the anti-falsity proscriptions of the 1933 and 1934 Acts." *Kingate.*, 784 F.3d at 146 (emphasis removed).  Here, if Plaintiffs' claim under the NJVTA is preempted by SLUSA, they will presumably be unable to have the Spin-Off declared a voidable

transfer – a remedy made available to potential judgment creditors by the New Jersey legislature. However, in designing and implementing the Spin-Off, Defendants did not engage in conduct that violated Plaintiffs' rights under the federal securities laws. Instead, Defendants engaged in conduct that hinders Plaintiffs' ability to recover on their preexisting claims. The idea that SLUSA was intended to preempt state law claims based on conduct unrelated to securities fraud is an absurd result. Statutes should not be construed in a way that produces absurd results.

Moreover, the notion that SLUSA could prevent state law claims that have nothing to do with securities fraud would likely suffer from constitutional infirmities as well. SLUSA should not be construed "as prohibiting state law claims involving matters that were not Congress's concern in passing SLUSA, that have never been a subject of congressional concern, and that in a number of instances might even lie outside the powers of Congress." *Id.* Indeed, any attempt by Congress to preempt state laws having nothing to do with securities regulation or some other area over which Congress has control would run afoul of its constitutional limits. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Defendants' removal attempt would require SLUSA to be construed beyond its constitutional limits.

## III.    **If Remand Is Granted, Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs**

The Court should require Defendants to pay Plaintiffs for their attorneys' fees and costs incurred in remanding this matter back to state court. An order remanding an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of attorneys' fees and costs under the

remand statute is appropriate "where the removing party lacked an objectively reasonable basis

for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Plaintiff

is not required to demonstrate that the removal was "frivolous, unreasonable, or without

foundation." *Id.* at 138-39. Even if the defendant acted in good faith in filing the notice of removal,

an award of attorneys' fees and costs may be appropriate. *Mints v. Educ. Testing Serv.*, 99 F.3d

1253, 1260 (3d Cir. 1996). That is because "[t]he process of removing a case to federal court and

then having it remanded back to state court delays resolution of the case, imposes additional costs

on both parties, and wastes judicial resources." *Martin*, 546 U.S. at 140. Thus, "[a]ssessing costs

and fees on remand reduces the attractiveness of removal as a method for delaying litigation and

imposing costs on the plaintiff." *Id.*

Defendants lacked an objectively reasonable basis for removing this case from state court.

The Complaint asserts causes of action under the New Jersey Declaratory Judgments Act and the

NJVTA, not under the United States Constitution or a federal statute, and there is no diversity

jurisdiction. Moreover, as explained above, SLUSA clearly does not apply to this action. Thus,

there is no basis on the face of the Complaint permitting its removal.

Not a single case cited by Defendants in their Notice of Removal has permitted removal

pursuant to SLUSA of a state law claim filed under the NJVTA, its predecessor, or the equivalent

uniform acts adopted in any other jurisdiction. Defendants failed to cite binding and highly

relevant precedent from the Third Circuit Court of Appeals that further undercuts their already

unsubstantiated arguments concerning SLUSA. In similar circumstances, courts in this Circuit

have not hesitated to award fees and costs under 28 U.S.C. § 1447(c). *See, e.g.*, *Espinosa v. Cont'l

Airline*s, 80 F. Supp. 2d 297, 306-07 (D.N.J. 2000) (awarding fees where controlling authority

established no federal preemption of state law claim); *Eyal Lior v. Sit*, 913 F. Supp. 868, 878 n.10

(D.N.J. 1996) (awarding fees under § 1447(c) where Defendants did not "thoroughly research[] the issues raised").  Accordingly, this Court should award Plaintiffs their reasonable fees and costs.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and remand this action to the Superior Court of New Jersey.  Furthermore, Plaintiffs respectfully request that, if the Court remands the matter, the Court award Plaintiffs their attorneys' fees and costs incurred as a result of Defendants' improper removal of this action.

Dated:  April 29, 2022                              Respectfully submitted,

**ROLNICK KRAMER SADIGHI LLP**

By:    _s/ Lawrence M. Rolnick_
          Lawrence M. Rolnick
          Marc B. Kramer
          Sheila A. Sadighi
          Michael J. Hampson
          300 Executive Drive, Suite 275
          West Orange, NJ  07052
          Tel: 212.597.2800
          Fax:  212.597.2801
          lrolnick@rksllp.com
          mkramer@rksllp.com
          ssadighi@rksllp.com
          mhampson@rksllp.com

          *Counsel for GMO Plaintiffs, Brahman*
          *Plaintiffs, SAAMCo Plaintiffs, Discovery*
          *Plaintiffs, MSD Plaintiffs, and Incline Plaintiffs*

**FLEISCHMAN BONNER & ROCCO LLP**

By:_____*s/ Patrick L. Rocco*
Patrick L. Rocco
447 Springfield Avenue, Second Floor
Summit, NJ 07901
Tel: 908.516.2045
Fax: 908.516.2049
procco@fbrllp.com

**DIETRICH SIBEN THORPE LLP**

Matthew P. Siben*
2292 Faraday Ave., Suite 100
Carlsbad, CA 92008
Tel: 310.300.8450
Fax: 310.300.8401
matthew@dstlegal.com

David A. Thorpe*
Shawn M. Hays*
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Tel. 310.300.8450
Fax 310.300-8401
david@dstlegal.com

*pro hac vice* forthcoming

*Counsel for Plaintiff Okumus*

**KIRBY McINERNEY LLP**

By:_____*s/ Karen M. Lerner*
Karen M. Lerner
Daniel Hume*
Ira M. Press*
Meghan J. Summers*
250 Park Avenue, Suite 820
New York, NY 10177
Tel: 212.371.6600
Fax: 212.751.2540
klerner@kmllp.com
dhume@kmllp.com
ipress@kmllp.com
msummers@kmllp.com

Mark A. Strauss, Esq.*
**MARK A. STRAUSS LAW, PLLC**
555 Madison Avenue, 5th Flr.
New York, NY 10022
Tel: 212.729.9496
Fax: 212.202.6443
mark.strauss@markastrausslaw.com

*pro hac vice* forthcoming

*Counsel for Maverick Plaintiffs*

**GRANT & EISENHOFER P.A.**

By: ___*s/ Jeffrey A. Almeida*___
Jeffrey A. Almeida
Daniel Berger*
Caitlin Moyna*
123 Justison Street
Wilmington, DE 19801
Tel: 302.622.7000

*pro hac vice forthcoming*

*Counsel for Plaintiff PGGM, Plaintiff
Schilders, the Pacific Funds Plaintiffs, Plaintiff
USAA, Plaintiff INKA, and Plaintiff GIC*

**KASOWITZ BENSON TORRES LLP**

By: ___*s/ Stephen W. Tountas*___
Stephen W. Tountas
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: 212.506.1739
Fax: 973.643.2030
stountas@kasowitz.com

**MOTLEY RICE LLC**

Serena P. Hallowell*
777 Third Ave.
New York, NY 10017
Tel: 212.577.0040
Fax: 843.216.9450
shallowell@motleyrice.com

**LABATON SUCHAROW LLP**

Thomas G. Hoffman*
Michael P. Canty*
140 Broadway
New York, NY 10005
Tel: 212.907.0700
Fax: 212.818.0477
thoffman@labaton.com
mcanty@labaton.com

*Counsel for the Privet Plaintiffs*