Matthew A. Sklar
Omar A. Bareentto
**McCARTER & ENGLISH LLP**
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 622-4444
Fax: (973) 624-7070
msklar@mccarter.com
obareentto@mccarter.com

Jonathan K. Youngwood (*pro hac vice* in No. 3:15-cv-07658)
Craig S. Waldman (*pro hac vice* in No. 3:15-cv-07658)
Isaac Rethy (*pro hac vice* in No. 3:15-cv-07658)
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017
Phone:  (212) 455-2000
Fax:  (212) 455-2502
jyoungwood@stblaw.com
cwaldman@stblaw.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GMO TRUST, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BAUSCH HEALTH COMPANIES INC., and BAUSCH + LOMB CORPORATION <br><br> Defendants. | Civil Action No.: 3:22-cv-01823 <br><br> Removed From: <br><br> Superior Court of New Jersey Chancery Division Somerset County <br><br> State Court Docket No.: <u>SOM-C-12010-22</u> <br><br> (Oral Argument Requested) Motion Day: June 21, 2022 |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 4

ARGUMENT .......................................................................................................... 7

    I.     PLAINTIFFS' COMPLAINT IS A COVERED CLASS ACTION INVOLVING
          A COVERED SECURITY FOR PURPOSES OF SLUSA ................................. 9

        A.    Plaintiffs' Securities Fraud Claims Are An Essential Factual
            Predicate Of The Complaint .......................................................... 9

        B.    *LaSala* is Distinguishable ............................................................ 15

    II.    SLUSA APPLIES TO PLAINTIFFS' DECLARATORY JUDGMENT
          CLAIMS .............................................................................................. 16

    III.   PLAINTIFFS' REMAINING ARGUMENTS FAIL ........................................ 19

CONCLUSION .................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amato v. Cortese*
  2015 WL 5009664 (N.J. App. Div. Aug. 21, 2015) ................................................ 11

*Anderson v. Lynch*
  2007 WL 973403, at *3 (D.N.M. Apr. 4, 2007) .................................................... 17

*Betram v. Terayon Comms. Sys. Inc.*
  2001 WL 514358 (C.D. Cal. Mar. 27, 2001)........................................................ 16

*Bittner v. Borne Chemical Co., Inc.*
  691 F.2d 134 (3d Cir. 1982) ................................................................................ 12

*Brown v. Calamos*
  664 F.3d 123 (7th Cir. 2011) .............................................................................. 16

*Chen v. Dillard Store Servs., Inc.*
  579 F. App'x. 618 (10th Cir. 2014) ...................................................................... 13

*Covey v. Comm. Nat. Bank of Peoria*
  960 F.2d 657 (7th Cir. 1992) ............................................................................... 12

*Coykendall v. Kaplan*
  2002 WL 31962137 (N.D. Cal. Aug. 1, 2002) ...................................................... 21

*Davis v. John Hancock Viable Life Ins. Co.*
  295 F. App'x 245 (9th Cir. 2008) .................................................................... 17, 18

*Gibson v. PS Grp. Holdings*
  2000 WL 777818 (S.D. Cal. Mar. 8, 2000) ..................................................... 14, 17

*Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l Inc.*
  2018 WL 4401731 (D.N.J. Sept. 14, 2018) .......................................................... 14

*In re HH Liquidation, LLC*
  590 B.R. 211 (Bankr. D. Del. 2018) ..................................................................... 10

*In re Jie Xiao*
  608 B.R. 126 (Bankr. D. Conn. 2019) .................................................................. 11

*In re Lord Abbett Mutual* Funds
  553 F.3d 248 (3d Cir. 2009) ........................................................................... 19, 20

*In re Markson Rosenthal Co., Inc.*
  2009 WL 3763048 (Bankr. D.N.J. Oct. 27, 2009)........................................... 10, 11

*In re Resorts Int'l, Inc.*
   181 F.3d 505 (3d Cir. 1999) ............................................................ 11

*In re Sierra Steel, Inc.*,
   96 B.R. 275 (B.A.P. 9th Cir. 1989) ................................................ 11

*Kircher v. Putnam Funds*
   547 U.S. 633 (2006).......................................................................... 7

*LaSala v. Bordier Et Cie*
   519 F.3d 121 (3d Cir. 2008) ..................................................... 15, 16

*Martin v. Franklin Capital*
   546 U.S. 132  (2005)........................................................................ 21

*Prager v. Knight/Trimark Grp., Inc.*
   124 F. Supp. 2d 229 (D.N.J. 2000) ............................................. 8, 12

*Rowinski v. Salomon Smith Barney Inc.*
   398 F.3d 294 (3d Cir. 2005) ................................................. 7, 9, 14

*Rubery v. Radian Grp., Inc.*
   2007 WL 1575211 (E.D. Pa. May 31, 2007)............................. 16, 17

*Rubin v. Reinhard*
   2009 WL 862241 (S.D. Cal. Mar. 25, 2009) ................................. 18

*Schuster v. Gardner*
   319 F. Supp. 2d 1159 (S.D. Cal. 2003)........................................... 21

*Stabile v. Benson*
   2011 WL 4483580 (N.J. App. Div. Sept. 29, 2011) ...................... 11

*Stephens v. Gentilello*
   853 F. Supp. 2d 462 (D.N.J. 2012) ................................................ 21

*TeleFest, Inc. v. VU-TV, Inc.*
   591 F. Supp. 1368 (D.N.J. 1984) ................................................... 11

*Wald v. C.M. Life Ins. Co.*
   2001 WL 256179 (N.D. Tex. Mar. 8, 2001)................................... 18

*Wilson v. Wells Fargo Advisors, LLC*
   2012 WL 5240815 (D. Del. Sept. 25, 2012)............................. 15, 16

**Statutes**

15 U.S.C. § 78bb................................................................................. 7, 8

28 U.S.C. § 1447.................................................................................................................... 20

N.J. Stat. § 25:2-25 ............................................................................................................... 10

N.J. Stat. § 25:2-27 ............................................................................................................... 10

**Other Authorities**

H.R. Rep. No. 105-803 (1998)............................................................................................. 19

## <u>PRELIMINARY STATEMENT</u>

Defendants properly removed this action to federal court pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), which authorizes removal and dismissal of certain state court actions that interfere with the uniform federal adjudication of securities fraud claims. Under a straightforward application of SLUSA, this action is precluded and cannot proceed consistent with federal law. Plaintiffs' motion to remand should be denied so that the pending securities claims coordinated before this Court may be resolved unimpeded in federal court under uniform federal standards, as Congress intended.

