**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GMO TRUST *et al.*, | |
| Plaintiffs, | Civil Action No. 22-1823 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| BAUSCH HEALTH COMPANIES, INC., *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

    This matter comes before the Court on Plaintiffs GMO Trust and others' Motion to Remand

("Plaintiffs").[1] (ECF No. 9.) Defendants Bausch + Lomb Corporation ("Bausch + Lomb") and Bausch Health Companies Inc. ("Bausch Health", and together with Bausch + Lomb, "Defendants") opposed (ECF No. 10), and Plaintiffs replied (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiffs' Motion.

## I.    **BACKGROUND**

This story begins like countless others in this district, with Valeant Pharmaceuticals International, Inc. ("Valeant"), now known as Bausch Health. For the past five years, Plaintiffs have pursued large-scale securities fraud claims against Defendants' predecessor, Valeant. (Pls.' Moving Br. 1, ECF No. 9; Defs.' Opp'n Br. 4, ECF No. 10.) Plaintiffs are sixty-two investment entities that are plaintiffs in twelve opt-out actions remaining against Valeant in this Court.

---

[1] Plaintiffs include GMO Trust, GMO Alpha Only Fund, GMO Benchmark Free Fund, GMO Implementation Fund, GMO Developed World Stock Fund, GMO International Large/Mid Cap Equity Fund, GMO International Equity Fund, GMO Tax-Managed International Equities Fund, GMO Funds PLC, GMO Global Equity Allocation Investment Fund, GMO World Equity Allocation Investment Fund PLC, GMO Global Real Return (UCITS) Fund, GMO Offshore Master Portfolios II Ltd., GMO Event-Driven Master Portfolio, GMO Global Equity Trust, GMO Master Portfolios (Onshore), L.P., GMO Mean Reversion Fund (Onshore), GMO Tax-Managed Global Balanced Portfolio, GMO Mean Reversion Special Solution Fund, L.P., Brahman Partners II, L.P., Brahman Partners III, L.P., Brahman Partners II Offshore, Ltd., Brahman Institutional Partners, L.P., Brahman C.P.F. Partners, L.P., Brahman Partners IV, L.P., Brahman Partners IV (Cayman), Ltd., BH Investments Fund, L.L.C., and East 71, Ltd., VALIC Company I, VALIC Company II, SunAmerica Series Trust, and Seasons Series Trust, Discovery Global Citizens Master Fund, Ltd., Discovery Global Focus Master Fund, Ltd., Discovery Global Macro Master Fund, Ltd., and Discovery Global Opportunity Master Fund, Ltd., MSD Torchlight Partners, L.P. and MSD Torchlight Partners (MM), L.P., Incline Global Master LP and Incline Global ELS LP, Okumus Opportunistic Value Company Ltd., Maples Liquidation Services Limited as Voluntary Liquidator of Maverick Neutral Levered Fund, Ltd., Maverick Capital Ltd., as assignee of Maverick Fund, L.D.C. and Maverick Select Fund, Ltd., Maverick Fund II, Ltd., Maverick Long Enhanced Fund, Ltd., Maverick Long Fund, Ltd., and Maverick Fund USA, Ltd., Pacific Select Fund and Pacific Funds Series Trust, Stichting PGGM Depositary, Stichting Bedrijfstakpensioenfonds voor het Schilders-Afwerkingsen Glaszetbedrijf, USAA Mutual Funds Trust, Internationale Kapitalanlagegesellschaft mbH, Plaintiff GIC Private Ltd., 2012 Dynasty UC LLC, Flinn Investments, LLC, Lawrence Flinn, Jr. 1975 Trust FBO Adriane S. Flinn, Lawrence Flinn, Jr. 1975 Trust FBO Lawrence Flinn III, LFJR 2010 GRAT Remainder Trust, LFJR 2012 Dynasty LLC - Series A, Lawrence Flinn, Jr. 1975 Trust FBO Marion Flinn Moulton, Stephanie and Lawrence Flinn, Jr. Charitable Trust, and Stephanie S. Flinn Master Partnership.

Plaintiffs are litigants that are currently pursuing securities claims against Bausch Health. They are also potential judgment creditors of Bausch Health. To illustrate the dispute, the Court outlines the facts that led here.