Nearly two years ago, Defendant Bausch Health Companies Inc. ("Bausch Health") announced a plan to spin off its eye health business into an independent public company, Bausch + Lomb Corporation ("Bausch + Lomb"). One year later, after the company had made numerous disclosures about the contemplated transaction, certain plaintiffs in the ongoing coordinated securities fraud lawsuits against Bausch Health pending before this Court began a campaign to use this transaction as a point of leverage in the litigation. After those efforts were rebuffed by the Special Master, a subset of those same plaintiffs—62 entities in total—sought an end run around the Special Master's discovery decisions and filed suit in state court under New Jersey's Uniform Voidable Transactions Act, asserting that this contemplated transaction would render Bausch Health unable to satisfy hypothetical future judgments they might recover after a trial on their federal securities fraud claims. Plaintiffs' action is precluded under SLUSA and was therefore properly removed to federal court.

*First*, Congress enacted SLUSA to ensure uniform federal standards would apply to actions brought on behalf of more than 50 plaintiffs alleging fraud in the connection with nationally-listed securities. To accomplish this goal, SLUSA provides that when such actions are brought in state court under state law, they are removable to federal court and then subject to dismissal. Here,

Plaintiffs allege that Bausch Health will be rendered insolvent in light of what Plaintiffs contend is Bausch Health's exposure to $3 billion in future judgments on their securities fraud claims, and therefore the contemplated separation of Bausch + Lomb constitutes a constructive fraudulent transfer under New Jersey law.  This action thus asks a state court to inquire into the merits of the underlying, unadjudicated securities fraud claims pending before this Court in order to value those disputed contingent liabilities, and then issue a declaration imposing such future potential liabilities on Bausch + Lomb.  Because Plaintiffs' allegations regarding the merits of their federal securities fraud claims have legal significance to the adjudication of their state law fraudulent transfer claims, SLUSA applies and precludes Plaintiffs' claims.

To avoid removal under SLUSA, Plaintiffs attempt in their briefing to minimize the significance of their securities fraud allegations as nothing more than background to their fraudulent conveyance claims, and assert that Bausch Health would be insolvent even if their securities fraud claims were excluded from a solvency analysis.  But that is not the complaint Plaintiffs pleaded.  Instead, the Complaint repeatedly alleges that Bausch Health will be rendered insolvent "[t]aking into account the contingent liabilities relating to the Direct Actions."  Compl. ¶ 171; *see also*, *e.g.*, *id.* ¶ 8 ("[T]he spin-off leaves Bausch Health with insufficient assets to satisfy outstanding liabilities, including the multi-billion-dollar contingent liabilities represented by Plaintiffs' federal securities fraud claims.").  And Plaintiffs are bound by the allegations of their complaint, which controls for removal purposes.  Indeed, in attempting to disavow their complaint's extensive securities fraud allegations and assert that the value of their claims is not legally significant, Plaintiffs only serve to confirm that the complaint is subject to SLUSA if those allegations are properly taken into account.  Plaintiffs also try to avoid removal by emphasizing the Third Circuit's ruling in *LaSala v. Bordier Et Cie*, 519 F.3d 121 (3d Cir. 2008), a case they

incorrectly suggest controls and mandates remand.  As shown below, *LaSala* is inapplicable because it concerns issues that are ***indisputably satisfied here*** (*i.e.*, numerosity of plaintiffs – here there are 62, which is more than the required 50 – and the assertion of claims based on state law – here New Jersey state law).

*Second*, while styled as a declaratory judgment action, Plaintiffs' state law claims seek to hold Bausch + Lomb liable for hypothetical future damages that may be awarded against Bausch Health in a currently pending securities action before this Court.  There is thus no question that Plaintiffs, in substance, are seeking a monetary recovery.  Nothing more is needed for this action to constitute a "lawsuit in which . . . damages are sought" covered by SLUSA.  Plaintiffs' efforts to read the broad language of SLUSA narrowly in this regard is contrary to the weight of authority holding that the statute should be read broadly to fulfill its purpose and that Plaintiffs should not be allowed to evade SLUSA through the manner in which they formulate their causes of action or requests for relief.

*Third*, Plaintiffs are wrong in asserting that SLUSA has no place here because this action is ostensibly ancillary to federal lawsuits that previously withstood dismissal.  The policies animating SLUSA are not so limited, and application of SLUSA here is necessary to prevent Plaintiffs from frustrating Congress's intent.  If plaintiffs are permitted to bring collateral state court actions seeking state court determination or estimation of the merits of still-pending federal securities claims, they will be able to circumvent many of the procedures Congress enacted in SLUSA and the Private Securities Litigation Reform Act ("PSLRA").  This would both interfere with this Court's ability to manage the pending securities cases before it and create a new backdoor for future plaintiffs to evade federal law.  In declining to authorize these Plaintiffs discovery related to the contemplated spin transaction, the Special Master in the securities actions pending before

this Court correctly noted that this kind of backdoor activity could have an improper chilling effect on business activities for companies facing securities suits.

For these reasons, this Court should deny Plaintiffs' motion to remand.