### A.      The Underlying Securities Litigation

Plaintiffs, purchasers of Valeant (now Bausch Health) equity securities, allege that between 2013 and 2016, Bausch Health and its executives engaged in widespread securities fraud. (Notice of Removal Ex. A (Compl.) ¶ 78, ECF No. 1-1.) According to Plaintiffs, Bausch Health appointed J. Michael Pearson ("Pearson") as its Chief Executive Officer ("CEO") in 2008. (*Id.* ¶ 79.) With Pearson came a unique, and ultimately fatal, corporate strategy: instead of pursuing the traditional pharmaceutical business strategy of research and development in new drugs, Bausch Health sought to grow and sustain its business through acquisitions of assets from other pharmaceutical companies that had already done the leg work. (*Id.*)

The unique strategy worked, for a moment at least. Bausch Health acquired multiple companies, including Bausch + Lomb which has grown into a profitable eye health business. (*Id.* ¶ 80.) But the strategy also had its blemishes—blemishes that led to the securities litigation before this Court.

Bausch Health's legal trouble began with the unsuccessful acquisition of pharmaceutical company Allergan, Inc. ("Allergan"). (*Id.* ¶ 81.) In the early 2010's, Bausch Health made overtures to acquire Allergan. Allergan opposed the takeover, however. (*Id.*) According to Allergan, Bausch Health "was nothing more than a 'roll up' that increased revenue through a growth-by-acquisition business relying on unsustainable price increases." (*Id.*) This characterization led to closer scrutiny of Bausch Health's business strategy and financial health. (*Id.*)

In an attempt to stamp out any concerns about the company's unusual strategy, beginning in 2014, Bausch Health's executives, and Pearson in particular, reassured the public that Bausch

Health's growth was through volume increases, a sustainable practice. (*Id.* ¶ 82.) In 2014 and 2015, Bausch Health reported strong growth on its products that Plaintiffs claim were ultimately untrue. (*Id.* ¶¶ 83-84.) Instead, Plaintiffs claim that Bausch Health's growth was sustained through (1) price increases just as Allergan had alleged and (2) a covert mail-order pharmacy network to fraudulently illustrate growth in its dermatology segment. (*Id.* ¶ 85, 87-88.)

As Bausch Health's fraud was gradually revealed to the market, the price of Bausch Health stock plummeted from over $250 per share in mid-2015 to under $25 per share by mid-2016, resulting in a market capitalization loss of almost $100 billion. (*Id.* ¶ 109.) As a result, several putative securities fraud class actions were filed in the United States District Court for the District of New Jersey against Bausch Health, its former and present directors and officers, and others. (*Id.* ¶ 110; *In re Valeant Pharms. Int'l, Inc. Secs. Litig.*, No. 15-7658 (D.N.J. 2015).

**B.     Bausch Health's Planned Spin-Off**

The securities fraud litigation, however, is not the source of the instant dispute (or, at least not directly). In August 2020, during the pendency of the ongoing securities litigation, Bausch Health announced its plan to spin off (the "Spin-Off") its eye health business into a separate, independent public company, Bausch + Lomb. (*Id.* ¶ 127.) Defendants touted the Spin-Off as an opportunity to "unlock value." (*Id.* ¶ 130.) Plaintiffs offer another explanation: the Spin-Off is simply Defendants' attempt to shield themselves from the liabilities associated with the ongoing securities litigation. (*Id.* ¶ 130-31.) This is because, Plaintiffs argue, the Spin-Off would cause Bausch Health to be "in a significantly worse financial position than prior to the [S]pin-[O]ff." (*Id.* ¶ 6.) For instance, investment banks have concluded that, even without accounting for the liabilities contingent on the judgment rendered in Plaintiffs' securities fraud action, Defendants will have a sizably negative equity value with debt levels far exceeding the company's asset levels. (*Id.*

¶¶ 170-74.) Simply put, if successful, Defendants' Spin-Off would prove a lifeboat for its most profitable business line while the rest of the company sinks.