## BACKGROUND

This action is the latest in a series of lawsuits filed against Defendants in connection with the decline in the price of debt and equity securities of Valeant Pharmaceuticals International, Inc. (n/k/a Bausch Health Companies Inc.) in the time period extending between September 2015 and April 2016.

***The Underlying Cases***

As the Court is aware, Defendants have been the targets of a consolidated class action filed in this Court in 2015 alleging violations of the Securities Act of 1933 and Securities Exchange Act of 1934, as well as individual opt-out federal securities fraud actions, a pair of shareholder derivative lawsuits, and a putative RICO class action brought on behalf of healthcare payors.  All of these actions implicate disclosures made by Valeant  during the period between January 2013 and June 2016.  Those actions have all been coordinated before this Court.  *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-cv-07658, ECF No. 369 (D.N.J. Oct. 12, 2018).[1]  The derivative actions have been dismissed and settlements have been reached in the consolidated securities class action and the RICO class action, and sixteen of the opt out securities actions have been settled, dismissed, or otherwise resolved.  Twenty-one individual opt-out securities fraud actions remain pending and are currently in expert discovery.  Plaintiffs in this action are sixty-

---

[1] Certain Opt-Out Actions also originally asserted state-law causes of action, which this Court dismissed as precluded by SLUSA.  *See, e.g.*, Order, *2012 Dynasty UC LLC v. Valeant Pharms. Int'l, Inc.*, No. 18-cv-08595, ECF No. 60 (D.N.J. Dec. 10, 2018).

two investment entities representing the plaintiffs in twelve of these remaining actions (collectively, the "Opt-Out Actions").

***The Spin Transaction***

On August 6, 2020, Bausch Health announced that it intended to spin off its eye health business, Bausch + Lomb, into an independent publicly traded company (hereafter the "B + L Transaction"). The B + L Transaction has been widely publicized and closely watched by market participants. Bausch explained to the market the benefits of the proposed spin-off, including that the remaining companies would have improved strategic focus on their respective business areas, and the public would have the benefit of enhanced financial transparency to better enable stakeholders to evaluate the independent businesses. Bausch Health CEO Joseph Papa explained that the B + L Transaction would be in line with similar transactions pursued by healthcare industry participants like Pfizer and Alcon AG. Because Bausch Health is incorporated under the laws of British Columbia, the B + L Transaction is subject to Canadian regulatory requirements, which may include shareholder approval, the approval of a British Columbia court, and satisfying a statutory corporate solvency test. *See, e.g.*, British Columbia Business Corporations Act, S.B.C. 2002, c. 57, arts 70(2), 78(1), 79(1), 288-291 (Can.).

***Plaintiffs' Campaign Related To The Spin***

Nearly a year after the B + L Transaction was announced, on July 20, 2021, Plaintiffs first began to demand information about the proposed transaction, asserting that "it appears that the transaction may be designed, at least in part, to divert valuable assets and cash away from potential judgment creditors." *See* Decl. of M. Sklar Ex. A. Then, in a letter dated July 27, 2021, Plaintiffs asserted that the contemplated transaction and its purported financial consequences constituted grounds for setting a trial date for the 21 opt-out actions prior to the close of discovery. *See* Ltr.,

*In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-cv-07658, ECF No. 800 (D.N.J. July 27, 2021). Plaintiffs reiterated this request in a follow-up letters dated September 1, 2021, *see* Ltr., *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-cv-07658, ECF No. 836 (D.N.J. July 27, 2021), and January 13, 2022, *see* Ltr., *In re Valeant Pharms. Int'l Inc. Sec. Litig*., No. 15-cv-07658, ECF No. 927 (D.N.J. July 27, 2021).  Each time, Bausch Health responded to the letters.

Plaintiffs also made informal requests for discovery into the financial details of the spin-off, which Bausch Health refused on the grounds that Plaintiffs were not entitled to pre-judgment discovery regarding the company's ability to pay a hypothetical judgment, and that disclosure of non-public (and likely privileged) information regarding the B + L Transaction to investors would be prohibited.  Plaintiffs and Defendants presented their positions regarding such discovery to the Special Master during an August 18, 2021 Status Conference.  *See* Decl. of M. Sklar Ex. B.  The Special Master was skeptical of Plaintiffs' request, noting that "of course, no plaintiff wants to be chasing down a judgment-proof defendant, ***but there's no evidence of such a thing***, and to allow this would be a such a chilling effect on big companies and what they do. . . . ***it does, at this time, seem like total speculation as to what exactly the fear is***."  *Id.* at 23 (emphasis added).  However, the Special Master directed the Plaintiffs to make a formal motion for discovery and for the parties to brief the issues.  *See id.* at 25–26.  After receiving the parties' briefing and hearing further oral arguments on October 5, 2021, the Special Master denied Plaintiffs' discovery motion, reasoning that such discovery was not permitted by the Federal Rules and to allow a "potential creditor to explore a company's operations and ongoing business decisions pre-judgment" could "have a chilling effect on that company's actions, including its shareholders."  Order, *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-cv-07658, ECF No. 884 (D.N.J. Nov. 12, 2021).

On March 24, 2022, over a year and a half after the B + L Transaction was announced to the public and many months after their efforts in this Court were rejected by the Special Master, Plaintiffs filed the Complaint in the New Jersey Superior Court, Chancery Division for Somerset County (hereafter the "NJ State Court"), alleging that the B + L Transaction was a fraudulent transfer that would frustrate Plaintiffs' ability to collect on hypothetical future judgments on the securities fraud claims pending in this Court. Compl. ¶¶ 4, 8. Defendants promptly filed a notice of removal pursuant to SLUSA on March 30, 2022. On April 29, 2022, Plaintiffs filed the instant motion to remand the action to the NJ State Court.