Plaintiffs maintain that the Spin-Off would leave Bausch Health undercapitalized, potentially insolvent, and at risk of bankruptcy. (*Id.* ¶ 160.) Specifically, Plaintiffs allege that Bausch Health's Spin-Off of Bausch + Lomb would result in Bausch Health receiving less than reasonably equivalent value because it will transfer its shares in Bausch Health to its equity holders without receiving anything in return. (*Id.* ¶ 156.) This will put any equity that Bausch Health receives beyond the reach of creditors, such as Plaintiffs. (*Id.* ¶ 157.)

As potential creditors of Bausch Health, Plaintiffs were naturally troubled by Bausch Health's financial outlook as a result of the Spin-Off. So, they took their fight to state court, where they originally brought their Complaint that alleges two claims under the New Jersey Voidable Transactions Act ("NJVTA"), both of which seek declaratory judgment that the Spin-Off transaction is a fraudulent transfer of assets against which Plaintiffs may still assert any potential judgment they receive in the underlying securities fraud action. (*See generally* Compl.)

On removal, that suit comes before the Court. Although the Spin-Off legality is a significant legal issue, it is not the issue before the Court today. Instead, the Court tackles a threshold issue: whether Defendants' removal of this action from state court under the removability mandate of the Securities Litigation Uniform Standards Act ("SLUSA") was proper. Plaintiffs request the Court to remand to state court once again, as they argue SLUSA is inapplicable to their NJVTA action. (*See generally* Pl.'s Moving Br.) If removal was improper, this case is destined for remand back to state court.

## II.   **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction, and a case can only be removed to a federal district court if the case could have been originally filed there." *MHA LLC v. Healthfirst*,

*Inc.*, 629 F. App'x 409, 411 (3d Cir. 2015) (citing 28 U.S.C. § 1441(a)). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Absent diversity of citizenship, federal-question jurisdiction . . . is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, plaintiffs are the masters of their claim; "[they] may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

A defendant must generally file a notice of removal "within [thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1). A defendant may alternatively remove a state action within thirty days of receipt or service of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Removed cases shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party initially removing the action has the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted). This burden is heavy, since "the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.*

## III.   DISCUSSION

The question before the Court today is whether SLUSA applies to Plaintiffs' state law claims for declaratory judgment under the NJVTA. Because the history of SLUSA is relevant to the Court's inquiry here, it begins there. The Court then discusses whether this dispute involves a

covered class action as defined under SLUSA Finally, the Court analyzes whether the securities

claims are factual predicates to the instant fraudulent transfer claims.

### A.        History of the SLUSA

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA") to stem

the tide of non-meritorious class actions alleging securities fraud under the Securities Act of 1933

("1933 Act"), and the Securities Exchange Act of 1934 ("1934 Act" and, together with the 1933

Act, the "Acts"). *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82

(2006). The PSLRA set out to accomplish this task by setting more stringent procedural and

substantive requirements to bring securities actions and recover damages. *Id*. Subsequently,

plaintiffs discovered an unintended consequence of the PSLRA: they could circumvent the PSLRA

by pleading the same allegations that would support securities law claims as class action claims

under state law and in state courts instead. *Id*.

Plaintiffs' workaround did not last, however. In 1998, to stem the proliferation of suits

intended to avoid the PSLRA's requirements, Congress enacted the Securities Litigation Uniform

Standards Act ("SLUSA"). *See* H.R.Rep. No. 105–640, p. 10 (1998). SLUSA provides an

exception to the well-pleaded complaint rule. *See Rowinski v. Salomon Smith Barney Inc.*, 398

F.3d 294, 304 (3d Cir. 2005) ("SLUSA stands as an express exception to the well-pleaded

complaint rule, and its preemptive force cannot be circumvented by artful drafting.") It precludes

a private party from bringing a "covered class action" in federal or state court, based on state law,

alleging a "misrepresentation or omission of a material fact" or the use of "any manipulative or

deceptive device or contrivance . . . in connection with the purchase or sale of a covered security."

15 U.S.C. § 78bb(f)(1). Under SLUSA, the Court must inquire as to whether a "reasonable reading

of the complaint evidences allegations of 'a misrepresentation or omission of a material fact in

connection with the purchase or sale of a covered security.'" *Rowinski*, 398 F.3d at 304 (citing § 78bb(f)(1)).