## ARGUMENT

In support of Congress' goal of centralizing securities class actions in federal court and ensuring uniform fraud standards, SLUSA contains a broad removal and preclusion mechanism that permits defendants to remove to federal court a "covered class action," as defined by the statute. *See* 15 U.S.C. § 78bb(f)(2); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298–99 (3d Cir. 2005). Covered class actions include, *inter alia*, "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons" and common questions of law and fact predominate. 15 U.S.C. § 78bb(f)(5)(B). No such covered class action "may be maintained in any State or Federal court by any private party." 15 U.S.C. § 78bb(f)(1). Thus, an action that is properly removable under SLUSA must be dismissed. *See Kircher v. Putnam Funds*, 547 U.S. 633, 643 (2006) ("If the action is precluded, neither the district court nor the state court may entertain it, and the proper course is to dismiss.").[2]

A claim is removable and precluded under SLUSA if:

---

[2]      Whether a claim is removable under SLUSA is a threshold issue of subject matter jurisdiction for the Court. *See Rowinski*, 398 F.3d at 297 ("The SLUSA removal provision . . . is jurisdictional. It creates an express exception to the well-pleaded complaint rule, conferring federal removal jurisdiction over a unique class of state law claims.").

(1) the action is a "covered class action";

(2) the action purports to be based on state law;

(3) the action alleges a "misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance"; and

(4) the allegations are "in connection with" the

(5) "purchase or sale of covered security."

*Prager v. Knight/Trimark Grp., Inc.*, 124 F. Supp. 2d 229, 231 (D.N.J. 2000). ***Several elements of removability under SLUSA are undisputed here***. Plaintiffs concede that the action is premised on state statutory law, the New Jersey Voidable Transactions Act. *See* Pl. Mem. at 6. It is also undisputed that Bausch Health equity and debt securities are traded on national public markets and are therefore "covered securities" pursuant to 15 U.S.C. § 78bb(f)(5)(E). Plaintiffs likewise do not dispute that the action meets the statutory numerosity requirement for a "covered class action" because the Complaint is a "single lawsuit . . . on behalf of more than 50 persons, and questions of law or fact common to those persons . . . predominate over any questions affecting only individual persons or members." 15 U.S.C. § 78bb(f)(5)(B).

Plaintiffs, however, contend that their Complaint should be remanded to the NJ State Court because it does not satisfy elements (1), (3) and (4) of the *Prager* formulation. Specifically, Plaintiffs argue that they do not allege misstatements or omissions in connection with the purchase or sale of a covered security, and separately argue that the Complaint does not meet the definition of a "covered class action" under SLUSA because it seeks declaratory relief rather than an award of damages. *See* Pl. Mem. at 5. Plaintiffs also assert that the Complaint is not the sort of state law action that Congress intended to preclude when it enacted SLUSA and therefore its purpose would not be served by removal. *See* Pl. Mem. at 4.

As discussed below, Plaintiffs' assertions are incorrect. Plaintiffs' Complaint is inextricably linked to their pending securities fraud actions in this Court. Congressional policy of

centralizing and applying uniform standards to securities class actions in federal court would be frustrated by allowing Plaintiffs to obtain rulings implicating the merits of their federal securities fraud claims in state court through a premature action concerning the enforceability of hypothetical future judgments. Defendants therefore properly removed Plaintiffs' Complaint to this Court under SLUSA.

**I.      Plaintiffs' Complaint Is A Covered Class Action Involving A Covered Security For Purposes Of SLUSA**

This action is removable under SLUSA because Plaintiffs' Complaint contains extensive allegations regarding Valeant's purported securities fraud which form in part the basis for Plaintiffs' claims. "No matter how an action is pleaded, if it is a 'covered class action . . . involving a covered security,' removal is proper." *Rowinski*, 398 F.3d at 297. In *Rowinski*, the Third Circuit held that the distinction between "the legal and factual allegations in a complaint" is "immaterial under [SLUSA]" because "preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another." *Id.* at 300. Thus, it does not matter that Plaintiffs' claims are statutory claims for constructive fraudulent transfer rather than conventional fraud claims for which false or misleading statements are essential elements. A state court will not be able to properly adjudicate such claims without making conclusions as to the likely merits and value of Plaintiffs' pending securities fraud claims against Bausch Health. Plaintiffs' allegations regarding the underlying alleged securities fraud are therefore a "factual predicate of a state law claim" and the "misrepresentation prong" of SLUSA is therefore satisfied. *Id.*

**A.      Plaintiffs' Securities Fraud Claims Are An Essential Factual Predicate Of The Complaint**

Plaintiffs' pending securities fraud claims are plainly at issue in the Complaint. The Complaint is dominated by references to the Opt-Out Actions, the alleged misstatements and

omissions at issue in those actions, and the damages to which Plaintiffs contend they are entitled—in fact the first four sections of factual allegations in the complaint almost solely address the alleged underlying securities fraud. *See* Compl. ¶¶ 78–150. Indeed, other than allegations regarding the B + L Transaction itself and the identities of the parties, the ***only*** factual allegations in the Complaint ***not*** concerning Plaintiffs' securities fraud claims consist of (i) four conclusory paragraphs regarding a potential tax issue; (ii) four similarly brief paragraphs concerning alleged competitive pressures that may be faced by the drug Xifaxan; and (iii) four paragraphs purporting to paraphrase certain market commentary regarding the B + L Transaction. *See* Compl. ¶¶ 163–70, 172–73, 175–76.