In order to remove a claim under SLUSA, the removing party must establish that the action is: (1) a covered class action, (2) that is based on state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) "in connection with" or involving (5) the purchase or sale of a covered security. *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 467 (D.N.J. 2012) (citing *Prager v. Knight/Trimark Grp.*, 124 F. Supp. 2d 229, 231 (D.N.J. 2000)); *see also* § 78bb(f)(1). Looking to the legislative purpose of SLUSA, the U.S. Supreme Court counsels that SLUSA should be interpreted broadly:

> The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment. A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose, viz., "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the 1995 Act.

*See Dabit*, 547 U.S. at 86 (quoting 15 U.S.C. § 78bb(f)(2)). Despite the SLUSA's seemingly straightforward language and the Supreme Court's mandate to apply SLUSA broadly, that application is not without nuance. Indeed, the circuits have developed different methods of analyzing when SLUSA applies, particularly on how to consider the role of the alleged misrepresentation in support of the state law claims. For example, the Sixth Circuit applies the "literalist approach," holding that "[SLUSA] does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple." *Daniels v. Morgan Asset Mgmt., Inc.*, 497 F. App'x 548, 553 (6th Cir. 2012) (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009)); *Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 918

8

(7th Cir. 2017) (Flaum, J., concurring) (describing the different approaches to applying SLUSA by the Third, Sixth, and Ninth Circuits). For the purposes of this matter, the Court focuses on the Third Circuit's approach below.

> **B.      Plaintiffs' Request for Declaratory Relief Indicates It is Not a Covered Class Action.**

To start, since Plaintiffs' NJVTA claim is in the form of a declaratory judgment action, as they request the state court to declare Defendants' Spin-Off a fraudulent transfer, Plaintiffs contend that this claim fails to qualify as a "covered class action." (Pls.' Moving Br. 23.) In response, Defendants cite to authorities ruling that plaintiffs "may not plead around SLUSA" by dressing damage claims in a different cloth, such as declaratory judgments. (*See* Defs.' Opp'n Br. 16.)

SLUSA and its removal mandate apply only to a "covered class action," which is a "single lawsuit in which . . . *damages* are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. §§ 78bb(f)(1), 78bb(f)(5)(B)(i)(I) (emphasis added). Weary of plaintiffs that "file a state court complaint seeking only injunctive and declaratory relief, avoid removal to federal court, pursue massive discovery in state court, [and] then amend [their] complaint at a later date to add a prayer for compensatory damages[,]" thereby avoiding SLUSA and PLSRA, courts have ruled that the damages requirement for covered class actions should be construed broadly. *Anderson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 06-1155, 2007 WL 9734031, at *2 (D.N.M. Apr. 4, 2007), *aff'd,* 521 F.3d 1278 (10th Cir. 2008) (quoting *Gibson v. PS Grp. Holdings Inc.*, No. 00-0372, 2000 WL 777818, at *3 (S.D. Cal. Mar. 8, 2000); *Gibson*, 2000 WL 777818, at *3 ("To avoid circumvention of the Reform Act, the structure and legislative history of the Uniform Standards Act suggest that district courts should construe the 'covered class action' definition broadly to avoid giving effect to such attempts at manipulation.") Towards this end, courts have routinely applied SLUSA to actions seeking equitable relief that nevertheless essentially amounts to a form of monetary relief. *See Rubery v. Radian Grp., Inc.*, No. 07-1068,

9

2007 WL 1575211, at *2 (E.D. Pa. May 31, 2007) (finding that "[p]laintiff's demand for a 'constructive trust' [was] tantamount to a demand for 'damages,'" as the constructive trust sought by plaintiff was essentially a form of financial relief); *Davis v. John Hancock Viable Life Ins. Co.*, 295 F. App'x 245, 246 (9th Cir. 2008) (applying SLUSA to plaintiffs' claims for equitable relief because they sought to "prevent [the defendant] from collecting premiums," which essentially represents monetary compensation, as well as other relief which could yield damages); *Anderson v. Lynch*, No. 06-1155, 2007 WL 9734031, at *3 (D.N.M. Apr. 4, 2007) (ruling that since plaintiffs sought an equitable bill of discovery to inquire directly into allegations of securities fraud against defendants, they may "attempt to circumvent application of SLUSA" by subsequently making future amendments seeking damages for that securities fraud).