The constructive fraudulent transfer claims asserted by Plaintiffs under N.J. Stat. §§ 25:2-25(a)(2) and 25:2-27(a) require the plaintiff creditor to establish that the debtor made a transfer "[w]ithout receiving a reasonably equivalent value in exchange" either at a time when the debtor was insolvent or that led to the debtor becoming insolvent.[3] The plaintiff "has the burden of proving the elements of a claim for relief" under these statutes. N.J. Stat. §§ 25:2-25(b); 25:2-27(c). Thus, Plaintiffs must prove the insolvency of the debtor at the time of transfer, which requires valuation of the debtor's assets and liabilities. *See In re HH Liquidation, LLC*, 590 B.R. 211, 262 (Bankr. D. Del. 2018) ("No claim for constructive fraudulent transfer can succeed where the plaintiff fails to prove . . . insolvency at the time of transfer."); *In re Markson Rosenthal Co., Inc.*, 2009 WL 3763048, at *11 (Bankr. D.N.J. Oct. 27, 2009) ("[W]hether [debtor] was insolvent

---

[3] Specifically, N.J. Stat. § 25:2-27(a) addresses insolvency, and N.J. Stat. §§ 25:2-25(a)(2) addresses circumstances where the debtor (a) "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction"; or (b) "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due." For concision, this brief generally refers to this element of Plaintiffs' claims as "insolvency."

as of the transfer date is a genuine issue of material fact").[4]  Insolvency is particularly difficult to establish with respect to a debtor/transferor that, as here, is alleged to be likely to fail based on contingent future events rather than to be presently in default on its obligations or in bankruptcy, receivership, or some other form of custodianship.  *See, e.g.*, *TeleFest, Inc. v. VU-TV, Inc.*, 591 F. Supp. 1368, 1376 (D.N.J. 1984) (Insolvency is difficult to establish when "the transferor continues its business . . . because the circumstance that liabilities exceed assets does not necessarily lead to the conclusion of insolvency if a corporation is actively pursuing its regular business with a reasonable expectation that business conditions will improve.").

Plaintiffs' constructive fraudulent transfer claims, as pleaded in the Complaint, necessarily require an analysis of the factual and legal merit of the underlying securities fraud allegations and the anticipated value of these contingent, disputed claims.  *See Amato v. Cortese*, 2015 WL 5009664, at *33 (N.J. App. Div. Aug. 21, 2015) ("Absent the ability to make a reasonable calculation of assets and debts, a factfinder cannot make a determination of solvency or insolvency at a specific point in time.").  "To determine a contingent liability, one must discount it by the probability that the contingency will occur and the liability will become real." *In re Sierra Steel, Inc.*, 96 B.R. 275, 278 (B.A.P. 9th Cir. 1989).  And "[t]o calculate a disputed claim's value properly, the court must assess their likelihood of success." *In re Jie Xiao*, 608 B.R. 126, 160 (Bankr. D. Conn. 2019); *see also Stabile v. Benson*, 2011 WL 4483580, at *7 (N.J. App. Div. Sept. 29, 2011) (finding that trial court had improperly valued contingent worker's compensation claim

---

[4] Fraudulent transfer jurisprudence is well-developed in bankruptcy courts and a court in this district has noted that "[f]raudulent transfer claims under the Bankruptcy Code and under New Jersey state law require almost identical analysis." *In re Markson Rosenthal Co., Inc.*, 2009 WL 3763048, at *10 n.1 (Bankr D.N.J. Oct. 27, 2009) (citing *In re Resorts Int'l, Inc.*, 181 F.3d 505, 513 (3d Cir. 1999) ("[T]he analysis of the federal and state laws is practically identical, and therefore separate analysis of the state claim is not necessary.").

at zero by "conclud[ing], without any legal analysis, that [defendant] was entitled to [a statutory defense]"); *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982) ("[T]he court is bound by the legal rules which may govern the ultimate value of the claim.  For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law.").  These analyses are necessary because "[t]o disregard the probability that the firm will not be called on to pay is to regard all firms as insolvent all of the time, for all firms face some (remote) contingencies exceeding the value of their assets."  *Covey v. Comm. Nat. Bank of Peoria*, 960 F.2d 657, 659 (7th Cir. 1992).  Therefore, adjudication of Plaintiffs' claims will require the NJ Court to consider the same legal and factual issues at issue in the Opt-Out Actions—the very outcome that SLUSA seeks to avoid.  *See Prager v. Knight/Trimark Grp., Inc.*, 124 F. Supp. 2d 229, 232 (D.N.J. 2000) ("The legislative history of SLUSA shows that Congress sought to establish federal courts as 'the exclusive venue for most securities class action lawsuits' involving nationally traded securities.").

Plaintiffs argue that SLUSA is inapplicable because the NJ State Court will need not consider the value of their securities fraud claims, asserting that Bausch Health will purportedly be insolvent after the B + L Transaction based on the tax and patent issues briefly referenced in the Complaint even without taking into account the Opt-Out Actions.  *See* Pl. Mem. at 13–14.  This argument is foreclosed by Plaintiffs' own pleading; Plaintiffs' allegations demonstrate that the value of their securities fraud claims is a critical component of their fraudulent transfer claims:

| Complaint Para. | Allegation (emphases added) |
|---|---|
| 8 | "[T]he spin-off leaves Bausch Health with insufficient assets to satisfy outstanding liabilities, ***including the multi-billion-dollar contingent liabilities represented by Plaintiffs' federal securities fraud claims***." |
| 123 | "Without any strong defense to Plaintiffs' securities fraud claims . . . Bausch Health looked for another escape route." |