Interpreting the damages provision broadly, Defendants similarly contend that Plaintiffs' fraudulent transfer claims under the NJVTA qualify as a "covered class action." (*See* Defs.' Opp'n Br. 17 ("Although Plaintiffs' claims are not styled as a request for damages, recovery of damages is Plaintiffs' goal.").) Indeed, Defendants argue that if Plaintiffs succeed on their NJVTA claims, "the result would be to impose liability for potential future damages on Bausch [+] Lomb," which is the functional equivalent of a claim for damages when interpreting the covered class action provision broadly. (*Id.*) Since Plaintiffs' ultimate objective is to ensure the recovery of damages in connection with the allegations of securities fraud in the underlying action, Defendants believe that their NJVTA claims qualify as a "covered class action" to which SLUSA is applicable. (*Id.* at 9.)

The Court finds that Plaintiffs' request for equitable, not monetary, relief is dispositive on the facts of this case. For starters, the NJVTA expressly authorizes courts to impose equitable remedies. *S.E.C. v. Antar*, 120 F. Supp. 2d 431, 447 (D.N.J. 2000), *aff'd*, 44 F. App'x 548 (3d Cir.

2002) ("the [NJVTA] expressly recognizes the availability of equitable remedies against debtors who engage in fraudulent transfers."). Such remedies a creditor may request include as follows:

> (1) [a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim . . . (3)(a) An injunction against further disposition by the debtor or transferee, or both, of the asset transferred or of other property; (b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or (c) Any other relief the circumstances may require.

N.J.S.A. § 25:2–29. Thus, the NJVTA primarily contemplates equitable, not monetary, relief.

Plaintiffs' Complaint further illustrates that the relief sought is equitable. Here, the relief Plaintiffs seek is a declaration that Bausch Health's transfer of assets to Bausch + Lomb is voidable under the NJVTA and that Bausch + Lomb may be liable as well. (Compl. ¶ 193-94.) There is a notable difference between the declaratory relief which Plaintiffs seek through their NJVTA claim and the other cases cited by Defendants. *See Rubery*, 2007 WL 1575211, at *2 ("Moreover, it appears that the relief Plaintiff seeks here is primarily financial: during a conference in this matter, Plaintiff stated she could well seek to amend her Complaint to include an explicit claim for money damages"); *Gibson*, 2000 WL 777818, at *3 ("The procedural history of this case suggests that Plaintiff selectively omitted the damages prayer from his Amended Complaint to defeat removal under [SLUSA]. . . . A rule allowing a class action plaintiff to defeat removal by filing an amended complaint that omits a prayer for damages would eviscerate [SLUSA].").

As a final word on this point, the declaratory judgment sought by Plaintiffs is far removed from monetary compensation. Indeed, the Court has no reason to infer that the instant action is Plaintiffs' attempt to collect monetary damages instead of simply Plaintiffs' effort to maintain the status quo as they pursue their securities claims before this Court. Nor does the Court perceive any other nefarious reason behind Plaintiffs' pursuit of this action when the vehicle through which they may possibly receive monetary compensation in the future is currently ongoing before this Court.

*See e.g., Wald v. C.M. Life Ins. Co.*, No. 00-2520, 2001 WL 256179, at \*6 (N.D. Tex. Mar. 8, 2001) ("[T]here is simply no indication that [p]laintiff is attempting to manipulate the system."). The Court thus finds that this does not qualify as a covered class action because Plaintiffs do not seek damages.

> **C.      The Securities Claims Are Not Factual Predicates to the Fraudulent Transfer Claims.**

The parties spend the bulk of their arguments bickering about whether the securities claims detailed above constitute factual predicates to the fraudulent transfer claims currently before the Court. Despite SLUSA's broad mandate, and the Third Circuit's clarification that the misrepresentation must be a factual predicate to the state law claims, the Court still wrestles with the unique facts here. In Plaintiffs' view, Bausch Health's misrepresentations that are the subject of the ongoing securities litigation (also before this Court) do not serve as factual predicates for the fraudulent transfer claims asserted under the NJVTA. (Pls.' Moving Br. 16.) This is because, Plaintiffs argue, "the allegations of securities fraud simply describe the claims Plaintiffs are pursuing in federal court and are thus extraneous to–and not a factual predicate for–proving the state law claims." (*Id.* at 3.) Rather, since potential judgment creditors have standing to assert claims under the NJVTA, regardless of their likelihood of obtaining judgments, the misrepresentations described in the instant Complaint are included to inform the Court as to the factual circumstances that led to the Spin-Off, why Plaintiffs are potential judgment creditors of Defendants, and provide further, though not necessary, evidence that Bausch Health will be left insolvent. (*Id.* at 16.)