| Complaint Para. | Allegation (emphases added) |
| --- | --- |
| 130 | "Although Bausch Health publicly described the Spin-Off as an opportunity to 'unlock value,' ***the effect of the Spin-Off will be to prevent or impede creditors such as Plaintiffs from recovering on their substantial claims.***" |
| 138 | "In order to obtain approval for the Spin-Off, Bausch Health has sought to persuade investors and creditors that ***any exposure arising from the Direct Actions can be safely ignored.***" |
| 145 | "Moreover, Bausch Health had refused to provide information to the plaintiffs to the Direct Actions ***confirming that Bausch Health would have sufficient assets and liquidity to pay potential judgments in the range reasonably expected by the plaintiffs to the Direct Actions.***" |
| 150 | "By telling the investing public that the Direct Actions have been resolved, Papa has painted a false portrait of Bausch Health's contingent liabilities on the eve of the Spin-Off." |
| 161 | "The Spin-Off assigns no value to the contingent liabilities relating to the Direct Actions. As explained above, ***those contingent liabilities of Bausch Health could be as high as $4.2 billion (or more after factoring in significant pre-judgment interest accrued since 2015).***" |
| 171 | "Taking into account ***the contingent liabilities relating to the Direct Actions***, the potential tax liability for the 2017 Capital Loss, and the loss of exclusivity on Xifaxan, the Spin-Off leaves Bausch Health in a dire financial position." |
| 181, 191 | "[T]he remaining assets of Bausch Health will be insufficient to satisfy outstanding liabilities, ***including the multi-billion-dollar contingent liability based on Plaintiffs' federal securities fraud claims.***" |

Plaintiffs even go so far as to plead (without factual support) that the B + L Transaction is a "vehicle for Bausch Health to protect its most valuable assets from the contingent liabilities created by the pending Direct Actions." *Id.* ¶ 131. And, this is all in addition to the seventy-plus paragraphs reciting the allegations that form the basis of Plaintiffs' securities fraud claims, as discussed above. Plaintiffs cannot avoid SLUSA by informally disavowing or re-characterizing in their remand briefing the allegations of their complaint, which control for purposes of determining jurisdiction. *See Chen v. Dillard Store Servs., Inc.*, 579 F. App'x. 618, 621 (10th Cir. 2014) (noting

in a diversity case that "Plaintiff cannot defeat jurisdiction by backtracking on his allegations"). Courts have applied SLUSA broadly to prevent just this sort of gamesmanship. *See, e.g.*, *Gibson v. PS Grp. Holdings*, 2000 WL 777818, at *3 (S.D. Cal. Mar. 8, 2000) (applying SLUSA to prevent a plaintiff from "fil[ing] a state court complaint seeking only injunctive and declaratory relief, avoid[ing] removal to federal court . . . then amend[ing] its complaint at a later date to add a prayer for compensatory damages."); *Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l Inc.*, 2018 WL 4401731, at *5 n.15 (D.N.J. Sept. 14, 2018) (collecting cases and noting that "in the same spirit of broad SLUSA preemption, courts have rejected attempts to end-run SLUSA with artful pleading").

Third Circuit precedent confirms this. In *Rowinski*, the Court found significant that allegations of misrepresentations that the plaintiffs sought to characterize as mere background were realleged in support of each cause of action. *See Rowinski*, 398 F.3d at 299 ("These allegations, which are incorporated by reference in every count in the complaint, readily satisfy the misrepresentation requirement under SLUSA."). This reasoning applies equally here. In support of both causes of action plead in the Complaint, Plaintiffs explicitly "repeat and reallege each and every allegation contained in each of the foregoing paragraphs," including amongst many others the allegations that Bausch Health "engaged in one of the most egregious cases of securities fraud in U.S. History," Compl. ¶ 2; that Bausch "misrepresented, among other things, that Bausch Health had a sustainable business model well positioned for future growth," *id.* ¶ 78; that "Bausch Health's statements about its organic growth were a lie," *id.* ¶ 84; that "Bausch Health did not disclose Philidor's existence to investors because Philidor was a means to create the appearance of organic volume growth at Bausch Health," *id.* ¶ 90; and that "Bausch Health used Philidor to improperly book revenue," *id.* ¶ 95. These allegations cannot be ignored and their incorporation

by reference into each cause of action in the Complaint is dispositive here. *Wilson v. Wells Fargo Advisors, LLC*, 2012 WL 5240815, at *8–9 (D. Del. Sept. 25, 2012) (When a plaintiff "incorporates [securities fraud] into each count of the complaint as a factual predicate to the claims . . . this is sufficient to satisfy the misrepresentation prong under SLUSA.").

### B.   *LaSala* is Distinguishable

Plaintiffs rely almost entirely on the Third Circuit's ruling in *LaSala v. Bordier Et Cie*, 519 F.3d 121 (3d Cir. 2008), a case they suggest directly controls and mandates remand. This reliance is misplaced. *LaSala* concerned the removability under SLUSA of breach of fiduciary duty claims and Swiss law money laundering claims asserted by a litigation trust established in bankruptcy. With respect to the breach of fiduciary duty claims, the *LaSala* court concluded that the trust stood in the shoes of the bankrupt corporation as assignor, and therefore the claims did not meet SLUSA's numerosity requirement. *See id.* at 136–37 ("[W]e see no indication that Congress's aim in fashioning the 'covered class action' definition was to control the number of constituents to whom a bankruptcy estate's claim is assigned."). With respect to the Swiss law claims, the court concluded that SLUSA does not apply to claims based on foreign law. *See id.* at 138 ("[W]e conclude that, when Congress extended SLUSA preemption to claims 'based upon the law of any State,' it meant just that.").