Plaintiffs also contest that Bausch Health's contingent liabilities stemming from a successful outcome in this underlying securities fraud action, if any, must necessarily be accounted for to determine Bausch Health's insolvency. (*Id.* at 22.) In other words, because it is not necessary to calculate the securities fraud claims to establish Bausch Health's insolvency, the securities fraud

12

misrepresentations are not factual predicates to establish liability under the NJVTA. (*Id.*) Plaintiffs "expressly plead[] that, as a result of the Spin-Off, [the defendant] has little or no net worth and is at risk of bankruptcy based on valuations conducted by major independent financial institutions that do not account for the value of Plaintiffs' securities fraud claims." (*Id.*) Accordingly, Plaintiffs aver they will not need to prove the merits or likely award on their underlying securities fraud action in order to establish that Bausch's Spin-Off induced insolvency and, in turn, to acquire relief under their NJVTA state law claim. (*Id.*)

Unsurprisingly, Defendants assert that Plaintiffs' fraudulent transfer claims are subject to SLUSA preemption. (*See* Defs.' Opp'n Br. 3.) Disputing Plaintiffs' contentions, Defendants argue that if the NJVTA claims were allowed to proceed in state court, the court would be called upon to analyze the merits and potential value of the securities fraud claims. That is because in order to evaluate the fraudulent transfer claims, the state court must make a finding of whether Bausch Health will be rendered insolvent—a finding the court cannot make without providing a valuation, and probability of success, of the securities fraud claims. (*Id.* at 10.) Thus, according to Defendants, the alleged misrepresentations made in connection with the securities fraud claims litigated before this Court also serve as "factual predicates" for the NJVTA claims. (*Id.* at 11 ("Plaintiffs' constructive fraudulent transfer claims, as pleaded in the Complaint, necessarily require an analysis of the factual and legal merit of the underlying securities fraud allegations and the anticipated value of these contingent, disputed claims.").)

Defendants highlight that even Plaintiffs' Complaint "demonstrate[s] that the value of their securities fraud claims is a critical component of their fraudulent transfer claims." (*Id.* at 12.) In support of this contention, Defendants recount Plaintiffs' allegations in the Complaint that highlight the Spin-Off will result in Bausch Health being incapable of paying any judgment that emerges from the securities fraud action. (*Id.* at 12-13.) Thus, according to Defendants, even

13

Plaintiffs' own assertions prove that the fraudulent transfer claims asserted here will necessarily require an analysis of the "factual and legal merit of the underlying securities fraud allegations and the anticipated value of these contingent, disputed claims," already before this Court.

Two Third Circuit cases provide the parameters in which this Circuit interprets SLUSA's application. First up is *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294 (3d Cir. 2005). *Rowinski* ruled that "[SLUSA] does not turn on whether allegations are characterized as facts or as essential legal elements of a claim," but instead, the relevant inquiry is whether "the SLUSA prerequisites are 'alleged' in one form or another." *Id.* at 300. Referencing the misrepresentation prong, the *Rowinski* court ruled that it was satisfied where "allegations of a material misrepresentation serve as the factual predicate of a state law claim[.]" *Id.*

The next significant SLUSA decision to emerge in this Circuit happened three years later in *LaSala v. Bordier et Cie*, 519 F.3d 121(3d Cir. 2008). Plaintiffs alleged that the company's officers misrepresented the company's financial strength. *Id.* at 126. After investors discovered the company's accurate financial standing, the stock price plummeted and led to the company filing for bankruptcy. *Id.* Plaintiffs, thereafter, brought several claims including claims under Swiss law. The Third Circuit clarified that where alleged misrepresentations have no bearing on whether a defendant's conduct is actionable, such allegations are not factual predicates to the plaintiffs' claims; "rather, they are merely background details that need not have been alleged, and need not be proved." *Id.* The Circuit further opined that:

> It is important to recognize that *Rowinski* did not hold that any time a misrepresentation is alleged, the misrepresentation-in-connection-with-a-securities-trade ingredient is present. (Nor does it follow that failing to make such an allegation explicit necessarily avoids the ingredient). Rather, the point we made in *Rowinski* was that when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely

14

> an extraneous detail. This distinction is important because complaints are often filled with more information than is necessary. While it may be unwise (and, in some cases, a violation of Rule 8) to set out extraneous allegations of misrepresentations in a complaint, the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA.