Thus, contrary to Plaintiffs' contention, *see* Pl. Mem. at 26, *LaSala*'s holdings are inapplicable to this action, and instead concern elements of SLUSA removability that are indisputably satisfied here (numerosity and assertion of claims based on state law). And, *LaSala*'s commentary on *Rowinski* simply reaffirms that mere mention of an alleged misrepresentation in a complaint is not necessarily sufficient for SLUSA to apply, just as avoiding allegations of misrepresentations does not render SLUSA inapplicable when such misrepresentations are actually at issue. *See id.* at 141. Indeed, *LaSala* acknowledges that a misrepresentation need not be an

15

element of the state law claim for SLUSA to apply, and that a "plaintiff cannot avoid SLUSA by merely altering the legal theory that makes that misrepresentation actionable." *Id.*

The language Plaintiffs block-quote from LaSala, *see* Pls.' Mem. at 20, underscores this point.  In the quoted language, *LaSala* characterizes the sort of background allegations of misrepresentations that do not give rise to SLUSA removal as "extraneous detail" that is "unwise (and in some cases a violation of Rule 8) to set out . . . in a complaint." *Id.*  Plaintiffs' allegations of securities fraud are not "extraneous," they are central to and inextricable from Plaintiffs' allegations of insolvency.  *See id.*; *Wilson*, 2012 WL at *16 n.9 (distinguishing *LaSala* where "the facts are inextricably intertwined with the causes of action and are not merely extraneous details"); *Brown v. Calamos*, 664 F.3d 123, 127 (7th Cir. 2011) ("*LaSala* . . . distinguishes, however, between an inessential factual allegation . . . and a factual allegation that while not a necessary element of the plaintiff's cause of action could be critical to his success in the particular case.  The former type of factual allegation does not doom the suit, but the latter does.").  In sum, read in its entirety, *LaSala* supports removal here.

## II.     SLUSA Applies To Plaintiffs' Declaratory Judgment Claims

Plaintiffs' argument that SLUSA does not apply to their claims because they are not claims for damages is equally unavailing.  Courts in this and other circuits have found that plaintiffs may not plead around SLUSA by omitting a request for damages when the complaint, at bottom, seeks the recovery of money.  *See, e.g.*, *Rubery v. Radian Grp., Inc.*, 2007 WL 1575211, at *2 (E.D. Pa. May 31, 2007) (finding that a claim seeking the imposition of a constructive trust was subject to SLUSA because "[a]lthough dressed in the language of equity, this is a demand for money.");  *Betram v. Terayon Comms. Sys. Inc.*, 2001 WL 514358, at *3 (C.D. Cal. Mar. 27, 2001) (noting that in enacting SLUSA Congress did not adopt a particular definition of damages but rather "sought to prevent plaintiff from seeking to evade the protection that Federal law provides against

16

abusive litigation by filing suit in State court rather than Federal court"); *Davis v. John Hancock Viable Life Ins. Co.*, 295 F. App'x 245, 246 (9th Cir. 2008) (finding that SLUSA precluded plaintiff's claims because the plaintiff sought relief that would "prevent [Defendant] from collecting premiums (*i.e.*, money)," as well as additional relief that could result in the award of money); *Anderson v. Lynch*, 2007 WL 9734031, at *3 (D.N.M. Apr. 4, 2007) ("Plaintiffs attempt to circumvent application of SLUSA by seeking an equitable bill of discovery as a predicate to future amendments seeking additional recovery must therefore fail."). As the court explained in one early decision to consider this issue:

> A rule allowing a class action plaintiff to defeat removal by filing an amended complaint that omits a prayer for damages would eviscerate the Uniform Standards Act [SLUSA]. Under Plaintiff's theory, a class action plaintiff could file a state court complaint seeking only injunctive and declaratory relief, avoid removal to federal court, pursue massive discovery in state court, then amend its complaint at a later date to add a prayer for compensatory damages. To avoid circumvention of the Reform Act, the structure and legislative history of the Uniform Standards Act suggest that district courts should construe the covered class action definition broadly to avoid giving effect to such attempts at manipulation.

*Gibson v. PS Group Holdings, Inc.*, 2000 WL 777818, at *3 (S.D. Cal. Mar. 8, 2000).

This reasoning is directly applicable here. Although Plaintiffs' claims are not styled as a request for damages, recovery of damages is Plaintiffs' goal. The Complaint makes frequent reference to the alleged over $3 billion to which Plaintiffs believe they are entitled. *See, e.g.*, Compl. ¶¶ 6, 8, 122, 124, 141, 142, 145, 148, 161, 181. If Plaintiffs were to receive the relief they request, the result would be to impose liability for potential future damages on Bausch + Lomb, the functional equivalent of the constructive trust that triggered SLUSA preclusion in *Rubery*. *See* 2007 WL 1575211, at *1–2. Furthermore, Plaintiffs' prayer for relief is not limited to a declaratory judgment; they also seek costs and expenses and "such other and further relief as the Court may deem just and proper." Compl. at 45. As the Ninth Circuit held in *Davis*, such an open-ended

17

request for relief, when attached to a complaint essentially seeking monetary compensation, satisfies the requirements of SLUSA.  *See Davis*, 295 F. Appx. at 246–47 ("Moreover, the amended complaint continues to seek other equitable relief, including 'further relief as the Court deems just and proper' that might include money damages.").

Plaintiffs' authorities neither alter this analysis nor compel a different conclusion. Plaintiffs fail to consider the starkly different character of the equitable relief sought in *Rubin v. Reinhard*, 2009 WL 862241 (S.D. Cal. Mar. 25, 2009).  *See* Pl. Mem. at 24.  The plaintiff in *Rubin* was a shareholder who challenged the decision of a company's board of directors to issue large amounts of stock to private investors at allegedly below-market prices and sought injunctive relief to prevent the defendants from voting the allegedly improperly issued shares at an upcoming shareholders' meeting.  *See id.*[5]  Such an injunction lacks the fundamentally monetary character of the relief that Plaintiffs seek here, *i.e.*, the imposition of liability on Bausch + Lomb for potential securities fraud damages awarded against Bausch Health.  Plaintiffs' reliance on *Wald v. C.M. Life Ins. Co.*, 2001 WL 256179 (N.D. Tex. Mar. 8, 2001) is similarly misplaced.  *See* Pl. Mem. at 24. In *Wald*, the named plaintiff sought a declaratory judgment to clarify conflicting contract terms, specifically the date from which certain charges would be calculated, in connection with the exchange of two annuities.  *Id.* at *1.  The *Wald* court concluded that this did not trigger SLUSA because the plaintiff only sought "to rectify potentially conflicting language in the . . . contract and to avoid the unnecessary charge of surrender fees in the future."  *Id.* at *6.  The court also noted that the defendants had not previously charged the plaintiff the fees in question.  *See id.*  Therefore, unlike here, the relief requested did not contemplate any compensation of any kind.