*Id.* at 141.

Despite SLUSA's broad mandate, and the Third Circuit's clarification that the misrepresentation must be a factual predicate to the state law claims, the Court still wrestles with the unique facts here. Ultimately, the Court concludes that the securities fraud allegations are not factual predicates to the fraudulent transfer claims.

As an initial note, the securities fraud misrepresentations are not, in themselves, factual predicates to the fraudulent transfer claims. To recap, SLUSA applies to claims alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security[.]" 15 U.S.C. § 78bb(f)(1)(A). As the Third Circuit applies the standard, SLUSA precludes state law claims *only* if the alleged misrepresentation is a "factual predicate" of the claim. *LaSala*, 519 F.3d at 141. This means that "when one of a plaintiff's necessary facts is a misrepresentation, the plaintiff cannot avoid SLUSA by merely altering the legal theory that makes that misrepresentation actionable." *Id.*[2]

Plaintiffs assert two fraudulent transfer claims under the NJVTA. The first claim falls under N.J. Stat. Ann. § 25:2-25(a)(2), which states that "a transfer made . . . by a debtor is voidable as to a creditor [where the transfer is made] without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor." N.J. Stat. Ann. § 25:2-25(a)(2). The second fraudulent transfer claim comes under N.J. Stat. Ann. § 25:2-27, where a plaintiff must allege that

---

[2] To be sure, it is dispositive that misrepresentation or omission is not an element of the claim. *Id.*

15

a debtor did not receive "reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at [the] time or the debtor became insolvent as a result of the transfer." N.J. Stat. Ann. § 25:2-27; *Antar*, 120 F. Supp. 2d 431, 443 (D.N.J. 2000), *aff'd*, 44 F. App'x 548 (3d Cir. 2002).

Analyzing the fraudulent transfer claims, the Court finds it is not necessary to allege the securities fraud misrepresentation to assert the fraudulent transfer claims. In support of this conclusion, the Court turns to the factual predicates necessary to support the instant claims. Starting with the plain language of the NJVTA causes of action, the elements of the fraudulent transfer claims do not require Plaintiffs to prove misrepresentation. Looking further to the factual underpinnings of Plaintiffs' fraudulent transfer claims, the Court finds that Plaintiffs need only prove that Bausch Health will transfer valuable assets to Bausch + Lomb without receiving a reasonably equivalent value in exchange, that Bausch Health will not be able to satisfy outstanding liabilities with its remaining assets, and that at the time of the transfer, Bausch Health intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. None of these "factual predicates" involve the misrepresentations alleged in support of the securities allegations.

Admittedly, Defendants correctly highlight that Plaintiffs' Complaint is rife with references to facts that also underly their securities fraud claims. (*E.g.* Compl. 8 ("[T]he [S]pin-[O]ff leaves Bausch Health with insufficient assets to satisfy outstanding liabilities, including the multi-billion-dollar contingent liabilities represented by Plaintiffs' federal securities fraud claims").) But references to facts that may underly securities fraud claims do not automatically preempt a Complaint under SLUSA. Instead, the question the Court must ask is whether those misrepresentations are necessary underpinnings to the state law claims. *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 142 (2d Cir. 2015) ("SLUSA requires courts to inquire

whether the allegation is necessary to or extraneous to liability under the state law claims"). Said another way, if the Court ignored the facts related to the securities fraud misrepresentations in the instant Complaint, would Plaintiffs still be able to allege a claim? The Court believes the answer to that question is yes. To recap, the securities fraud claims are relevant to why Plaintiffs are judgment creditors, however, they are not necessarily relevant to deciding the fraudulent transfer claims because the state court judge won't have to make a decision on the *merits* of the securities litigation.