---

[5] The damages the action did seek were in connection with a derivative action on behalf of the company—the same distinction, not present here, that caused the claims at issue in *LaSala* to fall outside of the scope of SLUSA.  *See id.*

18

Thus, regardless of how Plaintiffs choose to characterize the claims in their Complaint, and regardless of whether the relief available is deemed equitable or legal, Plaintiffs' primary, and here dispositive, objective in filing this Complaint is the recovery of damages in connection with the securities fraud allegations in the Opt-Out Actions.  The declaratory relief sought by Plaintiffs thus does not impact the application of SLUSA to this action.

## III.   Plaintiffs' Remaining Arguments Fail

Plaintiffs' conclusory policy arguments also fail.  Congress enacted SLUSA "to prevent the flight of securities cases from federal to state courts, thereby preventing abusive lawsuits and 'making Federal court the exclusive venue for most securities fraud class action litigation involving nationally traded securities." *In re Lord Abbett Mutual* Funds, 553 F.3d 248, 254 (3d Cir. 2009) (citing H.R. Rep. No. 105-803, at 15 (1998)).  Plaintiffs argue that this purpose is not served by removal of this action because Plaintiffs "seek[] only to ensure the *collectability* of the potential judgment." Pl. Mem. at 7.  That might be true if Plaintiffs brought a fraudulent transfer action after their claims had been reduced to judgment.  But here Plaintiffs contend that they are entitled to preemptive relief based at least in part on the supposed merit and resulting dollar value of their unadjudicated securities fraud claims.  Litigating these claims in state court threatens the application of uniform standards to such claims and the exclusive federal venue SLUSA seeks to protect.  Indeed, if Plaintiffs are correct that SLUSA has no preclusive power over an action brought under state fraudulent transfer law, then any shareholder wishing to evade the discovery restrictions of the PSLRA need only file a claim in federal court to establish themselves as a contingent creditor, then file a state court claim focused on enforcement of the future hypothetical judgment, and pursue discovery in the state court action in derogation of the PSLRA's discovery stay and heightened pleading standards.

These risks are well-illustrated by this case.  In denying Plaintiffs discovery into the B + L Transaction in the Opt-Out Actions, the Special Master explained that "it is settled law that discovery into a defendant's financial status or ability to satisfy a judgment is not permissible before one has been entered, something which Plaintiffs grudgingly concede." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 15-cv-07658, ECF No. 884, at 15 (Nov. 12, 2021).  The Special Master continued to explain that "allowing even this 'tailored' discovery, may . . . open a can of worms" because "when a defendant corporation engages in any restructuring, sale of assets, purchase of assets, divestiture of a business unit or take other steps which in some fashion impact the existing corporate setup, a potential judgment creditor . . . has a concern." *Id.*  But regardless of Plaintiffs' interests in such information, "this does not provide a basis for a potential creditor to explore a company's operations and ongoing business decisions pre-judgment and may have a chilling effect on that company's actions." *Id.*  Plaintiffs responded to this ruling by initiating prohibited parallel litigation that may subject the parties to conflicting rulings, burdensome duplicative requests, and other roadblocks to the resolution of the federal securities cases.  The Special Master's opinion recognized and articulated these and other  risks and costs that pre-judgment enforcement efforts may have on securities issuers.  Plaintiffs here would strip the management of these issues from the federal courts, in direct contravention of Congress's statutory scheme to make them the "exclusive venue" for securities fraud mass actions.  *See In re Lord Abbett Mutual Funds*, 553 F.3d at 254.

Finally, for the reasons set forth above, removal is proper under SLUSA.  However, should the Court decide to remand the Complaint to the NJ State Court, an award of fees to Plaintiffs under 28 U.S.C. § 1447 would be inappropriate.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively

20

reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital*, 546 U.S. 132, 141 (2005); *see also Stephens v. Gentilello*, 853 F. Supp. 2d 462, 471 (D.N.J. 2012) (refusing to award fees after finding that SLUSA did not apply on a second notice of removal because the court "[could not] say that the [defendants] 'lacked an objectively reasonable basis for seeking removal"); *Schuster v. Gardner*, 319 F. Supp. 2d 1159, 1165 (S.D. Cal. 2003) (fees not typically awarded unless removal was either "frivolous" or "motivated by bad faith.").  Plaintiffs cite no precedent specifically supporting their arguments, nor any case from any court finding SLUSA inapplicable to state fraudulent transfer claims arising from pending and unresolved federal securities fraud litigation.  This is in and of itself sufficient reason to deny any request for fees.  *See Coykendall v. Kaplan*, 2002 WL 31962137, at *4 (N.D. Cal. Aug. 1, 2002) (declining to award fees where "the preemption and removal issues raised here have not been resolved in this circuit").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for remand should be denied.

Dated: May 20, 2022

/s/ *Matthew A. Sklar*
Matthew A. Sklar
Omar A. Bareentto
**McCARTER & ENGLISH LLP**
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 622-4444
Fax: (973) 624-7070
msklar@mccarter.com
obareentto@mccarter.com

Jonathan K. Youngwood
(*pro hac vice* in No. 3:15-cv-07658)
Craig S. Waldman
(*pro hac vice* in No. 3:15-cv-07658)
Isaac Rethy
(*pro hac vice* in No. 3:15-cv-07658)
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017
Phone:  (212) 455-2000
Fax:  (212) 455-2502
jyoungwood@stblaw.com
cwaldman@stblaw.com
irethy@stblaw.com