Defendants' contention that the securities fraud misrepresentations alleged in support of the security fraud claims are a necessary factual predicate because the state court will be required to determine Bausch Health's solvency fairs no better. Defendants aver that Plaintiffs "must prove the insolvency of the debtor at the time of transfer, which requires valuation of the debtor's assets and liabilities" including the value of the securities fraud claims. (Defs.' Opp'n Br. 12.) Contrary to Defendants' argument, however, the state court will not necessarily be called upon to make an ultimate determination as to Defendants' liability on the securities fraud claims. In order to be a factual predicate, "the fact of a misrepresentation must be one that gives rise to liability[.]" *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 468 (D.N.J. 2012) (quoting *LaSala*, 519 F.3d at 141). That misrepresentation must give rise to liability on the underlying state law claims, otherwise, it is simply an extraneous detail. *Id.* Here, Plaintiffs adequately plead that Bausch Health will be insolvent after the Spin-Off even if the securities fraud liabilities are minimal. To be sure, in the Complaint, Plaintiffs allege that one major investment bank determined that Defendants maintain a negative equity value following the Spin-Off transaction, meaning that "the value of [the Defendants'] remaining assets will be worth less than their liabilities such that [Defendants] will be rendered insolvent." (Compl. ¶ 172.) Importantly, this bank's valuation did not account for any liabilities contingent on the outcome of the underlying securities fraud action. (*Id.* ¶ 173) Further,

17

Plaintiffs allege that "a sophisticated financial institution" projected that Bausch Health will maintain "a negative equity value of -$256 million following the Spin-Off, before accounting for the contingent liabilities" associated with the underlying securities fraud action. (*Id..*) Plaintiffs similarly allege other negative reactions and indicators within the finance industry, and ultimately conclude that "[a]s a result of the Spin-Off, [Defendants] will be left with, at best, remaining assets that will be insufficient to withstand normal cyclical trends," which will ultimately cause Bausch Health to fail as a business and be incapable of paying its foreseeable debts. (*Id.* ¶ 174.)

Not to be ignored, the Court also notes that Defendants' cherry-picked statements from the Complaint fail to contradict Plaintiffs' unambiguous allegations such that the Spin-Off rendered Bausch Health insolvent, without accounting for any potential contingent liability from the underlying action. Instead, the securities fraud misrepresentations operate as information for the Court to understand the totality of the circumstances. Without those misrepresentations, Plaintiffs would not be judgment creditors. However, it is not ultimately necessary for Plaintiffs to prove those misrepresentations in order to assert a fraudulent transfer claim here. Instead, what Plaintiffs must prove is that Bausch Health was insolvent at the time of the transfer.

The purpose of the SLUSA also supports remand in this matter. As noted above, SLUSA was enacted to curb plaintiffs from "circumvent[ing] the [Private Securities Litigation Reform] Act's provisions by . . . filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available[.]" *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 250 (3d Cir. 2009) (citing H.R.Rep. No. 105-803, at 14-15 (1998)). As the Second Circuit articulates, "[i]nterpreting SLUSA to apply more broadly to state law claims that are altogether outside the prohibitions of the federal securities laws, and could not be subject to the PSLRA, would . . . construe ambiguous provisions of SLUSA in a highly improbable manner—as prohibiting state law claims involving matters that

18

were not Congress's concern in passing SLUSA, that have never been a subject of congressional concern, and that in a number of instances might even lie outside the powers of Congress." *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d at 146. If SLUSA preemption were to apply in this instance, Plaintiffs would be left with no recourse to either prevent the Spin-Off from occurring as the fraudulent transfer claims are unlike the securities fraud claims that Plaintiffs may assert under the 1933 and 1934 Acts.

Looking at the instant case practically, the Court is also convinced that Plaintiffs did not pursue the state law claims to avoid litigation under the Acts. It is not lost on this Court that the securities litigation is ongoing, and has been ongoing for nearly five years. Moreover, the Spin-Off is factually distinct than the parallel (but factually distinct) securities claims matters. For all of the reasons above, the Court finds that securities fraud misrepresentations are not factual predicates to the fraudulent transfer claims.

## IV.    CONCLUSION

For the above reasons, the Court grants Plaintiffs' motion to remand. An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE